**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PARLEMENT TECHNOLOGIES, INC,<br>(f/k/a Parler LLC, f/k/a Parler Inc.),<br><br>     Debtor. | Chapter 11<br><br>Case No. 24-10755 (CTG)<br><br>**Objections Due: June 27, 2024**<br>**(Extended for Objector)**<br>Hearing Date: July 11, 2024 at 2:30 p.m. (ET)<br><br>**Dkt. Ref. No. 61** |

**OBJECTION OF JOHN MATZE TO DEBTOR'S MOTION
FOR EXTENSION OF THE AUTOMATIC STAY TO LITIGATION
AGAINST NON-DEBTOR AND RELATED RELIEF**

  John Matze, an individual with certain litigation pending against the Debtor and various non-debtors – none of whom are part of Debtor's current management, and some of whom have never been part of management – hereby objects to the *Debtor's Motion for Extension of the Automatic Stay to Litigation Against Non-Debtor and Related Relief* [D.I. No. 61] (the "Extension Motion"), and in support of this objection states as follows:

**PRELIMINARY STATEMENT**

  1. The Extension Motion should be denied. Mr. Matze, an individual, is the plaintiff in significant litigation pending against the Debtor and five (5) non-Debtor companies and individuals (the "Nevada Litigation"). Mr. Matze commenced the Nevada Litigation on March 22, 2021.

  2. Debtor commenced this bankruptcy case twenty-five minutes prior to a scheduled hearing in the Nevada Litigation where Mr. Matze was seeking sanctions against the Debtor for discovery abuses with such sanctions including a waiver of privilege and monetary sanctions. There is little doubt that the Debtor timed the bankruptcy filing in order to prevent that hearing from going forward and to avoid the requested sanctions. The Debtor then waited nearly 45 days

before filing the Extension Motion, where it now seeks to extend the automatic stay to admitted non-debtors. The Debtor's Extension Motion, which contains scant facts with no supporting declaration (save the Debtor's irrelevant first day declaration, Dkt. No. 42, submitted only as "[A]dditional information regarding the Debtor's business and the circumstances leading to the commencement of the chapter 11 case . . . ") fails to justify the requested relief.

## BACKGROUND FACTS

3.  On March 22, 2021, prior to the bankruptcy filing, Mr. Matze commenced the Nevada Litigation against Parler LLC, NDMAscendant, LLC ("NDMA"), Jeffrey Wernick ("Wernick"), Mark Meckler ("Meckler"), Dan Bongino ("Bongino") and Rebekah Mercer ("Mercer") in the Eighth Judicial District Court in Clark County, Nevada. The Nevada Litigation has been assigned case no. A-21-831556-B.[1] NDMA, Wernick, Meckler, Bongino and Mercer are all non-debtors. None is a current officer or director of the Debtor, and none is responsible for the Debtor's bankruptcy case.

4.  In particular, NDMA is an alter ego of Mercer and has never been an officer or director of the Debtor and is otherwise not involved with the management of the Debtor's bankruptcy – though apparently it has funded the pre-petition retainers received by the Debtor's professionals. *See* Extension Motion at ¶6. Likewise, Wernick is not an officer or director of the Debtor. If he ever was, he resigned as of December 2021. At one time, following Matze's termination, Meckler acted as the Debtor's CEO, but resigned from that position in May 2021. Bongino has held himself out as an owner of the Debtor, but has never been an officer or director of the Debtor. Finally, Mercer, through her ownership of NDMA has an equity stake in the Debtor;

---

[1] Debtor removed the Nevada Litigation on May 1, 2024, just days before the continued hearing on Matze's sanctions motion scheduled for May 6, 2024. Matze's motion for abstention and/or remand is under consideration by the federal court in case no. 2:24-CV-000826-ART-NJK, as is Debtor's motion to transfer venue.

and while Mercer apparently signed the Debtor's resolution to commence these bankruptcy proceedings on April 12, 2024, it's unclear how or when she became a director of the Debtor. Nonetheless, she resigned two days later on April 14, the day prior to the April 15, 2024 bankruptcy filing (the "Petition Date").

