# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PARLEMENT TECHNOLOGIES, INC,<br>(f/k/a Parler LLC, f/k/a Parler, Inc.),<br><br>     Debtor. | Chapter 11<br><br>Case No. 24-10755 (CTG)<br><br>**Related Docket No. 61** |

## MEMORANDUM OPINION

The Bankruptcy Code's automatic stay halts litigation against the debtor upon the filing of a bankruptcy case, affording the debtor a "breathing spell" during which the debtor can focus on the work of the bankruptcy. The bankruptcy filing typically does not, however, stay lawsuits against non-debtors. But cases have long recognized that bankruptcy courts may enter a preliminary injunction that operates to stay actions against non-debtors. Courts have at times described the authority to enter such a preliminary injunction as the power to "extend the stay."

The debtor here seeks such a preliminary injunction. The debtor and a number of its former officers are defendants in a suit that was filed in state court in Nevada. The claim against the debtor is, of course, stayed by § 362 of the Bankruptcy Code. The debtor seeks a temporary stay of the action against its former officers. The plaintiff in the Nevada lawsuit, John Matze, opposes the motion.

The Supreme Court recently held in *Purdue Pharma* that non-debtors may not receive permanent injunctive relief in the form of a third-party release, under a plan of reorganization, even when a bankruptcy court finds that the release is necessary

to facilitate the debtor's reorganization.[1]  That holding raises the question whether courts may grant third parties the protection of a preliminary injunction.  The Court concludes that *Purdue Pharma* does not preclude the entry of such a preliminary injunction but does affect how courts should consider what is meant by "likelihood of success on the merits" when applying the traditional four-factor test applicable to requests for preliminary injunctions.

Following *Purdue Pharma*, "success on the merits" cannot be based on the likelihood that the non-debtor would be entitled to a non-consensual third-party release through the plan process.  But a preliminary injunction may still be granted if the Court concludes that (a) providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business *or* (b) because it believes the parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against the non-debtors.  Both of those outcomes may be viewed as "success on the merits" for this purpose.  Granting a preliminary injunction based on a finding that the debtor is likely to succeed in this sense (which is how bankruptcy courts that have entered such preliminary injunctions have typically described the basis for doing so) does not depend at all on the principle rejected by *Purdue Pharma* that a bankruptcy court may grant a non-consensual third-party release.

Nevertheless, the party seeking a preliminary injunction still bears the burden of demonstrating its entitlement to that relief.  Based on the record presented at the

---

[1] *Harrington v. Purdue Pharm L.P.*, 144 S. Ct. 2071 (2024).

hearing on the debtor's motion, the Court concludes that the debtor has not met its burden. The motion will therefore be denied.

## Factual and Procedural Background

The debtor in this bankruptcy case once operated a conservative social media site, known as Parler. In March 2021, the company's former executive, John Matze, filed a nine-count complaint in Nevada state court against the debtor and certain of its owners and former executives.[2] The complaint alleges that the Parler app was suspended from Apple's App Store because the company had not taken sufficient steps to prevent the app from being used to incite violence, including the violence that took place on January 6, 2021 in Washington, D.C. The complaint further asserted that there was a scheme among the defendants to oust Matze and deprive him of his stake in the company. That scheme, the complaint alleges, arose out of Matze's "objections to allowing violent extremists to abuse Parler's platform."[3] The complaint asserts claims for breaches of contract, conversion, conspiracy, and tortious discharge, among other counts. Several of the individual defendants have crossclaimed against the debtor, seeking indemnification.[4]

The debtor filed this bankruptcy case in April 2024. The filing of the bankruptcy operated to stay the Nevada Action against the debtor, but not as against

---

[2] *Matze v. Parler LLC, et al.*, No. A-21-831556-B (D. Ct. Clark County, Nev.). This action is referred to as the "Nevada Action." The Complaint, which is attached to Matze's opposition to the motion and docketed at D.I. 70-1, was admitted into evidence during the July 11, 2024 hearing. It is cited as "Nevada Action Complaint."

[3] Nevada Action Complaint ¶ 41.

