IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Parlement Technologies, Inc.<br>(f/k/a Parler LLC, f/k/a Parler Inc.)<br><br>Debtor. | Chapter 11<br><br>Case No. 24-10755 (CTG)<br><br>Hearing Date: August 12, 2024 at 10:00 a.m. (ET)<br>Objection Deadline: August 5, 2024 at 4:00 p.m. (ET) |

**DEBTOR'S MOTION FOR AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT AMONG THE DEBTOR, ITS SUBSIDIARIES, AND VINH VUONG PURSUANT TO BANKRUPTCY RULE 9019; AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (collectively, the "Debtor") files this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving a settlement (the "Settlement") between (a) the Debtor, (b) Dynascale, Inc. ("Dynascale"), (c) Alchemy Data Centers, LLC ("Alchemy," together with Dynascale, the "Subsidiaries"), and (d) Vincent Vuong ("Vuong" and together with the Debtor, and the Subsidiaries, the "Parties"). In support of the Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under to 28 U.S.C. § 157(b). Venue of this case and this matter is proper under 28 U.S.C. §§ 1408

and 1409.

2.      In accordance with Local Rule 9013-1(f), the Debtor consents to entry of a final order if it is determined that the Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

3.      The legal predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A. General Background

4.      On April 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

5.      The Debtor continues to manage and operate its business as debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.      No creditors' committee, trustee, or examiner has been appointed in this Chapter 11 Case.

7.      The Debtor is a privately owned corporation formed under the laws of Delaware on June 21, 2022, and is the successor entity of the conservative social media company formerly known as Parler Inc., which controlled the Parler social media platform. The Parler platform was a microblogging service that was both a website and an app. The Parler App launched in August 2018 and served as an alternative to larger mainstream social media platforms such as Twitter and Facebook.

8.      Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of this Chapter

11 Case, is set forth in detail in the *Declaration of Craig Jalbert in Support of the Debtor's Chapter 11 Petition and Bankruptcy Case* [Docket No. 42] (the "Jalbert Declaration").

    **B.  Specific Facts Relating to the Settlement**

9. In March 2024, immediately prior to the shutdown of the Debtor and resignation of its officers, the Debtor closed its account at Studio Bank and endorsed a cashier's check in the amount of $332,163.22 (the "Cash Transfers") for the remaining funds in that account to "Vincent Vuong and/or Dynascale Inc." (the "Receipt"). Vuong is (and was at the time of the Receipt) the Debtor's senior secured creditor. The Debtor alleges that Vuong lacked the authority to cause the Debtor to make the Cash Transfers.

10. In sum, the Debtor contends that the Cash Transfers are avoidable as fraudulent transfers under sections 544 and 548 of the Bankruptcy Code.

11. Vuong asserts the Cash Transfers were made for the benefit of the Debtor's estate to satisfy, among other things, delinquent payroll obligations of the Debtor, that the transfers were made in good faith for reasonably equivalent value, and that Vuong and the Subsidiaries had the requisite authority to accept the Receipt and effectuate the Cash Transfers.

12. However, the Parties all desire to avoid litigation and recognize that the Debtor's estate has a need for funds to administer the Chapter 11 Case as set forth in the *Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing Debtor to Obtain Post-Petition Financing and to Grant Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Utilize Cash Collateral and Pay Certain Related Fees and Charges; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 75] (the "DIP Motion").

13. Therefore, the Parties have agreed that Dynascale will repay the estate, upon court approval, $300,000 (the "Settlement Payment") in cash in full settlement of all possible estate claims relating to the Cash Transfers. Upon receipt of the Settlement Payment, the Debtor will release all claims related to the Cash Transfers against Vuong, the Subsidiaries and all direct and indirect recipients (the "Recipients") of the Cash Transfers.

14. As set forth in the DIP Motion, as an agreed upon "Bankruptcy Milestone" under the DIP Motion, the Debtor is required to obtain approval of this Settlement within thirty-five (35) days of entry of the interim DIP order (*i.e.,* August 7, 2024). *See* Docket No. 75-3.

15. For the avoidance of doubt, claims related to the Cash Transfers are the only claims being released by the Parties. The Debtor will retain any and all other claims or causes of action it may have against Vuong, the Subsidiaries or the Recipients. Likewise, Vuong, the Subsidiaries and the Recipients will retain any and all claims or causes of action that they have against the Debtor or, if applicable, as amongst themselves.

## REQUESTED RELIEF

16. By this Motion, the Debtor seeks the entry of an order approving the Settlement pursuant to Sections 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BASIS FOR RELIEF

17. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019 authorizes bankruptcy courts to approve a compromise following the filing of a motion and a hearing with notice to the creditors. Fed R. Bankr. P. 9019. Under Section 105(a) and Bankruptcy Rule 9019, the approval of a proposed compromise and settlement is committed to the sound discretion of the Court. *See In re*

*Aerogroup Int'l, Inc.*, 2019 WL 2120735 (Bankr. D. Del. May 13, 2019); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

18. In reviewing a proposed settlement, the Court must determine whether the proposed compromise is "fair and equitable." *Protective Comm. For Ind. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). This court has described the ultimate inquiry to be whether "the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. at 801.