5.  Further supporting the above, the Debtor's Statement of Financial Affairs (Dkt. No. 50; p. 131 of 139) (the "Statement") lists only defendant Mercer as a director of the Debtor at any time in the year prior to the bankruptcy filing. But none of the Defendants are listed as a current director or officer. Thus, none of the non-debtor defendants in the Nevada Litigation has any responsibility to manage or operate the Debtor's business during its bankruptcy case – and the Extension Motion does not claim they do.

**ARGUMENT**

6.  This Court has repeatedly held that the automatic stay "affords protection **only to debtors** and **does not** extend to 'co-torteasors,' 'joint obligors,' 'guarantors,' 'sureties,' or other **non-debtor** 'co-defendants.'" *In re American Film Technologies, Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) (emphasis added); *In re The Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207 (Bankr. D. Del. 1995) ("Code § 362 (a) only stays actions against the debtor and its property. Code § 362 (a) does not stay actions against persons (or their property) who are related to the debtor or who are participants in the harm or liability underlying claims against the debtor."); *see also Maritime Electric Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991) ("The automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."); *Loewen Group Int'l., Inc. v. Gilligan*, 2001 WL 1819995 (Bankr. D. Del. 2001) (same); *In re Bidermann Industries, U.S.A., Inc.*, 200 B.R. 779 (Bankr. S.D.N.Y. 1996) (same); *In re Aldan Industries, Inc.*, 2000 WL

357719 (Bankr. E.D. Pa. 2000) (same); *McCartney v. Integra National Bank North*, 106 F.3d 506 (3d Cir. 1997) (same).

7. The Court may extend the stay to non-debtors under very limited circumstances, but, as this Court has held, not without a "specific order by the bankruptcy judge following a hearing on notice." See *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 216 (Bankr., D. Del. 1995). Furthermore, this Court has held that the request to extend the stay to non-debtor third parties amounts to seeking a preliminary injunction. *See American Film*, 175 B.R. at 850. The burden on a request for a preliminary injunction falls entirely on the movant and the Debtor has not even attempted to make such the showing required for such relief. *See e.g. Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); *Polaroid Corp. v. Disney*, 862 F.2d 987, 991 (3d Cir. 1988); *Elf Atochem North America, Inc. v. LaRoche Industries, Inc.,* 85 F.Supp.2d 336, 343 (D. Del. 2000).

8. This Court has agreed that the exception to the general rule limiting the stay to Debtors is a narrow exception warranted only in "unusual" circumstances such as indemnity situations. *See Loewen Group International, Inc. v. Gilligan*, 2001 WL 1819995 at *3 (Bankr. D. Del., June 25, 2001); *Croyden Assocs. V. Aleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992); *AH Robbins, Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); Ritchie Capital Mgmt., L.L.C. v. Jeffries, 653 F.3d 755, 762 (8th Cir. 2011) ("the unusual circumstances in which the bankruptcy court can stay cases against non-debtors are rare."); *American Film Tech.*, 175 B.R. at 855).

9. The Debtors have failed to provide any evidence of such "unusual circumstances," such as that " 'the debtor may be said to be the real party defendant and that a judgment against

the third-party defendant will be in effect a judgment against the debtor.' " *See American Film Tech.*, 175 B.R. at 851.

10. But even this narrow exception is not unfettered. As the Second Circuit noted in *Queenie, Lts. v. NYGARD Int'l*:

> We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of **offensive collateral estoppel** or the **precedential effect of an adverse decision**. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants. (emphasis added).

321 F.2d 282, 287-88 (2d Cir. 2003) (emphasis added).

11. *Queenie* extended the stay to a wholly owned corporation owned by the Debtor, who was the president and sole shareholder of that corporation. *Id.* at 288. *Queenie* refused to extend the stay to co-defendants in the action because there was no "immediate adverse economic impact on [Debtor]" such as would occur when an action proceeds against a "wholly owned corporation" of the Debtor, such as under a guaranty or indemnity situation. *Id.* at 288-289. Mere "apprehension" of an adverse result is all the Debtor has currently shown.