[4] The crossclaims are also attached to Matze's opposition and were admitted into evidence. They are docketed at D.I. 70-2 and 70-3.

the other defendants.  A defendant in the Nevada litigation that also holds an equity interest in the debtor (an entity referred to as "NDMA") is one of two entities that agreed to provide DIP financing to the debtor.  The other DIP lender is the debtor's prepetition secured creditor, which is not involved in the Nevada Action.[5]

In May 2024, the debtor removed the Nevada Action from Nevada state court to the U.S. District Court for the District of Nevada on the ground that it was within the federal court's bankruptcy jurisdiction.[6]  The debtor then moved to transfer the case to the U.S. District Court for the District of Delaware (where it would be subject to the district court's order of reference, which refers all cases founded on the court's bankruptcy jurisdiction to the bankruptcy court).[7]  Matze opposes the motion to transfer and has moved the district court in Nevada to abstain or to remand the case back to the Nevada state court.[8]

On June 14, the debtor filed this motion, which it describes as a motion "to extend the automatic stay" to its co-defendants in the Nevada litigation until August 30, 2024.  The debtor asserts that such a preliminary injunction is appropriate primarily because, by virtue of the debtor's asserted obligation to indemnify the other

---

[5] The DIP loan was approved on an interim basis by order entered on July 3, 2024.  D.I. 86. The hearing on final approval of the DIP loan is set for August 12, 2024.

[6] *See Matze v. Parler LLC, et al.*, D. Nev. No. 2:24-cv-00826, D.I. 1 (Notice of Removal).  At the argument on the motion for a preliminary injunction, counsel for the debtor expressed uncertainty about the jurisdictional basis for removal.  The notice itself states that it is based on the district court's bankruptcy jurisdiction set forth in 28 U.S.C. §§ 1334(b) and 1452(a).

[7] *See Matze v. Parler LLC, et al.*, D. Nev. No. 2:24-cv-00826, D.I. 11 (Motion to Change Venue or Transfer).

[8] *See id.*, D.I. 19, 20 (opposition to motion to transfer and motion to abstain or remand).

defendants, the action is in substance a claim against the debtor.  The debtor further argues that even though the case may not go forward as to it, because the automatic stay does not prevent it from being subject to discovery, having the case go forward against the other parties would impose expense on the bankruptcy estate and prejudice the bankruptcy case.[9]  Matze objected to such extension.[10]  The Court held a hearing on the motion on July 11, 2024.  The parties stipulated to the admission into evidence of various pleadings.[11]  Neither party presented other documentary evidence or called any witness to testify.

## Jurisdiction

This debtor's motion was brought under §§ 105(a) and 362 of the Bankruptcy Code.  As such, it is a matter within the district court's "arising under" jurisdiction set forth in 28 U.S.C. § 1334(b).  This case has been referred to the bankruptcy court under 28 U.S.C. § 157(a) and the district court's standing order of reference. As a matter arising under the Bankruptcy Code, this is a core matter within the meaning of § 157(b).

## Analysis

**I.  The authority to "extend the stay" survives *Purdue Pharma* but cannot be premised on a likelihood of obtaining a non-consensual third-party release.**

Courts have long recognized the authority of a bankruptcy court to grant a preliminary injunction staying claims against non-debtors.  The caselaw is clear that

---

[9] D.I. 61.

[10] D.I. 70.

[11] D.I. 91.

such a preliminary injunction, like any other, is governed by the application of the traditional four-factor test.[12]

What is unusual about the kind of preliminary injunction at issue here, however, is the application of the prong that looks at likelihood of success on the merits. In the typical case of a preliminary injunction, that analysis is focused on the likelihood that the party seeking the injunction will ultimately obtain permanent relief against the party against which it seeks the preliminary injunction.

Consider the Third Circuit's decision in *Greater Philadelphia Chamber of Commerce v. City of Philadelphia*.[13] Philadelphia enacted an ordinance that prohibited employers from asking about a prospective employee's wage history. The Chamber of Commerce filed suit, claiming that the ordinance violated its members' rights of free speech. The question of "likelihood of success on the merits," for purposes of the plaintiff's entitlement to a preliminary injunction, was focused on whether the plaintiff would likely obtain a permanent injunction against the enforcement of the ordinance at the conclusion of the lawsuit.[14]

If one were to apply that principle literally in the context of a preliminary injunction in which a debtor seeks to stay a lawsuit against a non-debtor, one might

---

[12] *See In re American Film Techs*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) (indicating that courts should consider (1) likelihood that plaintiff will prevail on the merits; (2) irreparable injury to the plaintiff absent an injunction; (3) harm that the defendant will suffer by the injunction; and (4) the public interest.)

[13] 949 F.3d 116 (3d Cir. 2020).