19. The United States Supreme Court has noted that court approved settlements are a "normal part of the reorganization process," *see Anderson*, 390 U.S. at 424 (citation omitted), and are favored in bankruptcy in that they minimize litigation and expedite administration of the bankruptcy estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citations omitted).

20. The Third Circuit has enumerated four *Martin* factors to be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* A court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the proposed settlement is the best possible outcome; rather, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (quoting *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004)).

21. Here, a settlement among the Parties is warranted, is in the best interest of the estate and its creditors and will maximize and expedite creditor recoveries and lower potential

5

IMPAC 11594200v.8

administrative and professional expenses. The Settlement was the product of extensive, good-faith negotiations between the parties, culminating in an agreement that falls well within the range of reasonable litigation outcomes as to each of the issues encompassed by the Settlement Agreement. The Settlement avoids the parties engaging in complex issues of fact and law regarding the attribution and avoidability of the Cash Transfers. Moreover, it creates a pathway for Debtor's journey to continue on a go-forward basis by providing funding for the Chapter 11 Case. Litigating these various issues would involve significant cost, time, and risk. The resolution of issues pursuant to the Settlement will allow the Debtor, its creditors and its estate to avoid the costs, risks, and delay attendant upon any such litigation.

22. Accordingly, on balance, the Parties submit that the *Martin* factors weigh in favor of approving the Settlement, as further described below:

### A. The Probability of Litigation Success

23. As an initial matter, the Debtor strongly believes that the Cash Transfers are avoidable and could be recovered for the benefit of the estate.

24. Vuong, on the other hand, has taken the position that the Cash Transfers were validly authorized and unavoidable.

25. While the Debtor believes it would ultimately prevail, there is no guarantee in litigation outcomes.

26. While it may be appropriate to label this *Martin* factor as neutral based on the positions of the Parties, the Debtor believes that when considered in their totality, the remaining factors weigh heavily in favor of approving the Settlement.


**B.    Difficulties in Collection, the Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay Support the Settlement**

27.    If the Debtor did not enter into the Settlement, it would be forced to engage in litigation to seek the avoidance and recovery of the Cash Transfers.  As the Court is aware, such efforts involve time, resources and the incurrence of professional fees and expenses, all of which the Debtor lacks.

28.    Indeed, the Settlement Payment is a crucial part of the funding to proceed with these cases. The Debtor would otherwise lack the ability to pay attorneys and would need to seek out contingency counsel for what is at maximum a $332,163.22 claim.

29.    Nor is there any guarantee that the Debtor would be able to collect a judgment, let alone collect in a timely matter.  As the Court is aware and this Motion makes clear, there remain significant claims that the Parties still have outstanding.  The Cash Transfers likely could not be litigated in isolation, meaning that litigation would be much broader and more expensive.  There is no guarantee that Vuong would not have the ability to setoff liabilities for the Cash Transfers against other obligations he claims the Debtor owes to him or the Subsidiaries.

30.    Thus, the second and third *Martin* factor also weigh in favor of approving the Settlement.

**C.    The Paramount Interests of Creditors**

31.    The paramount interest of creditors will be best served by approving the Settlement. The Settlement will provide a path to allow the Debtor to pursue a value-maximizing sale process for Debtor's assets.  Moreover, the Settlement also enables the Debtor to pursue other non-sale assets, increase the likelihood of further recoveries for the Debtor's estate from other sources. Lastly, the Settlement will allow the Debtor to avoid costly litigation.  Timely approval of this Settlement is a key case milestone and an express condition of the extension of DIP financing.

Absent this Settlement, the Debtor and its estate would likely have no other option other than a conversion to chapter 7 or a dismissal. The Settlement, therefore, ensures that the Debtor's will be entitled to a material recovery without the need to drain further resources by engaging in costly litigation.

32. This final *Martin* factor also weighs in favor of approving the Settlement.

33. Based on the foregoing, the Settlement satisfies Bankruptcy Rule 9019 as it is fair, reasonable, and in the best interests of the Debtor, its estate, creditors, and other stakeholders. As such, the Debtor respectfully requests that the Court approve the Settlement.

## **NOTICE**

34. Notice of this Motion will be provided to the following parties or their respective counsel: (i) the Office of the United States Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) counsel to the DIP Lenders; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of Delaware; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## **NO PRIOR REQUEST**

35. No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtor hereby respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other further relief as may be just and proper.

Dated: July 22, 2024
      Wilmington, Delaware

Respectfully submitted,

*/s/ R. Stephen McNeill*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
        rmcneill@potteranderson.com
        srizvi@potteranderson.com

*Proposed Counsel for the Debtor and Debtor in Possession*

IMPAC 11594200v.8