12. In that light, here, the Debtor cannot cloak the non-debtor defendants in the protection of the stay based on mere "apprehension" of an action adverse to its economic interests. The Third Circuit has refused to extend the stay to non-bankrupt co-defendants of a debtor simply because they share a "similar legal or factual nexus with the debtor." *Maritime Elec. Co. Inc. v. United Jersey Bank,* 959 F.2d. 1194, 1205 (3d. Cir. 1991).

13. This Court has also discussed the extension of the stay to non-debtors in deciding whether such a preliminary injunction would serve the public interest through a successful reorganization. *See American Film Tech.*, 175 B.R. at 850. The basis for this theory lies in the scenarios surrounding cases such as *In re Johns-Manville Corp.*, 40 B.R. 219, 224 (S.D.N.Y. 1984)

5

and *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), both bankruptcies in which the Debtors and their current non-debtor officers and directors were the subject of multiple complex product liability suits that were spread all over the county.  Permitting discovery to proceed in those situations was seen as depriving "the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." See, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). That is not the case here.

14.     Moreover, when a debtor argues that such unusual circumstances exist, it "must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended." *Rodriguez v. AMGP Rest. Corp.*, 2018 WL 4378164, at *2 (E.D.N.Y. June 5, 2018) (quoting *In re FPSDA I, LLC*, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. Dec. 21, 2012)). "It is not enough for the movant to show some limited risk, or that there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals of the Debtor could have some effect on the reorganization." *Id*.

15.     Here, Non-Debtor Defendants offer no real evidence that this action will have an immediate adverse economic consequence on the Debtor Defendant's estate.  Instead, the Extension Motion offers no evidence, let alone *real* evidence, that continuing the Nevada litigation against the non-debtor defendants will have an immediate adverse economic impact on the Debtor's estate.  Indeed, the Extension Motion's sole basis for extending the stay to non-debtors consists of the following five generic and unsupported statements:

    (a) The Debtor and non-debtors (specifically NDMA, Meckler and Mercer) are required to engage in extensive and costly discovery. Extension Motion at ¶11.

6

(b) The Nevada litigation may continue "without the Debtor having an appreciation of how that litigation will impact its bankruptcy." Extension Motion at ¶16.

(c) Extension of the stay "will prevent immediate irreparable injury to the Debtor that may result if the [Nevada Litigation] goes forward including responses to the [Nevada] court's directives regarding discovery." Extension Motion at ¶19.

(d) Continuation of the Nevada Litigation "could greatly increase the claims against the Debtor's estate because *the Non-Debtors are all, or almost all, indemnified by the Debtor.*" Extension Motion at ¶27.

(e) "It is clear in this case that the true party in the District Court litigation is the Debtor, and that any rulings in the matter will have a direct impact and potentially cause irreparable injury to the Debtor." Extension Motion at ¶28.

16.    These proposed justifications – each of which is conclusory and generic and unsupported by any admissible evidence (and in fact, as shown below, are contravened by statements made in the Nevada Litigation the Debtor made pursuant to the Nevada form of rule 11) – lacks both legal and factual merit to justify the extraordinary relief of extending the stay to the non-debtors. They simply fall well short of the required showing – in what amounts to a request for preliminary injunction – that the Debtor must make in order to justify an extension of the stay. *See Rodriguez*, 2018 WL 4378164, at *2 (holding that the non-bankrupt defendants' "conclusory and generic allegations" about the potential impact on the bankruptcy proceeding did not warrant an extension of the automatic stay); *Hernandez v. Immortal Rise, Inc.*, 2014 WL 991715, at *5 (E.D.N.Y. Mar. 13, 2014) (same).