[14] *Id.* at 133. *See also Nken v. Holder*, 556 U.S. 418 (2009) (addressing standards for stay pending appeal and holding that traditional stay factors applied); *SEC v. Chappell,* No. 23-2776 (3d Cir. July 9, 2024) (holding that traditional preliminary injunction factors apply to SEC's request for an asset freeze).

think that, in order to obtain a preliminary injunction, the debtor would need to show that it was likely that it would ultimately obtain a third-party release of that claim. But notwithstanding the apparent logic of that rationale, that is not how courts typically have viewed "likelihood of success on the merits" in the context of motions seeking to preliminarily enjoin suits against non-debtors.

Some of the cases that consider this issue in the bankruptcy context have focused more on avoiding the harm that the litigation against the third parties could cause to the debtor without directly addressing the debtor's right to obtain permanent relief.  For example, in *In re American Film*, Judge Walsh noted that the "elements of probable success on the merits and irreparable harm, in the context of this proceeding, are essentially a matter of whether [the debtor] would be seriously adversely affected if the benefit of the automatic stay is not extended to [the litigation against its directors]."[15]  The Third Circuit made a similar point in *W.R. Grace*, where it stated that the "standard for the grant of a stay is generally whether the litigation could interfere with the reorganization of the debtor."[16]  The implication of these decisions is that "success on the merits" is the debtor's successful confirmation of a plan of reorganization.  Perhaps the claims against the third party would be consensually resolved through the plan process.  Perhaps the claims against the third party would proceed after the debtor emerged from bankruptcy with a confirmed plan of reorganization.  The point, for present purposes, is that unlike the typical

---

[15] *American Film,* 175 B.R. at 849.

[16] *In re W.R. Grace*, 115 Fed. App'x 565, 570 (3d Cir. 2004) (internal quotation and citation omitted).

circumstance involving a preliminary injunction, these courts did not define success on the merits as the likelihood that the claim against the third party would be, at the end of the case, subject to a permanent injunction.

To be sure, the same concern about interference with the debtor's effort at reorganization that has justified preliminary injunctive relief has also been relied on by those courts that authorized third party releases. For example, the Fourth Circuit held in its 1986 *A.H. Robins* decision that the bankruptcy court has the authority to enter a preliminary injunction against the assertion of claims against third parties. Three years later, in 1989, the Fourth Circuit issued another decision in the *A.H. Robins* bankruptcy case, holding that those claims could be subject to a non-consensual third-party release.

The reasoning of those two opinions is essentially the same. In its 1986 opinion, the court observed that it "seems incontestable that, if the suits are permitted to continue and discovery allowed, any effort at reorganization of the debtor will be frustrated, if not permanently thwarted."[17] While its 1989 holding that Code authorized a third-party release of those claims emphasized "the impact of the proposed suits on the bankruptcy reorganization" and found the release to be appropriate because it was "essential in this case to a workable reorganization."[18]

The Supreme Court's decision in *Purdue Pharma*, of course, rejects the reasoning of the second *A.H. Robins* decision, making clear that bankruptcy courts

---

[17] *A.H. Robins Co., Inc., v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986).

[18] *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 701-702 (4th Cir. 1989).

lack the authority to grant *permanent* injunctive relief that bars creditors from asserting claims against non-debtor third parties.  The "bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants."[19]  Accordingly, to the extent a debtor sought to justify a preliminary injunction on the notion that it was likely to succeed on the merits by ultimately obtaining a third-party release, such an argument would now need to fail in light of *Purdue Pharma.*

This Court, however, reads the *Purdue Pharma* decision to do what it said, and to be "confin[ed] … to the question presented."[20]  Accordingly, nothing in the decision provides a reason to reconsider the holdings of *American Film*, *W.R. Grace*, or the 1986 decision in *A.H. Robins*.  Those cases found preliminary injunctions against third-party claims to be appropriate where the assertion of those claims would interfere with the debtor's reorganization efforts.  And while such interference is no longer a lawful basis for *permanently* enjoining the assertion of such a claim, it remains a sufficient basis for the entry of a *preliminary* injunction.

## II.    The debtor has failed to meet its burden of demonstrating the necessity of the preliminary injunction.

As an initial matter, the debtor seeks the relief in question by way of a motion, while (as Matze points out in his opposition) Bankruptcy Rule 7001(7) states that an action seeking an injunction must be brought by way of adversary proceeding.  And

---

[19] *Purdue Pharma*, 144 S. Ct. at 2088.