### A. The Request For Stay Requires Commencement of an Adversary Proceeding – Not a Motion.

17. The Debtor's Extension Motion is procedurally improper. The Debtor filed the motion pursuant to both 11 U.S.C. §§ 362 and 105. The Extension Motion seeks an injunction in favor of non-debtors and to enjoin the continuation of the Nevada Litigation against them. An injunction is an action that must be commenced by an adversary proceeding and not by motion. *See* Fed. R. Bankr. P. 7001(7). Accordingly, the Debtor is required to seek relief by filing a complaint that complies with the pleading requirements of Fed. R. Bankr. P. 7008 and which sets forth (and proves) sufficient factual detail to support the need for the injunction. *In re Hart*, 530 B.R. 293, 308-09 (Bankr. E.D. Pa. 2015) (finding a party must file an adversary complaint if it seeks entry of a separate injunction pursuant to § 105(a)); *see also In re Irwin,* 457 B.R. 413, 423 (Bankr. E.D. Pa. 2011) (holding the extension of the automatic stay to nondebtor third parties "does not flow automatically from § 362(a)" and requires the filing of an adversary proceeding); *In re DeArakie*, 199 B.R. 821, 824 (Bankr. S.D.N.Y. 1996) ("Because, by its own terms, the debtor's motion requests that I invoke my equity powers pursuant to 11 U.S.C. § 105(a) to enjoin the trustee from selling property, an adversary proceeding is required by Federal Rule of Bankruptcy Procedure 7001(7)."); *In re Lyons*, 995 F.2d 923, 924 (9th Cir. 1993) (finding that, when a Rule 7001 category was at issue, the movant "may obtain the authority he seeks only through an adversary proceeding"). Here, the Debtor has done neither: it has not filed a complaint, and it has not provided any factual detail to support its conclusory statements.

### B. That the Debtor May be Required to Participate in Discovery is Not Grounds to Extend the Stay to Non-Debtors.

18. The crux of the Debtor's argument is that it might have to engage in discovery, or might have to provide "responses to the [Nevada] court's directive's regarding discovery." But

8

the potential that a debtor may have to engage or provide discovery in connection with claims asserted against non-debtors has been roundly rejected as a basis to extend the stay to non-debtors. "The automatic stay does not prohibit Plaintiff from taking the testimony of or seeking discovery from the Debtor Defendants relevant to his individual claims against the Non-Debtor Defendants." *Stih v. Rockaway Farmers Market Inc.*, 656 B.R. 308, 313 (E.D.N.Y. 2024); *see also Quarrato v. Madison Glob. LLC*, 2023 WL 7212173, at *2 (S.D.N.Y. Nov. 2, 2023) (holding that a plaintiff in an FLSA case can seek discovery from the debtor that pertains to claims against non-debtor parties). The automatic stay does not "extend to the discovery of information from debtors. If it did, 'a debtor could never be called as a witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362(a) defies common sense and the spirit of the Code.' " *Hongv. Mommy's Jamaican Mkt. Corp.*, 2023 WL 3568807, at *2 (S.D.N.Y. May 18, 2023 (internal citation omitted).

19. The Third Circuit has also held that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation **even against a Debtor**. *In re Davis*, 691 F.2d 176, 178 (3d Cir. 1982) (emphasis added). Indeed, "[C]ourts have generally not ascribed much significance to the fact that a Debtor will have to participate in litigation." *In re Winterland*, 101 B.R. 547, 549 (Bankr. C.D. Ill. 1988) (citing *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 567 (Bankr. N.D. Ohio 1984)); *see also In re Rabin*, 53 B.R. 529, 532 (Bankr. D. N. J. 1985) ("The cost of defending the state court action in the state court has not been considered so prejudicial as to require continuance of the stay."); *In re UNR Industries, Inc.*, 54 B.R. 266, 269 (Bankr. N.D. Ill.1985) (finding the "Debtor would not suffer great prejudice if it were required to bear the defense costs of Plaintiff's particular lawsuit."). Thus, that a debtor might have to participate in discovery regarding non-debtors certainly does not justify relief.