[20] *Id.*

it is, to be clear, always the better practice to follow the rules than to violate them. That said, not every technical violation of a rule is a basis to deny relief. To the contrary, Civil Rule 61 (which is made applicable to contested matters like this one by Bankruptcy Rule 9005) explains that the "court must disregard all errors that do not affect any party's substantial rights."[21] And while this Court believes that the formalities associated with an adversary proceeding are more appropriate when the relief sought is an injunction, Matze does not contend that he failed to receive sufficient notice. So while the Court's determination to deny the motion on the merits obviates the need to address this issue, it is certainly not obvious that, in the absence of a claim of inadequate notice, the Court would deny an otherwise meritorious motion for a preliminary injunction on the ground that it was sought by motion rather than by adversary proceeding.

That said, the Court concludes that the debtor has not met its burden of demonstrating an entitlement to preliminary injunctive relief. The law is clear that a party seeking a preliminary injunction has a substantial burden. They are not entered lightly. Rather, "[p]reliminary injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances."[22] The debtor has not established that there is anything extraordinary about the circumstances presented here. Rather, the debtor makes four principal arguments. Based on the record before the Court, none of those four points demonstrates that there is anything sufficiently

---

[21] Fed. R. Civ. P. 61.

[22] *Ferring Pharms., Inc. v. Watson Pharms., Inc.,* 765 F.3d 205, 210 (3d Cir. 2014) (internal quotation and citation omitted).

exceptional about the circumstances here to warrant the entry of a preliminary injunction.

*First*, the debtor contends that it is obligated to indemnify its former officers who are defendants in the Nevada Action. The record in this regard includes the debtor's operating agreement, which contains standard language in which the company indemnifies its officers for liabilities they may incur as a result of actions they take on behalf of the company.[23] The record also contains Parler's answers to the claims that seek indemnity, in which it denies that it owes an indemnity obligation.[24]

If a standard corporate obligation to indemnify officers or directors for liability arising out of the performance of their duties were sufficient to warrant a preliminary injunction, there would be nothing at all extraordinary about the relief. It is true, as the debtor points out, that the caselaw talks about, as one basis for granting a preliminary injunction, circumstances in which "there is such an identity between the debtor and the [non-debtor defendants] that the debtor may be said to be the real party defendant and [the effect of a judgment would be to hold the debtor liable]."[25] And there are certainly circumstances in which the allowance or disallowance of a particular claim may have make-or-break significance for the debtor's reorganization efforts. But there is nothing at all in the record before the Court to suggest that is

---

[23] D.I. 70-3 at 51 of 64.

[24] D.I. 70-4 ¶¶ 1-18 D.I. 70-5 ¶¶ 29-36.

[25] *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). *See also American Film*, 175 B.R. at 851.

the case here.  Rather, as the Court understands it, the debtor is proposing simply to sell its assets and distribute the proceeds to creditors in accordance with their statutory priority.

While it is true that in such a context, every dollar of indemnity that the debtor may owe to its former officers would operate to dilute the recoveries of other creditors, that is not, without more, a sufficient basis to conclude that minimizing the debtor's indemnity obligation is critical to the success of this bankruptcy case.  And the debtor, which bears the burden of proof on this issue, has offered no more.  The evidentiary record before the Court is limited to the Nevada Action pleadings and the proof of claim filed by one of the defendants.  Indeed, for all one can discern from the record on this motion, it is possible that the estate's assets will turn out to be fully encumbered by the prepetition and post-petition security interests, in which case, the magnitude of the debtor's prepetition indemnity obligations would turn out to be wholly beside the point.  For current purposes, it is sufficient to conclude that the debtor has not met its burden of proving that the preliminary injunction, which would operate to limit the debtor's potential indemnity liabilities, is necessary to the success of the bankruptcy case.

*Second*, the debtor contends that if the Nevada Action goes forward, the debtor will be subject to discovery demands that it cannot afford to meet under the terms of its existing DIP facility.  To that end, it bears note that one of the debtor's DIP lenders is itself a defendant in the Nevada Action.  To premise the stay on the "necessity" caused by conditions imposed by the very beneficiaries of that stay would be precisely

the sort of "bootstrapping" that the Third Circuit expressly rejected in *Combustion Engineering*. There, the debtor argued that an injunction protecting the non-debtor had an affect on the bankruptcy estate and was therefore within the "related to" jurisdiction. The argument was that because the third party's financial contribution to the bankruptcy estate was conditioned on its receipt of the injunction, it fell within the court's subject-matter jurisdiction. The Third Circuit rejected that as circular. If that were a basis for subject-matter jurisdiction, "a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions."[26]

The same principle applies here. And while the debtor at argument made the fair point that the debtor's secured creditor (another participant in the DIP loan) might not have consented to additional lending coming ahead of its prepetition liens, the absence of any evidence in the record on this issue is fatal to the debtor's position.