20. Further, in addition to not being grounds to extend the stay to non-debtors, the Debtor's argument that it might have to engage in discovery is anathema to the discovery process if the Debtor's responses to discovery could – as asserted without any legal or factual support by the Debtor – "*result in irreparable injury to the Debtor if the Debtor had to comply with a court's discovery directives*." Moreover, with respect to Mr. Matze's discovery sanctions motion that was to be heard in Nevada, just 25 minutes after the Debtor's bankruptcy petition was filed, that type of motion – and the Nevada Court's ability to rule on it – is not stayed by 11 U.S.C. § 362(a). For example, under § 362(b)(4) – also known as the "government regulatory exemption" – the stay is not extended to judicial action intended to effectuate the court's public policy interest in deterring litigation misconduct. *In re Dingley*, 852 F.3d 1143, 1147–48 (9th Cir. 2017); *see also, In re Berg*, 230 F.3d 1165, 1168 (9th Cir. 2000) (holding government regulatory exemption applies to proceedings initiated by private litigant); *Alpern v. Lieb,* 11 F.3d 689, 690 (7th Cir. 1993) (motions seeking sanctions for litigation misconduct are not stayed by 362(a); "A litigant should not be able to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy."). Specifically, in *In re Dingley,* the Ninth Circuit Court of Appeals held that a creditor's attempt to recover discovery sanctions following the debtor's failure to appear at a deposition did not violate the automatic stay as the actions were an attempt to effectuate the state court's public policy interest in deterring litigation misconduct and, as such, came within the "government regulatory exemption." 852 F.3d at 1147.

21. Thus, the Debtor's unmerited concerns about discovery do not justify extending the stay to the Debtor's discovery obligations or to the non-debtor parties generally.

### C. Debtor's Motion Contains No Evidence Warranting an Injunction For Non-Debtors.

22. Underscoring the Debtor's failure to support the Extension Motion with evidence, the Debtor concedes that it actually has no "appreciation of how [the Nevada Litigation] will impact its bankruptcy," Extension Motion at ¶16, and choses instead to rely on the hope that the Court will nonetheless hold that the Debtor has met its steep burden to extend the stay. But with its admission that it has no appreciation of how the litigation against the non-debtors might impact its bankruptcy, the Debtor has admitted that it cannot meet its burden – and the Court cannot find it has done so. The Debtor's attempt to generically claim some identity of interest with the non-debtors falls flat.

### D. Debtor Has Not Established That The Non-Debtor Defendants Are, Or Event May Be, Subject to Indemnification

23. The Extension Motion nowhere supports, with facts, that any of the non-debtors are or will be entitled to indemnification. No LLC agreements, corporate documents or other evidence supporting that the Debtor must indemnify the non-Debtor defendants for the intentional torts asserted in the Nevada Litigation are attached to the Extension Motion. Not only is the motion silent on this point, the Debtor's contention otherwise is belied by both the claims in the Nevada Litigation and, in some cases, the pleadings filed by the Debtor in Nevada – of which this court may take judicial notice. *Fed. R. Evid. 201*.

24. For example, despite arguing in its Extension Motion that "the claims asserted by Matze are derivative of the Debtor, many of the claims asserted in the Nevada Litigation are not asserted against the Debtor at all. Indeed, as reflected in the Complaint attached hereto as **Exhibit A**, NDMA is accused of its own wrongdoing by breaching the operating agreement that was signed by it and by Mr. Matze. Likewise, NDMA is charged with breaching the implied covenant of good faith and fair dealing regarding the operating agreement. All defendants are

11

charged with conspiracy to breach the operating agreement. Four of the non-debtor defendants (but not the Debtor) are charged with conversion. The same four non-debtors (but not the Debtor) are charged with civil conspiracy to commit conversion. All defendants are charged with civil conspiracy to commit tortious discharge in violation of public policy, and each of the defendants is charged with defaming and slandering Mr. Matze and conspiring to defame and slander him.

25. The reality is that many of the defendants have claims asserted personally against them for their acts (and in some cases no claims are asserted against the Debtor at all). The Debtor has not only failed to establish a basis to prevent those non-debtor claims from going forward, it has neither supported its bare allegation that "the claims are derivative of the Debtor's liability" nor that any of the Defendants would be entitled to indemnity. To the contrary, when non-debtors Wernick and Bongino cross-claimed against the Debtor in the Nevada Litigation for indemnity, the Debtor answered each cross-claim and specifically *denied* that they were entitled to indemnity. *See generally*, **Exhibits B** (Wernick's Cross Claim), **C** (Bongino's Cross Claim), **D** (Parler's Answer to Wernick's Cross Claim, and **E** (Parler's Answer to Bongino's Cross Claim).

26. Pleadings filed in Nevada are subject to Nevada's form of Rule 11. *Ford Motor Credit Co. v. Crawford*, 109 Nev. 616, 621, 855 P.2d 1024, 1026 (1993) ("[N]RCP 11 provides that the person signing the pleading: (1) certifies that he has read the paper; (2) that to the best of his knowledge, information or belief, formed after a reasonable inquiry, the paper is well grounded in fact; and (3) that the paper is not interposed for any improper purpose."). Moreover, the Debtor cannot file pleadings denying indemnity in one court, and then claim that the denied indemnity obligation nonetheless justifies the extraordinary relief of obtaining a stay against non-debtors in the Delaware bankruptcy court. *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co.*, 127 Nev. 331, 343, 255 P.3d 268, 276 (2011) ("'Judicial admissions are defined as deliberate,

clear, unequivocal statements by a party about a concrete fact within that party's knowledge.'" (quoting *Smith v. Pavlovich,* 394 Ill.App.3d 458, 333 Ill. Dec. 446, 914 N.E.2d 1258, 1267 (2009)).

27. Additionally, despite the Debtor's bald assertion that "[I]t is clear in this case that the true party in the District Court litigation is the Debtor, and that any rulings in the matter will have a direct impact and potentially cause irreparable injury to the Debtor," Extension Motion at ¶28, nothing of the sort is clear. The Debtor do not provide any visibility into why that statement is clear, what the direct impact might be or why it would cause irreparable injury to the Debtor. In sum, the Extension Motion falls woefully short of establishing the Debtor's (or the non-debtors') entitlement to relief.

**E. None of the Non-Debtor Defendants Is Responsible for the Bankruptcy Case.**

28. Finally, as noted above, not a single non-Debtor defendant has responsibility for the management or course of the bankruptcy case. That responsibility has been ceded to the Debtor's CRO. None of the co-defendants are current directors or officers of the Debtor and thus their participation in litigation against them will not impair the bankruptcy case at all.

29. Thus, even if the Debtor were to establish that the non-debtor defendants might be entitled to indemnification, even that is not determinative. As Judge Walrath noted in *In re Uni-Marts, LLC*, "the purpose served by extending the stay to directors and officers indemnified by the debtor must be consistent with the purpose of the stay itself, that is, 'to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts.'" 405 B.R. 113 (Del. Bankr. 2009) (citing *First Cent. Fin Corp*. 238 B.R. 9, 19 (Bankr. E.D.N.Y 1999)).

30. Here, allowing the litigation to proceed against the non-debtors will have no impact on the bankruptcy proceedings. None of the non-debtor defendants are current directors or officers of the Debtor. None are responsible for the course of the bankruptcy. Accordingly, there is no

threat to the Debtor's reorganization if the litigation proceeds against them. *Compare*, *In re Cont'l Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (extending the automatic stay to non-debtor directors and officers because "[D&Os were] heavily involved in [the Debtors] reorganization efforts…discovery in those actions would impose burdens on [them and the Debtors]…[litigation in] these actions would substantially detract from [D&Os] reorganization efforts….*"* That worry is not present here.

WHEREFORE, Mr. Matze respectfully requests that the Court deny the Extension Motion.

Dated: June 27, 2024                    Respectfully submitted,

**MORRIS JAMES LLP**

*/s/ Carl N. Kunz, III*
Carl N. Kunz, III (DE Bar No. 3201)
Brya M. Keilson (DE Bar No. 4643)
Christopher M. Donnelly (DE Bar No. 7149)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: 302-888-6800
Facsimile: 302-571-1750
Email: ckunz@morrisjames.com
Email: bkeilson@morrisjames.com
Email: cdonnelly@morrisjames.com

*Attorneys for John Matze*