In any event, the case law suggests that the cost of participating in discovery will not in the typical case be a basis for granting a third-party injunction.[27] Nothing in the record suggests anything atypical about this case. Accordingly, the costs of discovery do not provide a sufficient basis for the entry of a preliminary injunction.[28]

---

[26] *In re Combustion Engineering*, 391 F.3d 190, 228 (3d Cir 2004).

[27] *See Quarrato v. Madison Glob. LLC*, 2023 WL 7212173, at *2 (S.D.N.Y. Nov. 2, 2023) (finding that costs of discovery are an insufficient basis for the imposition of a preliminary injunction); *In re Davis*, 691 F.2d 176, 178 (3d Cir. 1982) (litigation expenses do not justify injunction even when litigation is against a debtor).

[28] The Court understands from the presentation of counsel that the federal district court in Nevada has held discovery in that action in abeyance pending this Court's disposition of this motion. This Court's conclusion is that the pendency of the bankruptcy should not affect the

*Third*, the debtor contends that the distraction of dealing with the demands of discovery in the Nevada Action may prevent the company's officers from focusing their attentions on the bankruptcy case. There are certainly circumstances in which courts have found that other litigation would distract a debtor's management team from a company's reorganization, and that such distraction could be a basis for a preliminary injunction against the third-party claims. But as Matze's counsel correctly pointed out at argument, in *Uni-Marts*, Judge Walrath rejected that argument in a case in which the debtor's president was a defendant in third-party litigation.[29] Here, the defendants in the Nevada Action are all *former* officers of the debtor. No current officer or director is a party to that lawsuit. Debtor's counsel candidly acknowledged that he was unaware of any case in which a court granted a preliminary injunction based on the risk of distraction to debtor's management in the absence of the members of management being named as parties in the third-party action. Nor has this Court identified such a case. Nothing in the record here provides a reason why this case should be the first.

---

conduct of the litigation against non-debtors. That determination is intended to be without prejudice to the rights of the parties to advance whatever arguments they deem appropriate about the efficacy of discovery proceeding in the district court during the pendency of the motions before that court to transfer and/or remand or abstain, which is of course a matter committed to the discretion of the district court.

[29] *In re Uni-Marts, LLC*, 405 B.R. 113, 128 (Bankr. D. Del. 2009) (rejecting the argument of the debtor's president that "that the time demands of the suit will hinder his ability to assist the Debtor in its reorganization efforts" but noting that in different circumstances, courts have found that "diverting critical management resources from the reorganization effort to litigation may constitute 'unusual circumstances' to justify extending the stay") (citing *In re Ionosphere Clubs*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990); *In re Johns–Manville Corp.*, 26 B.R. 420, 426 (Bankr.S.D.N.Y.1983)).

*Finally*, the debtor contends, in an argument that is a variant on its contention that the third-party suits are in substance claims against the debtor, that it faces the risk of collateral estoppel if the Nevada Action is permitted to proceed to judgment. But the debtor is only seeking a 60-day stay of the Nevada Action. And as described above, that case is now in the district court where the court has before it motions to transfer and to remand or abstain. There is no trial date set in that case and absolutely nothing in the record suggests that there is any risk that it would go to judgment in the 60 days for which the debtor seeks a stay. As such, the record does not support staying the action on account of the risk of the collateral estoppel effect on the bankruptcy estate of any potential judgment in that action.

In sum, application of the four-factor test that governs requests for a preliminary injunction provides no basis to stay the third-party claims. Because the debtor has not demonstrated that staying the Nevada Action is critical to the success of the bankruptcy case, the Court concludes that it has not established either the first or second factors of the test – likelihood of success on the merits or that it will suffer irreparable injury absent the injunction. Because the debtor cannot establish these factors, that is essentially the end of the analysis.[30] Alternatively, however, if the Court were to engage in the full four-factor balance, it would conclude that they do

---

[30] *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) ("[A] movant for preliminary equitable relief must meet the threshold for the first two most critical factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.") (citations and internal quotation omitted).

not warrant the entry of a preliminary injunction against the assertion of the third-party claims.

### Conclusion

For the foregoing reasons, the motion for a preliminary injunction will be denied. A separate order will issue.

Dated: July 15, 2024

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE