# UNITED STATES BANKRUPTCY COURT

DISTRICT OF  Delaware

In Re. Parlement Technologies, Inc.

§
§
§
§

Debtor(s)

Case No.  24-10755

☐ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 08/31/2024

Petition Date: 04/15/2024

Months Pending: 5

Industry Classification: | 5 | 4 | 1 | 9 |

Reporting Method:          Accrual Basis  ◉          Cash Basis  ○

Debtor's Full-Time Employees (current):                               0

Debtor's Full-Time Employees (as of date of order for relief):       0

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒     Statement of cash receipts and disbursements
☒     Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☒     Statement of operations (profit or loss statement)
☐     Accounts receivable aging
☒     Postpetition liabilities aging
☐     Statement of capital assets
☒     Schedule of payments to professionals
☒     Schedule of payments to insiders
☒     All bank statements and bank reconciliations for the reporting period
☐     Description of the assets sold or transferred and the terms of the sale or transfer

/s/ R. Stephen McNeill, Esq.

Signature of Responsible Party

09/19/2024

Date

R. Stephen McNeill, Esq.

Printed Name of Responsible Party

Potter Anderson & Corroon, LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801-6108

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

| Debtor's Name Parlement Technologies, Inc. | | Case No. 24-10755 |

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a.  Cash balance beginning of month | $200,100 | |
| b.  Total receipts (net of transfers between accounts) | $1,000,000 | $1,200,100 |
| c.  Total disbursements (net of transfers between accounts) | $162,750 | $162,750 |
| d.  Cash balance end of month (a+b-c) | $1,037,350 | |
| e.  Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f.  Total disbursements for quarterly fee calculation (c+e) | $162,750 | $162,750 |

| Part 2:  Asset and Liability Status (Not generally applicable to Individual Debtors. See Instructions.) | Current Month |
|---|---|
| a.  Accounts receivable (total net of allowance) | $0 |
| b.  Accounts receivable over 90 days outstanding (net of allowance) | $0 |
| c.  Inventory    (Book ◯   Market ◯   Other ⦿   (attach explanation)) | $0 |
| d   Total current assets | $69,889,417 |
| e.  Total assets | $74,738,384 |
| f.  Postpetition payables (excluding taxes) | $1,415,456 |
| g.  Postpetition payables past due (excluding taxes) | $0 |
| h.  Postpetition taxes payable | $0 |
| i.  Postpetition taxes past due | $0 |
| j.  Total postpetition debt (f+h) | $1,415,456 |
| k.  Prepetition secured debt | $0 |
| l.  Prepetition priority debt | $0 |
| m.  Prepetition unsecured debt | $20,525,884 |
| n.  Total liabilities (debt) (j+k+l+m) | $21,941,341 |
| o.  Ending equity/net worth (e-n) | $52,797,043 |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a.  Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b.  Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c.  Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations) (Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a.  Gross income/sales (net of returns and allowances) | $400,000 | |
| b.  Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c.  Gross profit (a-b) | $400,000 | |
| d.  Selling expenses | $0 | |
| e.  General and administrative expenses | $0 | |
| f.  Other expenses | $185,705 | |
| g.  Depreciation and/or amortization (not included in 4b) | $0 | |
| h.  Interest | $1,542 | |
| i.  Taxes (local, state, and federal) | $0 | |
| j.  Reorganization items | $140,467 | |
| k.  Profit (loss) | $72,285 | $-517,979 |

Debtor's Name  Parlement Technologies, Inc.                                    Case No.  24-10755

| Part 5:  Professional Fees and Expenses | | | | | | |
|---|---|---|---|---|---|---|
| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
| a. | Debtor's professional fees & expenses (bankruptcy)  *Aggregate Total* | | $141,929 | $141,929 | $79,872 | $79,872 |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | Bielli & Klauder, LLC | Lead Counsel | $79,872 | $79,872 | $79,872 | $79,872 |
| ii | Potter Anderson & Corroon, LL | Lead Counsel | $62,057 | $62,057 | $0 | $0 |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |
| xv | | | | | | |
| xvi | | | | | | |
| xvii | | | | | | |
| xviii | | | | | | |
| xix | | | | | | |
| xx | | | | | | |
| xxi | | | | | | |
| xxii | | | | | | |
| xxiii | | | | | | |
| xxiv | | | | | | |
| xxv | | | | | | |
| xxvi | | | | | | |
| xxvii | | | | | | |
| xxviii | | | | | | |
| xxix | | | | | | |
| xxx | | | | | | |
| xxxi | | | | | | |
| xxxii | | | | | | |
| xxxiii | | | | | | |
| xxxiv | | | | | | |
| xxxv | | | | | | |
| xxxvi | | | | | | |

Debtor's Name  Parlement Technologies, Inc.                    Case No.  24-10755

| | | | | | |
|---|---|---|---|---|---|
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |
| lvii | | | | | |
| lviii | | | | | |
| lix | | | | | |
| lx | | | | | |
| lxi | | | | | |
| lxii | | | | | |
| lxiii | | | | | |
| lxiv | | | | | |
| lxv | | | | | |
| lxvi | | | | | |
| lxvii | | | | | |
| lxviii | | | | | |
| lxix | | | | | |
| lxx | | | | | |
| lxxi | | | | | |
| lxxii | | | | | |
| lxxiii | | | | | |
| lxxiv | | | | | |
| lxxv | | | | | |
| lxxvi | | | | | |
| lxxvii | | | | | |
| lxxvii | | | | | |

Debtor's Name  Parlement Technologies, Inc.                                    Case No.  24-10755

| | | | | | | |
|---|---|---|---|---|---|---|
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxiii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvii | | | | | | |
| lxxxviii | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |
| xcix | | | | | | |
| c | | | | | | |
| ci | | | | | | |

| | | | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy)  *Aggregate Total* | | $0 | | | |
| | *Itemized Breakdown by Firm* | | | | | |
| | Firm Name | Role | | | | |
| i | | | $0 | | | |
| ii | | | | | | |
| iii | | | | | | |
| iv | | | | | | |
| v | | | | | | |
| vi | | | | | | |
| vii | | | | | | |
| viii | | | | | | |
| ix | | | | | | |
| x | | | | | | |
| xi | | | | | | |
| xii | | | | | | |
| xiii | | | | | | |
| xiv | | | | | | |

Debtor's Name  Parlement Technologies, Inc.                    Case No.  24-10755

| | | | | | |
|---|---|---|---|---|---|
| xv | | | | | |
| xvi | | | | | |
| xvii | | | | | |
| xviii | | | | | |
| xix | | | | | |
| xx | | | | | |
| xxi | | | | | |
| xxii | | | | | |
| xxiii | | | | | |
| xxiv | | | | | |
| xxv | | | | | |
| xxvi | | | | | |
| xxvii | | | | | |
| xxviii | | | | | |
| xxix | | | | | |
| xxx | | | | | |
| xxxi | | | | | |
| xxxii | | | | | |
| xxxiii | | | | | |
| xxxiv | | | | | |
| xxxv | | | | | |
| xxxvi | | | | | |
| xxxvii | | | | | |
| xxxvii | | | | | |
| xxxix | | | | | |
| xl | | | | | |
| xli | | | | | |
| xlii | | | | | |
| xliii | | | | | |
| xliv | | | | | |
| xlv | | | | | |
| xlvi | | | | | |
| xlvii | | | | | |
| xlviii | | | | | |
| xlix | | | | | |
| l | | | | | |
| li | | | | | |
| lii | | | | | |
| liii | | | | | |
| liv | | | | | |
| lv | | | | | |
| lvi | | | | | |

Debtor's Name  Parlement Technologies, Inc.                    Case No.  24-10755

| | | | | | | |
|---|---|---|---|---|---|---|
| lvii | | | | | | |
| lviii | | | | | | |
| lix | | | | | | |
| lx | | | | | | |
| lxi | | | | | | |
| lxii | | | | | | |
| lxiii | | | | | | |
| lxiv | | | | | | |
| lxv | | | | | | |
| lxvi | | | | | | |
| lxvii | | | | | | |
| lxviii | | | | | | |
| lxix | | | | | | |
| lxx | | | | | | |
| lxxi | | | | | | |
| lxxii | | | | | | |
| lxxiii | | | | | | |
| lxxiv | | | | | | |
| lxxv | | | | | | |
| lxxvi | | | | | | |
| lxxvii | | | | | | |
| lxxvii | | | | | | |
| lxxix | | | | | | |
| lxxx | | | | | | |
| lxxxi | | | | | | |
| lxxxii | | | | | | |
| lxxxii | | | | | | |
| lxxxiv | | | | | | |
| lxxxv | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxvi | | | | | | |
| lxxxix | | | | | | |
| xc | | | | | | |
| xci | | | | | | |
| xcii | | | | | | |
| xciii | | | | | | |
| xciv | | | | | | |
| xcv | | | | | | |
| xcvi | | | | | | |
| xcvii | | | | | | |
| xcviii | | | | | | |

Debtor's Name  Parlement Technologies, Inc.                                    Case No.  24-10755

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | xcix | | | | | | |
| | c | | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | | |

| Part 6:  Postpetition Taxes | Current Month | Cumulative |
|---|---|---|
| a. Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. Postpetition employer payroll taxes accrued | $0 | $0 |
| d. Postpetition employer payroll taxes paid | $0 | $0 |
| e. Postpetition property taxes paid | $0 | $0 |
| f. Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

**Part 7: Questionnaire - During this reporting period:**

| | | | |
|---|---|---|---|
| a. | Were any payments made on prepetition debt?  (if yes, see Instructions) | Yes ○  No ● | |
| b. | Were any payments made outside the ordinary course of business without court approval?  (if yes, see Instructions) | Yes ○  No ● | |
| c. | Were any payments made to or on behalf of insiders? | Yes ●  No ○ | |
| d. | Are you current on postpetition tax return filings? | Yes ●  No ○ | |
| e. | Are you current on postpetition estimated tax payments? | Yes ●  No ○ | |
| f. | Were all trust fund taxes remitted on a current basis? | Yes ●  No ○ | |
| g. | Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions) | Yes ●  No ○ | |
| h. | Were all payments made to or on behalf of professionals approved by the court? | Yes ●  No ○  N/A ○ | |
| i. | Do you have:    Worker's compensation insurance? | Yes ○  No ● | |
| | If yes, are your premiums current? | Yes ○  No ○  N/A ●  (if no, see Instructions) | |
| | Casualty/property insurance? | Yes ○  No ● | |
| | If yes, are your premiums current? | Yes ○  No ○  N/A ●  (if no, see Instructions) | |
| | General liability insurance? | Yes ○  No ● | |
| | If yes, are your premiums current? | Yes ○  No ○  N/A ●  (if no, see Instructions) | |
| j. | Has a plan of reorganization been filed with the court? | Yes ○  No ● | |
| k. | Has a disclosure statement been filed with the court? | Yes ○  No ● | |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ●  No ○ | |

Debtor's Name  Parlement Technologies, Inc.                                    Case No.  24-10755

**Part 8: Individual Chapter 11 Debtors (Only)**

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ◯  No ◉ |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ◯  No ◯  N/A ◉ |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107.  The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6).  The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith.  This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law.  Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records."  *See* 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006).  A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm.  Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee.  11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

/s/ Craig Jalbert                                                Craig Jalbert
_____                                 _____
Signature of Responsible Party                                   Printed Name of Responsible Party

Chief Restructuring Officer                                      09/19/2024
_____                                 _____
Title                                                            Date

Debtor's Name  Parlement Technologies, Inc.                                    Case No.  24-10755



PageOnePartOne



PageOnePartTwo



PageTwoPartOne



PageTwoPartTwo

Debtor's Name  Parlement Technologies, Inc.                                        Case No.  24-10755



Bankruptcy1to50

Bankruptcy51to100



NonBankruptcy1to50

NonBankruptcy51to100

Debtor's Name  Parlement Technologies, Inc.                    Case No.  24-10755



PageThree



PageFour

2:01 PM
09/18/24
Accrual Basis

Case 24-10755-CTG    Doc 177    Filed 09/19/24    Page 13 of 66

Paramount Technologies Inc

**Transaction Detail by Account**

August 2024

Statement Rec & Disb-August

| | Type | Date | Num | Adj | Name | Memo | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Citizens-1394-DIP Acct** | | | | | | | | | | | |
| | Deposit | 08/01/2024 | | | Vinh Vuong | Deposit | Ö | Priority DIP Tranche | 200,000.00 | | 200,000.00 |
| | Bill Pmt -Check | 08/05/2024 | ACH | | Gray & Company | | Ö | Accounts Payable | | 62,500.00 | 137,500.00 |
| | Deposit | 08/09/2024 | | | George Farmer | Deposit | Ö | Priority DIP Tranche | 50,000.00 | | 187,500.00 |
| | Deposit | 08/12/2024 | | | Brown Rudnick | Deposit | Ö | Priority DIP Tranche | 200,000.00 | | 387,500.00 |
| | Check | 08/20/2024 | Online paym | | US Trustee | Case 24-10755 - Q2-2024 | Ö | US Trustee Fees | | 250.00 | 387,250.00 |
| | Deposit | 08/22/2024 | | | Lord Michael Stahel Farmer | Deposit | Ö | Priority DIP Tranche | 150,000.00 | | 537,250.00 |
| | Deposit | 08/30/2024 | | | Dynascale Inc | Deposit | Ö | 9019 Proceeds | 300,000.00 | | 837,250.00 |
| Total Citizens-1394-DIP Acct | | | | | | | | | 900,000.00 | 62,750.00 | 837,250.00 |
| **Outside Cash** | | | | | | | | | | | |
| | General Journal | 08/29/2024 | MRA-19 | √ | Dynascale Inc | To recognize remaining Dynascale 9019 settlement | | 9019 Proceeds | 100,000.00 | | 100,000.00 |
| | General Journal | 08/30/2024 | MRA-20 | √ | Dynascale Inc | To recognize Investment Banker fee paid directly by Dynasca | | Investment Banker | | 100,000.00 | 0.00 |
| Total Outside Cash | | | | | | | | | 100,000.00 | 100,000.00 | 0.00 |
| **TOTAL** | | | | | | | | | **1,000,000.00** | **162,750.00** | **837,250.00** |

2:03 PM
09/18/24
Accrual Basis

Case 24-10755-CTG   Doc 117   Filed 09/19/24   Page 14 of 66

Parkway Technologies Inc

Stmt Rec & Disb Cumul thru Aug

**Transaction Detail by Account**
April 15 through August 31, 2024

| | Type | Date | Num | Adj | Name | Memo | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Citizens-1394-DIP Acct** | | | | | | | | | | | |
| | Deposit | 07/30/2024 | | | Verdolino & Lowey, PC | Deposit to open DIP bank account | Ö | Accounts Payable | 100.00 | | 100.00 |
| | Deposit | 07/30/2024 | | | George Farmer | Deposit | Ö | Priority DIP Tranche | 100,000.00 | | 100,100.00 |
| | Deposit | 07/30/2024 | | | Brown Rudnick | Deposit | Ö | Priority DIP Tranche | 100,000.00 | | 200,100.00 |
| | Deposit | 08/01/2024 | | | Vinh Vuong | Deposit | Ö | Priority DIP Tranche | 200,000.00 | | 400,100.00 |
| | Bill Pmt -Check | 08/05/2024 | ACH | | Gray & Company | | Ö | Accounts Payable | | 62,500.00 | 337,600.00 |
| | Deposit | 08/09/2024 | | | George Farmer | Deposit | Ö | Priority DIP Tranche | 50,000.00 | | 387,600.00 |
| | Deposit | 08/12/2024 | | | Brown Rudnick | Deposit | Ö | Priority DIP Tranche | 200,000.00 | | 587,600.00 |
| | Check | 08/20/2024 | Online paym | | US Trustee | Case 24-10755 - Q2-2024 | Ö | US Trustee Fees | | 250.00 | 587,350.00 |
| | Deposit | 08/22/2024 | | | Lord Michael Stahel Farmer | Deposit | Ö | Priority DIP Tranche | 150,000.00 | | 737,350.00 |
| | Deposit | 08/30/2024 | | | Dynascale Inc | Deposit | Ö | 9019 Proceeds | 300,000.00 | | 1,037,350.00 |
| Total Citizens-1394-DIP Acct | | | | | | | | | 1,100,100.00 | 62,750.00 | 1,037,350.00 |
| **Outside Cash** | | | | | | | | | | | |
| | General Journal | 08/29/2024 | MRA-19 | √ | Dynascale Inc | To recognize remaining Dynascale 9019 settlement | | 9019 Proceeds | 100,000.00 | | 100,000.00 |
| | General Journal | 08/30/2024 | MRA-20 | √ | Dynascale Inc | To recognize Investment Banker fee paid directly by Dynasca | | Investment Banker | | 100,000.00 | 0.00 |
| Total Outside Cash | | | | | | | | | 100,000.00 | 100,000.00 | 0.00 |
| **TOTAL** | | | | | | | | | 1,200,100.00 | 162,750.00 | 1,037,350.00 |

9:42 AM
09/18/24
Accrual Basis

Case 24-10755-CTG  Parler Technologies, LLC  Doc 17  Filed 09/19/24  Page 15 of 66

**Balance Sheet**
**As of August 31, 2024**

|                                          | Aug 31, 24     |
|------------------------------------------|---------------:|
| **ASSETS**                               |                |
|   **Current Assets**           |                |
|     **Checking/Savings** |            |
|       Citizens-1394-DIP Acct | 1,037,350.00 |
|     **Total Checking/Savings** | 1,037,350.00 |
|     **Other Current Assets** |          |
|       Investment in -Alchemy Data | 5,059,600.00 |
|       Investment in -Dynascale Inc | 22,740,400.00 |
|       Investment in -Parler 2022 Inc | 38,398,272.76 |
|       Prepaid Insurance | 57,408.14 |
|       Prepaid Other |           |
|         Prepaid Financial Advisory | 47,868.50 |
|         Prepaid Legal Retainer | 4,282.61 |
|         Prepaid Other - Other | 54,235.09 |
|       **Total Prepaid Other** | 106,386.20 |
|       Short Term Notes Receivable | 2,500,000.00 |
|     **Total Other Current Assets** | 68,862,067.10 |
|   **Total Current Assets**     | 69,899,417.10  |
|   **Other Assets**             |                |
|     Deferred Fed Tax (Credit) | 3,606,000.00 |
|     Deferred State Tax (Credit) | 1,112,189.23 |
|     Notes Receivable | 120,777.56    |
|   **Total Other Assets**       | 4,838,966.79   |
| **TOTAL ASSETS**                         | **74,738,383.89** |
| **LIABILITIES & EQUITY**                 |                |
|   **Liabilities**              |                |
|     **Current Liabilities** |         |
|       **Accounts Payable** |  |
|         Accounts Payable | 576,386.82 |
|       **Total Accounts Payable** | 576,386.82 |
|       **Other Current Liabilities** | |
|         Accrued Expense | 37,500.00 |
|         DIP Financing |  |
|           Priority DIP Tranche | 801,569.68 |
|         **Total DIP Financing** | 801,569.68 |
|       **Total Other Current Liabilities** | 839,069.68 |
|     **Total Current Liabilities** | 1,415,456.50 |
|     **Long Term Liabilities** |      |
|       **Liab Subject to Compromise** | |
|         Deferred Revenue | 349,916.57 |
|         Shareholder Loan | 250,000.00 |
|         Liab Subject to Compromise - Other | 19,925,967.87 |
|       **Total Liab Subject to Compromise** | 20,525,884.44 |
|     **Total Long Term Liabilities** | 20,525,884.44 |
|   **Total Liabilities**        | 21,941,340.94  |
|   **Equity**                   |                |
|     Common Stock - Class A | 28,850,815.34 |
|     Common Stock - Parler 2022 Inc | -36,750.00 |
|     Preferred Stock - Class A | 28,721,057.42 |
|     Retained Earnings | -3,381,312.62 |
|     Net Income       | -1,356,767.19  |
|   **Total Equity**             | 52,797,042.95  |
| **TOTAL LIABILITIES & EQUITY**           | **74,738,383.89** |

# Profit & Loss
## August 2024

|  | Aug 24 |
|---|---|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| 9019 Proceeds | 400,000.00 |
| **Total Income** | 400,000.00 |
| **Gross Profit** | 400,000.00 |
| **Expense** |  |
| **Interest Expense** |  |
| Priority DIP Tranche Interest | 1,542.28 |
| **Total Interest Expense** | 1,542.28 |
| **Other Expense** |  |
| Claims Agent | 5,705.32 |
| CRO Fes - C. Jalbert | 7,500.00 |
| DIP Lender Fee | 40,000.00 |
| Director Fees - S. Gray | 32,500.00 |
| Investment Banker | 100,000.00 |
| **Total Other Expense** | 185,705.32 |
| **Professional Fees** |  |
| **Debtor Counsel** |  |
| Fees & Expenses-Potter Anderson | 123,748.00 |
| **Total Debtor Counsel** | 123,748.00 |
| **Financial Advisor** |  |
| **Fees & Expenses-V&L PC** |  |
| Expenses - V&L PC | 123.64 |
| Fees & Expenses-V&L PC - Other | 16,345.50 |
| **Total Fees & Expenses-V&L PC** | 16,469.14 |
| **Total Financial Advisor** | 16,469.14 |
| **Total Professional Fees** | 140,217.14 |
| **US Trustee Fees** | 250.00 |
| **Total Expense** | 327,714.74 |
| **Net Ordinary Income** | 72,285.26 |
| **Net Income** | 72,285.26 |

## Carlton Technologies, Inc.
## Profit & Loss
### April 15 through August 31, 2024

| | Apr 15 - Aug 31, 24 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **9019 Proceeds** | 400,000.00 |
| **Total Income** | 400,000.00 |
| **Gross Profit** | 400,000.00 |
| **Expense** | |
| **Interest Expense** | |
| **Priority DIP Tranche Interest** | 1,569.68 |
| **Total Interest Expense** | 1,569.68 |
| **Other Expense** | |
| **Claims Agent** | 30,513.49 |
| CRO Fes - C. Jalbert | 30,000.00 |
| **DIP Lender Fee** | 40,000.00 |
| Director Fees - S. Gray | 122,500.00 |
| **Investment Banker** | 100,000.00 |
| **Total Other Expense** | 323,013.49 |
| **Professional Fees** | |
| **Debtor Counsel** | |
| Fees & Expense-Bielli & Klauder | |
| Expenses-Bielli & Klauder | 422.50 |
| Fees & Expense-Bielli & Klauder - Other | 79,450.00 |
| Total Fees & Expense-Bielli & Klauder | 79,872.50 |
| Fees & Expenses-Potter Anderson | |
| Expenses-Potter Anderson | 877.73 |
| Fees & Expenses-Potter Anderson - Other | 353,549.00 |
| Total Fees & Expenses-Potter Anderson | 354,426.73 |
| **Total Debtor Counsel** | 434,299.23 |
| **Financial Advisor** | |
| Fees & Expenses-V&L PC | |
| Expenses - V&L PC | 124.60 |
| Fees & Expenses-V&L PC - Other | 140,497.50 |
| Total Fees & Expenses-V&L PC | 140,622.10 |
| **Total Financial Advisor** | 140,622.10 |
| **Special Counsel** | |
| Fees & Expenses-David J. Merril | |
| Expenses-David J. Merrill PC | 412.00 |
| Fees & Expenses-David J. Merril - Other | 17,812.50 |
| Total Fees & Expenses-David J. Merril | 18,224.50 |
| **Total Special Counsel** | 18,224.50 |
| **Total Professional Fees** | 593,145.83 |
| **US Trustee Fees** | 250.00 |
| **Total Expense** | 917,979.00 |
| **Net Ordinary Income** | -517,979.00 |
| **Net Income** | **-517,979.00** |

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| David J. Merrill, P.C. | 0.00 | 3,301.25 | 3,990.00 | 10,933.25 | 0.00 | 18,224.50 |
| Gray & Company | 32,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,500.00 |
| Potter Anderson & Corroon, LLP | 123,748.00 | 153,183.83 | 77,494.90 | 0.00 | 0.00 | 354,426.73 |
| Reliable Copy Service, Inc. | 0.00 | 5,705.32 | 9,826.67 | 14,981.50 | 0.00 | 30,513.49 |
| Verdolino & Lowey, PC | 16,469.14 | 9,561.00 | 114,691.96 | 0.00 | 0.00 | 140,722.10 |
| TOTAL | 172,717.14 | 171,751.40 | 206,003.53 | 25,914.75 | 0.00 | 576,386.82 |

## Parker Technologies, LLC
## Payments to Insiders
### August 2024

| | Type | Date | Num | Adj | Name | Memo | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Citizens-1394-DIP Acct** | | | | | | | | | | | |
| | Bill Pmt -Check | 08/05/2024 | ACH | | Gray & Company | | √ | Accounts Payable | | 62,500.00 | -62,500.00 |
| Total Citizens-1394-DIP Acct | | | | | | | | | 0.00 | 62,500.00 | -62,500.00 |
| **TOTAL** | | | | | | | | | 0.00 | 62,500.00 | -62,500.00 |

| | Firm Name | Role | Aug 2024 fee amount | Aug 2024 expense amount | Month Total amount | Cumulative amount |
|---|---|---|---|---|---|---|
| | | | | | | |
| | Fees & Expenses Approved for Payment | | | | | |
| | Bielli & Klauder, LLC | Debtor Counsel | $ 79,450.00 | $ 422.50 | $ 79,872.50 | $ 79,872.50 |
| | Potter Anderson & Corroon LLP | Debtor Counsel | $ 61,753.20 | $ 303.40 | $ 62,056.60 | $ 62,056.60 |
| | David J. Merrill, P.C. | Special Counsel | | | $ - | $ - |
| | Verdolino & Lowey, P.C. | Financial Advisory | | | $ - | $ - |
| | BROWN RUDNICK LLP | DIP Counsel | | | $ - | $ - |
| | | | | | | |
| | Subtotal Approved | | $ 141,203.20 | $ 725.90 | $ 141,929.10 | $ 141,929.10 |
| | | | | | | |
| | Fees & Expenses Paid | | | | | |
| | Bielli & Klauder, LLC (*) | Debtor Counsel | $ 79,450.00 | $ 422.50 | $ 79,872.50 | $ 79,872.50 |
| | Potter Anderson & Corroon LLP | Debtor Counsel | | | $ - | $ - |
| | David J. Merrill, P.C. | Special Counsel | | | $ - | $ - |
| | Verdolino & Lowey, P.C. | Financial Advisory | | | $ - | $ - |
| | BROWN RUDNICK LLP | DIP Counsel | | | $ - | $ - |
| | | | | | | |
| | Subtotal Paid | | $ 79,450.00 | $ 422.50 | $ 79,872.50 | $ 79,872.50 |
| | | | | | | |
| | | | | | | |
| * | Bielli & Klauder, LLC paid from retainer. | | | | | |

**12:30 PM**

**09/04/24**

# Parlement Technologies, Inc.
## Reconciliation Detail
### Citizens-1394-DIP Acct, Period Ending 08/31/2024

| Type | Date | Num | Name | Clr | Amount | Balance |
|------|------|-----|------|-----|--------|---------|
| **Beginning Balance** | | | | | | 200,100.00 |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 2 items** | | | | | | |
| Bill Pmt -Check | 08/05/2024 | ACH | Gray & Company | X | -62,500.00 | -62,500.00 |
| Check | 08/20/2024 | Online... | US Trustee | X | -250.00 | -62,750.00 |
| Total Checks and Payments | | | | | -62,750.00 | -62,750.00 |
| **Deposits and Credits - 5 items** | | | | | | |
| Deposit | 08/01/2024 | | Vinh Vuong | X | 200,000.00 | 200,000.00 |
| Deposit | 08/09/2024 | | George Farmer | X | 50,000.00 | 250,000.00 |
| Deposit | 08/12/2024 | | Brown Rudnick | X | 200,000.00 | 450,000.00 |
| Deposit | 08/22/2024 | | Lord Michael Stahel ... | X | 150,000.00 | 600,000.00 |
| Deposit | 08/30/2024 | | | X | 300,000.00 | 900,000.00 |
| Total Deposits and Credits | | | | | 900,000.00 | 900,000.00 |
| Total Cleared Transactions | | | | | 837,250.00 | 837,250.00 |
| Cleared Balance | | | | | 837,250.00 | 1,037,350.00 |
| Register Balance as of 08/31/2024 | | | | | 837,250.00 | 1,037,350.00 |
| **Ending Balance** | | | | | **837,250.00** | **1,037,350.00** |

12:31 PM

09/04/24

# Parlement Technologies, Inc.
## Reconciliation Summary
**Citizens-1394-DIP Acct, Period Ending 08/31/2024**

|  | Aug 31, 24 |
|---|---|
| **Beginning Balance** | 200,100.00 |
| **Cleared Transactions** |  |
| **Checks and Payments - 2 items** | -62,750.00 |
| **Deposits and Credits - 5 items** | 900,000.00 |
| **Total Cleared Transactions** | 837,250.00 |
| **Cleared Balance** | **1,037,350.00** |
| **Register Balance as of 08/31/2024** | 1,037,350.00 |
| **Ending Balance** | 1,037,350.00 |

 **Citizens**™

US702 | BR632
ROP 450
P.O. Box 7000
Providence, RI 02940

| | **Business Account Statement** |
|---|---|

**Page 1 of 3**

Beginning August 01, 2024
through August 31, 2024

**Questions? Contact us today:**

PARLAMENT TECHNOLOGIES INC
DIP CHAPTER 11 CASE NO 24-10755 CTG
124 WASHINGTON ST STE 101
FOXBORO MA  02035-1368

 **CALL:**
Business Account Customer Service
1-800-862-6200

 **VISIT:**
Access your account online:
citizensbank.com

 **MAIL:**
Citizens
Customer Service Center
P.O. Box 42001
Providence, RI 02940-2001

PARLAMENT TECHNOLOGIES INC
DIP CHAPTER 11 CASE NO 24-10755 CTG
**Analysis Business Checking**
**XXXXXX-139-4**

## Analysis Business Checking for XXXXXX-139-4

### Balance Calculation

| | | |
|---|---|---:|
| Previous Balance | | 200,100.00 |
| Checks | - | .00 |
| Debits | - | 62,750.00 |
| Deposits & Credit | + | 900,000.00 |
| **Current Balance** | = | 1,037,350.00 |

Your next statement period will end on September 30, 2024.

### TRANSACTION DETAILS FOR BUSINESS CHECKING ACCOUNT ENDING 139-4

| Debits ** | | | Previous Balance |
|---|---|---|---:|
| **May include checks that have been processed electronically by the payee/merchant. | | | **200,100.00** |
| | | | Total Debits |
| **Date** | **Amount** | **Description** | |
| | | | - 62,750.00 |
| *Other Debits* | | | |
| 08/02 | 62,500.00 | PARLAMENT 1394 ACH TRANS 240802 -SETT-DIGI BANK | |
| 08/21 | 250.00 | QUARTERLY FEE PAYMENT 240820 0000 | |

Please See Additional Information on Next Page

Member FDIC ⌂ Equal Housing Lender

## Analysis Business Checking for XXXXXX-139-4 Continued

### Deposits & Credits

| Date | Amount | Description | | Total Deposits & Credits |
|------|--------|-------------|---|-------------------------|
| 08/01 | 200,000.00 | INCOMING WIRE TRANSFER (MTS NO.240801000696) | + | 900,000.00 |
| 08/09 | 50,000.00 | INCOMING WIRE TRANSFER (MTS NO.240809010870) | | |
| 08/12 | 200,000.00 | INCOMING WIRE TRANSFER (MTS NO.240812011233) | | |
| 08/22 | 150,000.00 | INCOMING WIRE TRANSFER (MTS NO.240822000317) | | |
| 08/30 | 300,000.00 | INCOMING WIRE TRANSFER (MTS NO.240830018012) | | |

### Daily Balance

| Date | Balance | Date | Balance | Date | Balance | | Current Balance |
|------|---------|------|---------|------|---------|---|-----------------|
| 08/01 | 400,100.00 | 08/12 | 587,600.00 | 08/22 | 737,350.00 | = | 1,037,350.00 |
| 08/02 | 337,600.00 | 08/21 | 587,350.00 | 08/30 | 1,037,350.00 | | |
| 08/09 | 387,600.00 | | | | | | |

# ✳ CITIZENS™

### Checking Account Balance Worksheet
Before completing this worksheet, please be sure to adjust your checkbook register balance by

- Adding any interest earned
- Subtracting any fees or other charges

## 1
Your current balance on this statement

$ _____
Current Balance

## 2
List deposits which do not appear on this statement

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

+ $ _____
Total of 2

## 3
Subtotal by adding 1 and 2

= $ _____
Subtotal of 1 and 2

## 4
List outstanding checks, transfers, debits, POS purchases or withdrawals that do not appear on this statement.

| Date/ Check No. | Amount | Date/ Check No. | Amount |
|-----------------|--------|-----------------|--------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

- $ _____
Total of 4

## 5
Subtract 4 from 3. This should match your checkbook register balance.

= $ _____
Total

### CUSTOMER SERVICE
If you have any questions regarding your account or discover an error, call the number shown on the front of your statement or write to us at the following address:

*Citizens*
*Customer Service Center*
*P.O. Box 42001*
*Providence, RI 02940-2001*

### Change of Address
Please call the number shown at the front of your statement to notify us of a change of address.

### DEPOSIT ACCOUNTS ARE NON-TRANSFERABLE
Personal deposit accounts, such as CD's and savings accounts, cannot be transferred to another person or to a corporate entity.

Citizens is a brand name of Citizens Bank, N.A.    REV 12/22

### ELECTRONIC TRANSFERS
**In Case of Errors or Questions About Your Electronic Transfers**
(For Consumer Accounts Used Primarily for Personal, Family or Household Purposes)
Telephone us at the customer service number provided on Page 1 of this statement or write to us at the customer service address provided as soon as you can, if you think your statement or receipt is wrong or if you need more information about an electronic transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number, if any.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error and, if possible, the date it appeared on your statement or receipt.
- It will be helpful to us if you also give us a telephone number at which you can be reached in case we need any further information.

For consumer accounts used primarily for personal, family, or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

(For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.)

### OVERDRAFT LINES OF CREDIT
### BILLING RIGHTS SUMMARY
**What To Do If You Think You Find A Mistake On Your Statement:**
If you think there is an error on your statement write to us at the customer service address provided as soon as possible.
In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question. While we investigate whether or not there has been an error the following are true:

- We cannot try to collect the amount in question or report you as delinquent on that amount.
- The charge in question may remain on your statement and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

### INTEREST CHARGE CALCULATIONS FOR OVERDRAFT LINE OF CREDIT ACCOUNTS BASED ON AVERAGE DAILY BALANCE COMPUTATION METHOD

**Calculating your Interest Charge**
We calculate the interest charge on your Overdraft Line by applying the Daily Periodic Rate to the Average Daily Balance. Then, we multiply that result by the number of days in the billing cycle in which a balance is owed on your Overdraft Line. This gives us the total interest charge for that billing period.

**Calculating your Average Daily Balance**
To calculate the average daily balance, we take the beginning balance of your Overdraft Line each day (which does not include any unpaid interest charges or fees), and any new loan advances as of the date of those advances and subtract any payments or credits. This gives us the daily balance. Then, we add all the daily balances for the billing cycle together and divide the total by the number of days in the billing cycle. This gives us the average daily balance of your account.

**Credit Bureau Reporting**
We may report information about your Overdraft Line to credit bureaus for each joint account holder of your checking account. Late payments, missed payments, or other defaults on your Overdraft Line may be reflected in your credit report. If you believe we have furnished inaccurate or incomplete information to a credit reporting agency, write to us at the consumer service address provided and include your name, address, account number, and description of what you believe is inaccurate or incomplete.

*Thank you for banking with Citizens.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Parlement Technologies, Inc. (f/k/a Parler LLC, f/k/a Parler Inc.) | Case No. 24-10755 (CTG) |
| Debtor. | **Re: Docket No. 75** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) AND 507(a) (I) AUTHORIZING DEBTOR TO (A) OBTAIN POST-PETITION FINANCING AND TO GRANT SECURITY INTERESTS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c) AND 364(d); AND (B) UTILIZE CASH COLLATERAL AND PAY CERTAIN RELATED FEES AND CHARGES; (II) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Upon the motion (the "<u>Motion</u>") of the above-captioned debtor and debtor in possession (the "<u>Debtor</u>"), pursuant to sections 105, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), and rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for entry of this interim financing order (the "<u>Interim DIP Order</u>"), and among other things:

    i.    authorizing the Debtor to obtain senior secured post-petition financing (the "<u>Priority DIP Tranche</u>") in an aggregate maximum principal amount of $800,000 (the "<u>Priority DIP Amount</u>"), including up to $400,000 on an interim basis, on a superpriority basis pursuant to the terms and conditions of that certain term sheet

substantially the form attached hereto as <u>Exhibit 1</u> (the "<u>DIP Term Sheet</u>";[1] together with any additional agreements, documents, instruments and certificates executed, and any orders entered in connection therewith, or otherwise delivered in connection therewith by the Debtors, including this Interim and any final Order, collectively, the "<u>DIP Documents</u>"), as borrower, and Vincent Vuong ("<u>Vuong</u>") and NDMascendant, LLC or its designee ("<u>NDMA</u>") as lenders (collectively, the "<u>DIP Lenders</u>");

ii.  authorizing the Debtor to obtain junior secured post-petition financing (the "<u>Junior DIP Tranche</u>," together with the Priority DIP Tranche, the "<u>DIP Financing</u>") in an aggregate principal amount of $310,000 (the "<u>Junior DIP Amount</u>," and with the Priority DIP Amount, the "<u>DIP Amount</u>"), all of which shall be made available on an interim basis pursuant to the terms and conditions of the DIP Term and the other DIP Documents;

iii.  authorizing the Debtor to execute and deliver the DIP Term Sheet and other DIP Documents and to perform such other and further acts as may be necessary or desirable in connection with the DIP Documents;

iv.  ordering that, subject to the Carve-Out, in all respects, all obligations of the Debtor to the DIP Lenders in the Priority DIP Tranche under the DIP Documents shall be:

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the DIP Term Sheet.

A.      entitled to superpriority claim status under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code; and

B.      secured, pursuant to section 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, by a first priority lien on the Collateral (as defined in the DIP Term Sheet);

v.      ordering that, subject to the Carve-Out, the Priority DIP Tranche and the repayment of the Vuong Prepetition Secured Debt, in all respects, all obligations of the Debtor to NDMA in the Junior DIP Tranche under the DIP Documents shall be:

A.      entitled to superpriority claim status under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code; and

B.      secured, pursuant to section 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, by a lien on the Collateral;

vi.     authorizing the Debtor's use of cash collateral, as defined in section 363(a) of the Bankruptcy Code, pursuant to the terms and conditions set forth in this Interim DIP Order and the DIP Term Sheet;

vii.    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Orders (as defined below), as applicable;

viii.   subject to and effective only upon the entry of a Final DIP Order granting such relief, (a) waiving any right of the Debtor to surcharge against the Collateral, including pursuant to section 506(c) of the Bankruptcy Code or otherwise, (b)

3

providing that the DIP Lenders are not subject to the equitable doctrine of "marshaling," or any other similar doctrine with respect to the Collateral;

ix.     scheduling by the Court of an interim hearing (the "<u>Interim Hearing</u>") to consider entry of this Interim DIP Order;

x.      scheduling by the Court of a final hearing (the "<u>Final Hearing</u>") to consider entry of an order (in form and substance acceptable to the DIP Lenders), the "<u>Final DIP Order</u>" and, together with this Interim DIP Order, the "<u>DIP Orders</u>") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion;

xi.     approving the Final DIP Order; and

xii.    the granting of related relief.

The Court having considered the Motion, the terms of the DIP Term Sheet and the other DIP Documents, the *Gray Declaration*, and the evidence submitted at the hearing held before this Court on July 2, 2024 to consider entry of this Interim DIP Order (the "<u>Interim Hearing</u>"); and in accordance with Bankruptcy Rules 2002, 4001, 6004, and 9014 and Local Rules 2002-1, 4001-2, and 9013-1, due and proper notice of the Motion and the Interim Hearing having been given under the circumstances; and it appearing that no other or further notice need be provided; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtor, its creditors, its estates, and all other parties in interest; and essential for the continued operation of the Debtor's business; and all objections, if any, to the entry of this Interim DIP Order having been withdrawn, resolved or overruled by the

4

Court; and upon all of the proceedings had before this Court; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

IT IS HEREBY FOUND:

A.      Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

B.      On April 15, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11, commencing a chapter 11 case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Court").

C.      The Debtor is continuing to operate its business and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D.      The Debtor has represented that notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtor, by telecopy, email, overnight courier and/or hand delivery, to: (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the holders of the twenty (20) largest unsecured claims against the Debtors; (c) counsel to each of the DIP Lenders; (d) all other parties asserting a lien on or a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (e) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (f) any other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1.  Under the circumstances and given the nature of the relief sought in the Motion, such notice of the Interim Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and Local Rules 2002-1 and 4001-2.  The Court concludes that no further notice is

5

necessary and that the form, scope and timing of notice of the Motion were adequate and sufficient under the circumstances.

E.      This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue for this Chapter 11 Case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409.

F.      The Debtor requires access to post-petition financing in an amount necessary to fund (i) the Debtor's operations, (ii) the administrative costs of the Chapter 11 Cases, and (iii) the pursuit of a sale of substantially all the assets of Dynascale, Inc. and Alchemy Data Centers, LLC (together, the "Subsidiaries") or the Debtor's equity interests therein, as applicable (the "Subsidiary Asset Sale").

G.      In light of the Debtor's circumstances, the Debtor is unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of its estate under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Financing.  The only viable source of secured credit available to the Debtor, other than the use of cash collateral, is the DIP Financing.  The Debtor requires additional financing under the DIP Financing and under the terms of this Interim DIP Order to satisfy its post-petition liquidity needs.

H.      The Debtor requested immediate entry of this Interim DIP Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  Good and sufficient cause has been shown for entry of

6

this Interim DIP Order.  An immediate need exists for the Debtor to obtain funds and liquidity to continue operations, to satisfy in full the costs and expenses of administering the Chapter 11 Case, to preserve the value of its business and estate.  The ability of the Debtor to finance its operations, and to preserve and maintain the value of the Debtor's assets, and to maximize the return for all creditors, requires the immediate availability of the DIP Financing and the use of the cash collateral.  In the absence of the immediate availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtor's business would not be possible and serious and irreparable harm to the Debtor, its estate, and its creditors would occur.  Thus, the ability of the Debtor to preserve and maintain the value of its assets and maximize the return for creditors requires the availability of working capital from the DIP Financing and the use of cash collateral.  Accordingly, sufficient cause exists for the entry of this Interim DIP Order.

I.       Debtor's Stipulations.  Subject to the entry of a Final DIP Order, the Debtor admits, stipulates and agrees as follows, for itself and its estate that as of the Petition Date, the Debtor was lawfully indebted and liable to Vuong in respect of the obligations under the Secured Promissory Note dated as of September 19, 2022 (the "Vuong Note" and together with the documents related thereto, the "Vuong Note Documents")), in the aggregate principal amount of not less than $10,910,087.90 plus all accrued but unpaid interest, penalties and fees thereon (including interest paid in kind, prepayment premiums, and interest at the default rate, as applicable), fees, expenses, and all other obligations expressly provided for thereunder, or incurred in connection therewith, including any "Obligations" as defined in the Vuong Note Documents (such obligations under the Vuong Note Documents, the "Prepetition Vuong Note Obligations"), and the Debtor is unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Prepetition Vuong Note Obligations as the senior secured obligations of the estate subordinate

7

only to the Carve-Out (as defined below) and the repayment of the Priority DIP Amount. The Prepetition Vuong Note Obligations constitute legal, valid, and binding obligations of the Debtor. No offsets, defenses, or counterclaims to, or claims or causes of action that could reduce the amount or ranking of the Prepetition Vuong Note Obligations exist. No portion of the Prepetition Vuong Note Obligations (including any interest owed thereunder) is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity. The Vuong Note Documents are valid and enforceable by Vuong against the Debtor.

J.    The DIP Lenders will commit to providing DIP Financing in an amount necessary to fund both the Debtor's operations and the administrative costs of the Chapter 11 Case subject to and as set forth in an agreed-upon budget submitted by the Debtor and reasonably acceptable to the DIP Lenders, in an amount not exceeding $800,000 under the Priority DIP Tranche, with up to $400,000 being available on an interim basis (the "Interim Amount") and $310,000 under the Junior DIP Tranche, upon the terms and conditions set forth herein and in the DIP Term Sheet. Accordingly, after considering all of its practical alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim DIP Order and the DIP Documents represents the best financing currently available to the Debtor.

K.    The security interests and liens granted to the DIP Lenders pursuant to this Interim DIP Order are appropriate under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair

8

the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtor's estate, or (ii) the holders of such valid, perfected, prepetition security interests and liens, including, for the avoidance of doubt, Vuong has consented to the security interests and priming liens granted pursuant to this Interim DIP Order to the DIP Lenders.

L.      Based on the record presented to this Court by the Debtor, the DIP Financing and use of cash collateral have been negotiated in good faith and at arm's length between the Debtor and the DIP Lenders and any credit extended and loans made to the Debtor by the DIP Lenders pursuant to the Interim DIP Order, and the DIP Documents (the "DIP Obligations") shall be deemed to have been extended, issued or made, as the case may be, in good faith within the meaning of, section 364(e) of the Bankruptcy Code, and the DIP Lenders shall have all of the protections thereunder.

M.      Based on the record before this Court, it appears that the terms of this Interim DIP Order, including, without limitation, the terms of the DIP Financing are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

N.      The Debtor has requested entry of this Interim DIP Order.  The permission granted herein to use cash collateral and obtain funds under the DIP Financing is necessary to avoid immediate and irreparable harm to the Debtor's estate.  This Court concludes that entry of this Interim DIP Order is in the best interests of the Debtor and its estate as its implementation will, among other things, enhance the prospects for a successful completion of the Chapter 11 Case.

O.      Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, DETERMINED AND DECREED THAT:**[2]

1.    <u>Motion Granted</u>.  The Motion is granted on an interim basis on the terms and conditions set forth in this Interim DIP Order, with the foregoing findings incorporated herein by reference.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled.  This Interim DIP Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

2.    <u>Authorizations</u>.  The Debtor is hereby authorized to execute and enter into the DIP Documents.  The DIP Term Sheet, the other DIP Documents and this Interim DIP Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lenders as described herein; *provided* that in the event of a conflict between the DIP Documents and the Interim DIP Order, the Interim DIP Order shall control.  The Debtor is hereby authorized to borrow money pursuant to the DIP Term Sheet up to the Interim Amount.

3.    The DIP Financing may be used in accordance with the terms of this Interim DIP Order and the DIP Term Sheet (and subject to the Budget (defined below)) to fund the day-to-day working capital needs of the Debtor's operations and the chapter 11 administrative expenses incurred during the pendency of the Chapter 11 Case and to allow the Debtor, if subsequently approved by the Court, to sell the assets of the Subsidiaries (or its equity interests therein as applicable) to one or more purchasers.

4.    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements,

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

mortgages and financing statements), that may be reasonably required to ensure the performance of the Debtor's obligations under the DIP Financing, including, without limitation:

a)      the execution, delivery and performance of necessary documents related to the DIP Financing, including, without limitation, the DIP Term Sheet, and the other DIP Documents;

b)      the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtor and the DIP Lenders may agree; *provided,* that written notice of any material modification or amendment to the DIP Documents shall be filed on the docket of the Chapter 11 Case and shall be served upon (i) the Debtor's twenty (20) largest unsecured creditors, (ii) the U.S. Trustee, (iii) counsel to the Debtor, and (iv) counsel to each of the DIP Lenders (collectively, the "Notice Parties") each of whom shall have ten (10) business days from the date of service of such notice within which to object in writing to such modification or amendment. If any Notice Party (or any other party in interest with requisite standing) timely objects to any such material modification or amendment to the DIP Documents, such modification or amendment shall only be effective pursuant to an order of this Court; and

c)      the performance of all other acts required under or in connection with the DIP Documents.

5.      Upon execution and delivery of the DIP Term Sheet and the other DIP Documents, such DIP Documents shall constitute valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor and its estate (and any trustee appointed in the Chapter 11 Case) in

11

accordance with their respective terms and the terms of this Interim DIP Order for all purposes during the Chapter 11 Case, and a subsequently converted case under chapter 7 of the Bankruptcy Code or after the dismissal of the Chapter 11 Case.  No obligation, payment, transfer or grant of security under the DIP Term Sheet, the other DIP Documents or this Interim DIP Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    <u>Borrowing; Use of Cash Collateral</u>.  Subject to the budget attached hereto as <u>Exhibit 2</u> (as modified from time to time with the written consent of the DIP Lenders in their sole discretion, but without need for further Court order, the "<u>Budget</u>") and solely in compliance therewith and subject further to the terms and conditions of this Interim DIP Order and the DIP Documents, (a) the DIP Lenders will provide the DIP Financing in accordance with the terms of the DIP Documents, and (b) the Debtor is authorized to use cash collateral in accordance with the terms of this Interim DIP Order.

7.    Measured, on a cumulative basis, as of the last day of the first full week after the entry of this Interim Order and the last day of each week thereafter through, and including, the fourth week and, with respect to each week after the fourth week, on a trailing four-week basis, post-petition disbursements may not exceed 105% of budgeted disbursements during the applicable Budget period.

8.    <u>Interest, Fees, Costs and Expenses</u>.  The DIP Obligations under the Priority DIP Tranche shall bear interest at an interest rate of five percent (5%) per annum payable as provided

12

in the DIP Term Sheet.  For the avoidance of doubt, the DIP Obligations under the Junior DIP

Tranche shall not incur any interest.

9.    <u>Event of Default.</u>  Each of the following events, unless waived by each of the DIP

Lenders in writing, shall constitute an "**Event of Default**":

a)    the Debtor (A) fails to pay any payment (whether principal, interest, or otherwise) when such amount becomes due and payable under the DIP Term Sheet or (B) defaults in the due performance or observance of any other term, covenant, or agreement contained in the DIP Term Sheet (and, if such default is capable of being remedied, it has not been remedied within the cure period set forth in the DIP Term Sheet or, if no such cure period is provided, it has not been remedied to the reasonable satisfaction of the DIP Lenders five (5) business days following written notice to the Debtor of the occurrence of such event of default);

b)    the closing of the sale of the assets of the Subsidiaries (or the Debtor's interests therein, as applicable) pursuant to section 363 of the Bankruptcy Code that does not result in the repayment in full of the DIP Obligations;

c)    any representation, warranty, or statement made by the Debtor herein or in the DIP Documents or in any certificate delivered in connection with the DIP Documents shall prove to be untrue in any material respect on the date on which made or deemed made;

d)    the security interest granted to the DIP Lenders shall cease to be in full force and effect, or shall cease to create a perfected security interest in, and lien on, the Collateral purported to be created thereby;

e)    the DIP Term Sheet is or becomes invalid, ineffective or unenforceable against the Debtor, or either of the Subsidiaries, in whole or in part, or the Debtor, and/or the Subsidiaries, so assert or at any time deny the liability or the DIP Obligations;

f)    the Court shall enter an order dismissing the Chapter 11 Case, or converting it to a case under Chapter 7, or appointing a trustee or other responsible officer or an examiner with enlarged powers relating to the operation of the Debtor's business (beyond those set forth in sections 1106(a)(3) or (4) of the Bankruptcy Code) under section 1104 of the Bankruptcy Code, in each case, without the consent of the DIP Lenders in their sole discretion;

g)    the Debtor shall seek to, or shall support any other person's motion to, disallow in whole or in part the DIP Obligations or to challenge the validity, priority, or enforceability of the DIP Liens and superpriority claims hereunder;

h)    a debtor-in-possession financing order shall be entered in form and substance that is not acceptable to the DIP Lenders in their reasonable discretion or from and after

13

the date of entry thereof, the Interim DIP Order or the Final DIP Order, as applicable, shall cease to be in full force and effect or shall have been vacated, stayed, reversed, modified or amended (or the Debtor shall take any step to accomplish any of the foregoing) without the consent of the DIP Lenders in their sole discretion;

i)      the Debtor shall make any payments on any indebtedness that arose before the Petition Date other than as provided in the Budget or otherwise consented to by the DIP Lenders in their sole discretion;

j)      the Debtor shall be in breach or shall fail to comply with the terms of the DIP Orders, in any material respect;

k)      the Interim DIP Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lenders in their sole discretion;

l)      the DIP Term Sheet or any other DIP Document shall cease, for any reason, to be in full force and effect or the Debtor shall so assert in writing, or the DIP Liens shall cease to be effective and perfected with respect to any material item of Collateral described therein with the priority purported to be created by the DIP Documents;

m)      the Debtor shall fail to provide all information, approvals, documents or other instruments as the DIP Lenders may reasonably request, and as are customary for post-petition lenders to request;

n)      an application or motion shall be filed by the Debtor for the approval of post-petition financing from any party other than the DIP Lenders, including financing that provides for superpriority claims or priming liens on any of the DIP Lenders' collateral without the written consent of the DIP Lenders in their sole discretion;

o)      entry of an order terminating the right of the Debtor to use the DIP Financing;

p)      the Debtor's failure to comply with the Budget;

q)      The Court shall have entered an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the DIP Lenders with respect to any DIP Collateral without the prior written consent of the DIP Lenders; or

r)      The filing of a proposed plan of reorganization or liquidation by the Debtor or that is supported by the Debtor or either of the Subsidiaries that is not acceptable to the DIP Lenders.

10.      Upon the occurrence of an Event of Default and after five (5) business days' written

notice by the DIP Lenders to the Notice Parties (the "<u>Default Notice Period</u>"), the Debtor, or the

14

U.S. Trustee shall be entitled to seek an emergency hearing, and the DIP Lenders shall consent to such emergency hearing to determine if automatic stay shall terminate, and the DIP Lenders shall be permitted to exercise any remedies permitted by law, including any of the following actions, unless the Court determines that an Event of Default has not occurred:

a)   declare all or any portion of the outstanding DIP Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Debtor;

b)   enforce all liens and security interests in the DIP Collateral;

c)   institute proceedings to enforce payment of such DIP Obligations;

d)   terminate the obligation of the DIP Lenders to make DIP Loans; and

e)   exercise any other remedies and take any other actions available to it at law, in equity, under the DIP Term Sheet, the Bankruptcy Code, other applicable law or pursuant to this Interim DIP Order; *provided*, *however,* that the DIP Lenders shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period, including, but not limited to, the funding of the Carve-Out (as defined herein).

11.   <u>Termination of the DIP Financing and Use of Cash Collateral</u>.  Except with respect to the payment of the Carve-Out (as defined herein), the DIP Lenders' agreement to provide the DIP Financing in accordance with the DIP Documents and the Debtor's authorization to use cash collateral shall immediately and automatically terminate (except as the DIP Lenders may mutually otherwise agree in writing in their respective sole discretion), upon the earliest to occur of any of the following (each, a "<u>Termination Date</u>"):

a)   January 31, 2025;

b)   the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations;

c)   the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than DIP Lenders under section 363 or 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash the DIP Obligations or unless such financing is

15

subordinate to the DIP Obligations and consented to in writing by the DIP Lenders (which consent may be withheld in their reasonable discretion);

d)      the closing of the sale of the assets of the Subsidiaries (or the Debtor's interests therein, as applicable) pursuant to section 363 of the Bankruptcy Code;

e)      the dismissal of the Chapter 11 Case or its conversion to a case under chapter 7;

f)      failure to timely achieve any of the Bankruptcy Milestones set forth in the DIP Term Sheet, unless such Milestone has been waived or extended by the DIP Lenders;

g)      the Debtor shall exert control over the Subsidiaries, their assets, or their equity interests or attempt to file a chapter 11 petition in respect of or otherwise reorganize or liquidate the Subsidiaries, other than pursuant to the terms of an agreed upon sale of the Subsidiaries' assets as contemplated by the DIP Term Sheet;

h)      any DIP Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the DIP Lenders (which consent may be withheld in their sole discretion); or

i)      upon entry of an order of the Court finding an Event of Default or following the passage of the Default Notice Period with no action by the Debtor or the U.S. Trustee.

12.     Priority DIP Tranche Superpriority Claims. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations in the Priority DIP Tranche shall constitute allowed senior administrative expense claims against the Debtor (the "Priority DIP Tranche Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor's estate, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy

16

Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all assets of the Debtor as of the Petition Date and all proceeds thereof, subject only to the Carve-Out, to the extent specifically provided for herein.

13.    <u>Junior DIP Tranche Superpriority Claims</u>.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations in the Junior DIP Tranche shall constitute allowed administrative expense claims against the Debtor (the "<u>Junior DIP Tranche Superpriority Claims</u>," and together with the Priority DIP Tranche Superpriority Claims, the "<u>Superpriority Claims</u>") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor's estate, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all assets of the Debtor as of the Petition Date and all proceeds thereof, provided that the Junior DIP Tranche Superpriority Claims shall be subject and subordinate  to (a) the Carve-Out, (b) the Priority DIP Tranche, (c) the Priority DIP Tranche Superpriority Claims, (d) the Vuong Prepetition Secured Debt (as defined below), (e) any other duly perfected or statutory  prepetition liens in favor of third parties, and (f) the earned and court-approved broker's

17

fee and costs on account of the Subsidiary Asset Sale in an amount up to 5% of the proceeds of the Subsidiary Asset Sale, all as provided for herein or in the DIP Term Sheet.

14.    <u>Carve-Out</u>.  The liens and claims of or granted to the DIP Lenders and the liens and claims granted to secure the prepetition secured debt of Vincent Vuong (the "<u>Vuong Prepetition Secured Debt</u>") shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "<u>Carve-Out</u>"): (a) quarterly fees required to paid pursuant to 29 U.S.C. § 1930(a)(6) (the "<u>U.S. Trustee Fees</u>"), together with interest payable there on pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court; (b) the allowed accrued and unpaid reasonable fees and expenses of professionals employed by the Debtor (the "<u>Estate Professionals</u>") pursuant to Sections 327 and 330 of the Bankruptcy Code, not to exceed the total amounts set forth for such professionals, on an aggregate basis pursuant to the Approved Budget. In the event the DIP Financing is terminated prior to the Subsequent Advance, and notice of the Carve-Out Termination Date is provided, the DIP Lenders will fund the Carve-Out to the Debtor as needed to pay any fees and expenses of Estate Professionals that the Debtor is authorized to pay in accordance with the Approved Budget through the Carve-Out Termination Date pursuant to an interim compensation or other order entered by the Court.  Notwithstanding any other provision of this Interim DIP Order (including this paragraph), the Court retains and shall have all authority to consider and approve all applications for fees and expenses by any Estate Professionals, including for reasonableness thereof, or on any other basis under the Bankruptcy Code or Bankruptcy Rules, or otherwise under applicable law, and all funds that may be set aside for or applied to any such amounts or obligations shall remain fully subject to disgorgement or reallocation, based on the Court's orders exercising such reserved rights as described previously

18

in this sentence.  All professionals described in the preceding sentence shall be and remain subject to the jurisdiction of this Court for the purposes described in the preceding sentence.

15.    The "**Carve-Out Termination Date**" shall mean the earliest of (x) the occurrence of a default or event of default under the DIP Financing and notification to the Debtor of such default or event of default, (y) the date on which the any existing obligations have been paid in full and (z) the Maturity Date.

16.    After the Carve-Out Termination Date, DIP Lenders will provide to the Debtors in an amount equal to the Carve-Out payable by the Debtor through the Carve-Out Termination Date less any amounts previously paid to the Estate Professionals (to be used for the sole purpose of funding the applicable professionals through and after the Carve-Out Termination Date).

17.    Subject to the terms of this Interim DIP Order and any interim compensation order entered by the Court, the DIP Lenders shall be obligated to fund and the Debtor shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Estate Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute pre-Carve-Out Termination Date expenses and such payments shall not reduce or be deemed to reduce the post-Carve-Out Termination Date fees and expenses to the extent permitted to be paid pursuant to the foregoing.

18.    <u>Fee Entitlement</u>.  The Debtor is authorized, but not directed, to pay, without further Bankruptcy Court order, reasonable and documented fees and expenses of (1) Brown Rudnick LLP and (2) Saul Ewing LLP, each as counsel to NDMA, in connection with services rendered after the Petition Date; provided, however, that such fees and expenses incurred through the Maturity Date shall be paid only as an advance under the Junior DIP Tranche and are capped at $270,000 (the "<u>Fee Entitlement</u>").  The invoices for such fees and expenses shall not be required to comply

19

with any particular format, may be in summary form only, and may include redactions. The applicable professional shall serve copies of the invoices supporting the fees and expenses incurred under in connection with the Fee Entitlement on counsel to the Debtor, the U.S. Trustee, counsel to Vuong, and counsel to the official committee of unsecured creditors (the "Committee"), if any, and any fees and expenses incurred in connection with the Fee Entitlement shall be subject to prior fourteen (14) day review by the Debtor, the U.S. Trustee, Vuong, and the Committee, if any, and in the event the Debtor, the U.S. Trustee, Vuong, or the Committee, if any, shall file with this Bankruptcy Court an objection to any such legal invoice, the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Bankruptcy Court. If no objection is filed within such fourteen (14) day review period, such invoice shall be paid without further order of the Bankruptcy Court within five (5) days following the expiration of the foregoing review period and shall not be subject to any further review, challenge, or disgorgement. For the avoidance of doubt, the provision of such invoices shall not constitute a waiver of attorney-client privilege or any benefits of the attorney work product doctrine.

19.    Liens to Secure the DIP Obligations. For avoidance of any doubt, the liens granted and approved as a result of the entry of this Interim DIP Order shall only extend to the initial advance up to $400,000 under the Priority DIP Tranche and any funds actually advanced under the Junior DIP Tranche. As security for the DIP Obligations, effective and perfected upon the date of this Interim DIP Order and without the necessity of the execution, recordation of filings by the Debtor or the DIP Lenders of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lenders of or over any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtor to the DIP Lenders for their benefit (all property identified

20

in clauses (a) through (c) below being collectively referred to as the "DIP Collateral"), subject only to the payment of the Carve-Out (all such liens and security interests granted to the DIP Lenders for their benefit pursuant to this Interim DIP Order and the DIP Documents, the "DIP Liens"):

(a)    *First Lien on All DIP Collateral.*  With respect to the Priority DIP Tranche, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien superpriority senior secured and priming security interests, mortgages, and/or deeds of trust, in and liens on, all real and personal property of the Debtor and its estate of any kind or nature whatsoever, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing before or arising after the commencement of the Bankruptcy Case.

(b)    *Junior Lien on All DIP Collateral.*  With respect to the Priority DIP Tranche, pursuant to sections 364(c)(1), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien superpriority senior secured and priming security interests, mortgages, and/or deeds of trust, in and liens on, all real and personal property of the Debtor and its estate of any kind or nature whatsoever, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing before or arising after the commencement of the Bankruptcy Case junior in priority only to the following:  (i) the Priority DIP Tranche, (ii) the Vuong Prepetition Secured Debt, (iii) any other duly perfected or statutory  prepetition liens in favor of third parties, and (iv) the earned and court-approved broker's fee and costs on account of the Subsidiary Asset Sale in an amount up to 5% of the proceeds of the Subsidiary Asset Sale, but senior in repayment to all other claims and administrative expenses of every type.

21

(c)     *Liens Senior to Certain Other Liens.*  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors to the extent permitted by applicable non-bankruptcy law, or (iii) any intercompany or affiliate liens of the Debtor.

20.     Perfection of DIP Liens.  The DIP Liens shall be, and hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; *provided, however*, that notwithstanding the provisions of section 362 of the Bankruptcy Code, (a) the DIP Lenders, may, at their sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, any such UCC financing statements, notices of liens and security interests, mortgages, amendments to mortgages and/or other similar documents or instruments as the DIP Lenders may require, and (b) the DIP Lenders may require the Debtor to deliver to the DIP Lenders, any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor shall cooperate and comply therewith.  If the DIP Lenders, in their reasonable discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages, amendments to mortgages or other documents or instruments with respect to such security interests and liens, or if the DIP Lenders, in accordance with the DIP Documents or this Interim DIP Order,

22

elect to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements, mortgages, amendments to mortgages or similar documents or instruments or such taking of possession shall be deemed to have been filed, recorded or taken in the Chapter 11 Case as of the commencement of the Chapter 11 Case but with the priorities set forth herein. The DIP Lenders may (in their reasonable discretion), but shall not be required to, file a certified copy of this Interim DIP Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall constitute further evidence of the DIP Lenders' interest in the DIP Collateral.

21.    <u>Preservation of Rights Granted Under this Interim DIP Order</u>.  No claim or lien having a priority superior to or *pari passu* (except as to the Carve-Out) with those granted by the DIP Orders to the DIP Lenders shall be granted or allowed until the occurrence each of the following: (a) the payment in full in cash of immediately available funds of all of the DIP Obligations, (b) the termination or expiration of all commitments to extend credit to the Debtor under the DIP Documents, and (c) the cash collateralization in respect of any asserted claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which the DIP Lenders may be entitled to indemnification by the Debtors ("<u>Paid in Full</u>"). While any portion of the DIP Financing (or any refinancing thereof) or the DIP Obligations remain outstanding and the commitments thereunder have not been terminated, the DIP Liens shall not be (x) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise except as provided in this Interim DIP Order and the DIP Term Sheet.

23

22.     If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is entered at any time prior to the DIP Obligations extended pursuant to this Interim DIP Order being Paid in Full, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claims and DIP Liens granted to the DIP Lenders shall continue in full force and effect and shall maintain their priorities as provided in the Interim DIP Order until all DIP Obligations shall have been indefeasibly Paid in Full (and that such Superpriority Claims and DIP Liens, shall, notwithstanding such dismissal, remain binding on all parties-in-interest) and (b) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (a) above.

23.     If any or all of the provisions of this Interim DIP Order are hereafter reversed or modified, such reversal or modification shall not affect (a) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lenders of the effective date of such reversal or modification or (b) the validity or enforceability of the Superpriority Claims and DIP Liens granted hereby with respect to any DIP Obligations.  To the extent permitted by applicable law, notwithstanding any such reversal or modification, any use of cash collateral or DIP Obligations incurred by the Debtor or the estate prior to the actual receipt of written notice by the DIP Lenders of the effective date of such reversal or modification shall be governed in all respects by the original provisions of the DIP Orders, and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim DIP Order and pursuant to the DIP Documents with respect to all uses of cash collateral and the DIP Obligations.

24.     Except as expressly provided in the Interim DIP Order or in the DIP Documents, or until the DIP Obligations are Paid in Full, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of the Interim DIP Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by the entry of an order converting the Chapter 11 Case to a case under chapter 7, or dismissing the Chapter 11 Case.  The terms and provisions of the Interim DIP Order and the DIP Documents shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lenders granted by the provisions of this Interim DIP Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are Paid in Full.

25.     <u>Right to Credit Bid</u>.  The DIP Lenders <u>shall not</u> have the right to credit bid any of the DIP Amount.  Vuong shall have the right to credit bid (such bid, a "<u>Credit Bid</u>") the Vuong Prepetition Secured Debt pursuant to section 363(k) of the Bankruptcy Code, in any sale or transfer of Collateral authorized by the Bankruptcy Court pursuant to section 363, 725, or 1123 of the Bankruptcy Code.  Vuong's right to Credit Bid the Vuong Prepetition Secured Debt is subject to section 363(k) of the Bankruptcy Code, as well as subject to and conditioned upon Vuong first bidding an amount of cash necessary to satisfy in full the Priority DIP Tranche.

26.     Subject to the entry of the Final DIP Order, as a further condition of the DIP Financing, any obligation of the DIP Lenders to make the DIP Loan, and the Debtor's authorization to use the cash collateral, the Debtor (and any successor thereto or any representatives thereof, including any trustee appointed in the Chapter 11 Case or any Successor Case) shall be deemed to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Lenders, the DIP Liens and the DIP Collateral,

25

except for the Carve-Out, nothing contained in this Interim DIP Order, in the Final DIP Order or in the other DIP Loan Documents shall be deemed a consent by the DIP Lenders to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

27.    <u>Effect of Stipulations on Third Parties</u>.  Subject to the entry of a Final Order, each stipulation, admission and agreement contained in the DIP Orders, shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all claims against the DIP Lenders as of the date of entry of the applicable DIP Order.

28.    <u>Insurance and Taxes</u>. The Debtor shall maintain insurance on all insurable DIP Collateral . The Debtor shall further maintain or cause to be maintained general liability insurance in amounts customary in its industry.  The Debtor shall pay the premiums for such insurance in the amount set forth in the Approved Budget with the remainder of any such premium costs to be paid by the Subsidiaries.  The Debtor shall provide to the DIP Lenders the number(s) of any and all insurance policies in effect, the names, addresses, and contact persons of any entities issuing such insurance and a summary of the terms and payment arrangement for any such insurance policies.  The DIP Lenders shall be named the loss payee on such insurance policies.

29.    <u>Financial Reporting</u>.  The Debtor shall provide any reporting provided for under the DIP Term Sheet to the DIP Lenders and the U.S. Trustee.

30.    <u>Covenants</u>.  Unless otherwise modified pursuant to this Interim DIP Order, the Debtor acknowledges and agrees that it shall cause the timely compliance with all of the covenants set forth in this Interim DIP Order and the DIP Documents.

26

31.     <u>No Modification of DIP Orders</u>.  The Debtor shall not, without the DIP Lenders' prior written consent (which shall be given or refused in the DIP Lenders' sole discretion) seek to modify, vacate or amend the DIP Orders or any DIP Documents.

32.     <u>Binding Effect on Successors and Assigns</u>.  The DIP Documents and the provisions of the Interim DIP Order, including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Case, including, without limitation, the Debtor and the DIP Lenders and each of their respective successors and assigns, including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtors' estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lenders and Debtor, and each of their respective successors and assigns, *provided, however,* that the DIP Lenders shall have no obligation to permit the use of cash collateral or to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estate of the Debtor.  In determining to make any loan (whether under the DIP Term Sheet or otherwise) or permit the use of cash collateral or in exercising any rights or remedies as and when permitted pursuant to the DIP Orders or the DIP Documents, the DIP Lenders, in their capacities as DIP Lenders, shall not be deemed (i) to be in control of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estates or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or state statute).

27

33.    <u>Effectiveness</u>.    This Interim DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, the Interim DIP Order shall be immediately effective and enforceable upon its entry.

34.    <u>Timeliness</u>.    Time is of the essence with respect to all performance required by this Interim DIP Order.

35.    <u>Objections Overruled or Withdrawn</u>.    All objections to the entry of the Interim DIP Order have been withdrawn or are hereby overruled.

36.    <u>Controlling Effect of Interim DIP Order</u>.    To the extent any provisions in this Interim DIP Order conflict with any provisions of the Motion, or any DIP Document the provisions of this Interim DIP Order shall control.

37.    <u>Final Hearing</u>**.**

(a)    The Final Hearing to consider entry of the Final DIP Order and final approval of the DIP Financing is scheduled for August 12, 2024 at 10:00 a.m. (EST) at the United States Bankruptcy Court for the District of Delaware**.**

(b)    On or before two (2) business days after entry of this Interim DIP Order, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim DIP Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim DIP Order and the Motion, on: (a) the Notice Parties; (b) to any other party that has filed a request for notices with this Court prior to such date; (c) the Internal Revenue Service; (d) the state taxing authorities

28

in any state in which the Debtor does business; (e) any federal or state regulatory authorities governing the Debtor's industry; and (f) the U.S. Attorney's Office. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Clerk of the Court no later than August 5, 2024 at 4:00 p.m. (EST), which objections shall be served so that the same are received on or before such date by: (a) proposed counsel for the Debtors, Potter Anderson & Corroon, LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801 c/o R. Stephen McNeill, Esq. (rmcneill@potteranderson.com), (b) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox (timothy.fox@usdoj.gov), (c) counsel to NDMascendant, LLC, Brown Rudnick LLP, 7 Times Square, New York, NY 10036, Attn: William R. Baldiga, Esq. (wbaldiga@brownrudnick.com) and Saul Ewing LLP, 1201 N. Market Street, Suite 2300, Wilmington, DE 19899, Attn: Mark Minuti, Esq. (mark.minuti@saul.com), and counsel to Vuong, ArentFox Schiff LLP, 800 Boylston Street, 32nd Floor Boston, MA 02199, Attn: Tal Unrad, Esq. (tal.unrad@afslaw.com).

(c)     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim DIP Order according to its terms.


**Dated: July 3rd, 2024**
**Wilmington, Delaware**

                    **CRAIG T. GOLDBLATT**
                    **UNITED STATES BANKRUPTCY JUDGE**

29

IMPAC 11589950v.2

**EXHIBIT 1**

**DIP Term Sheet**

# DIP FINANCING TERM SHEET

JUNE 28, 2024

BORROWER: Parlement Technologies, Inc. (f/k/a Parler LLC, f/k/a Parler Inc.), in all capacities, including, but not limited to its capacity as debtor in possession (the "Debtor").

LENDERS: All references to "DIP Lenders" in this term sheet mean, collectively, Vincent Vuong ("Vuong") and NDMascendant, LLC or its designee ("NDMA").

BANKRUPTCY CASE: The voluntary Chapter 11 bankruptcy proceeding (the "Bankruptcy Case") with Case No. 24-10755 (CTG) filed by the Debtor in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on April 15, 2024 (the "Petition Date").

FACILITY: A superpriority senior secured priming tranche (the "Priority DIP Tranche," and the term loans to be made thereunder, the "Priority DIP Loans") secured by the Collateral (defined below) in the maximum aggregate amount of $800,000.00 (the "Priority DIP Amount") to be funded $200,000 by Vuong and $600,000 by NDMA.

A junior secured tranche (the "Junior DIP Tranche," together with the Priority DIP Tranche, the "DIP Facility") and the term loans to be made thereunder, the "Junior DIP Loans," and together with the Priority DIP Loans, the "DIP Loans") secured by the Collateral in the maximum aggregate amount of $310,000 (the "Junior DIP Amount," and with the Priority DIP Amount, the "DIP Amount") to be funded in full by NDMA.

The Junior DIP Tranche shall be subordinate to that certain prepetition secured claim against the Debtor owed to Vuong pursuant to that certain Secured Promissory Note dated as of September 19, 2022, in the original prepetition principal amount of $10,910,087.90, together with all interest, fees, and expenses thereon (the "Vuong Prepetition Secured Debt" and the liens securing the Vuong Prepetition Secured Debt, the "Vuong Prepetition Liens").

AVAILABILITY: An advance of $400,000 (the "Priority DIP Initial Advance"), paid $200,000 from NDMA and $200,000 from Vuong, shall be made available from the Priority DIP Tranche upon entry of an interim order approving the DIP Facility (the "Interim DIP Order"). The full amount of the Junior DIP Tranche, $310,000, shall be made available upon entry of the Interim DIP Order.

After entry of a final order approving the DIP Facility (the "<u>Final DIP Order</u>," and with the Interim DIP Order, collectively the "<u>DIP Orders</u>"), subject to the Closing Conditions (defined below), the DIP Lenders shall make a subsequent advance (the "<u>Subsequent Advance</u>") up to the DIP Amount.

<u>INTEREST RATE</u>:   Priority DIP Tranche:  5.0% per annum.

All interest on the DIP Priority Tranche owed to Vuong shall be paid following the repayment of the full principal amount of the DIP Priority Tranche and prior to the repayment of the Vuong Prepetition Secured Debt.

All interest on the DIP Priority Tranche owed to NDMA shall be subordinated to the Vuong Prepetition Secured Debt and shall be paid only from the Estate Share (as defined below).

Junior DIP Tranche:  No interest

<u>DIP FEES</u>:   Priority DIP Tranche:  DIP Lenders shall be paid a placement fee equal to 5% of the Priority DIP Amount, as an advance under the Junior DIP Tranche, allocated pro rata among the DIP Lenders.

<u>ATTORNEYS' FEES AND EXPENSES</u>:   NDMA shall be entitled to payment of its actual and necessary attorney's fees and expenses in its capacity as DIP Lender under the terms of the DIP Orders for all services rendered after the Petition Date; provided, however, that such fees and expenses incurred through the Maturity Date shall be paid only as an advance under the Junior DIP Tranche and are capped at $270,000 (the "<u>Fee Entitlement</u>").

<u>PURPOSE</u>:   Subject to the Bankruptcy Court's approval, this is a <u>binding</u> term sheet between DIP Lenders and the Debtor and the Subsidiaries (as defined below) regarding debtor in possession financing ("<u>DIP Financing</u>") for the Debtor in the Bankruptcy Case.

DIP Lenders would provide the DIP Financing up to the DIP Financing Amount to provide working capital to the Debtor for its use exclusively in accordance with the Approved Budget (as defined below).

<u>LOAN DOCUMENTS</u>:   The loan documents to be executed in forms acceptable to the DIP Lenders, consistent with this DIP Financing Term Sheet and the DIP

2

Orders shall constitute the loan documents (the "<u>Loan Documents</u>") memorializing the DIP Financing.

**CREDIT BID:**

The DIP Lenders <u>shall not</u> have the right to credit bid any of the DIP Amount. Vuong shall have the right to credit bid (such bid, a "<u>Credit Bid</u>"), up to the amount of the Vuong Prepetition Secured Debt pursuant to section 363(k) of the Bankruptcy Code, in any sale or transfer of Collateral authorized by the Bankruptcy Court pursuant to section 363, 725, or 1123 of the Bankruptcy Code. Vuong's right to Credit Bid the Vuong Prepetition Secured Debt is subject to and conditioned upon Vuong including in such bid an amount of cash not less than that necessary to satisfy in full the Priority DIP Tranche.

**DIP FINANCING MATURITY:**

"Maturity Date" for the DIP Financing will be the earliest to occur of (i) January 31, 2025, (ii) with respect to the Priority DIP Tranche only, the closing of a sale of substantially all of the assets of Dynascale, Inc. and Alchemy Data Centers, LLC (together, the "<u>Subsidiaries</u>") under the terms of the Subsidiary Asset Sale (as defined below), and (iii) the occurrence of any event of default to be set forth in the DIP Orders ("<u>Event of Default</u>") including, without limitation, (a) failure to achieve a Bankruptcy Milestone as set forth below, (b) dismissal or conversion of the Bankruptcy Case, (c) the filing by Debtor and/or confirmation of a Plan in the Bankruptcy Case which does not provide for payment in full of this DIP Facility upon confirmation of such Plan, (d) the filing by Debtor of a sale motion and/or approval of a sale or licensing of any of the Collateral, including, without limitation, Debtor's IP rights, which is not subject to the Subsidiary Asset Sale or an alternative 363 auction approved by the DIP Lenders, (e) appointment of a Chapter 11 trustee, (f) entry of any order in the Bankruptcy Case granting a senior lien on the Collateral to any person or entity other than DIP Lenders, (g) initiation of any action to exercise or gain control over the stock, membership interests, or operations of any of the Subsidiaries, including any attempt to authorize those entities to become debtors under the Bankruptcy Code, and (h) failure to obtain a DIP Order as set forth below entered by the Bankruptcy Court.

**USE OF PROCEEDS:**

Advances under the DIP Financing will be used by the Debtor and the Subsidiaries for working capital purposes, payment of professional advisors for the Debtor and the Subsidiaries, and for other costs of the Debtor, including, but not limited to, all allowed administrative expenses through the Maturity Date, all exclusively in accordance with the Approved Budget (as defined below) and in accordance with the terms and conditions of the DIP Orders.

Advances under the Junior DIP Tranche shall be used to pay (i) the 5% placement fee on the Priority DIP Tranche and (ii) the Fee Entitlement.

3

COLLATERAL:

Priority DIP Tranche:  The Loan Documents grant DIP Lenders superpriority senior secured and priming security interests (the "<u>Priority DIP Liens</u>"), mortgages, and/or deeds of trust, in and liens on, all real and personal property of the Debtor and its estate and of the Subsidiaries, of any kind or nature whatsoever, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing before or arising after the commencement of the Bankruptcy Case (the "<u>Collateral</u>").

Junior DIP Tranche:  The Loan Documents grant NDMA, in its capacity as sole lender under the Junior DIP Tranche, security interests (the "<u>Junior DIP Liens</u>" and, together with the Priority DIP Liens, the "<u>DIP Liens</u>") in the Collateral junior in priority only to the following claims: (i) the Priority DIP Liens, (ii) the Vuong Prepetition Liens, (iii) any other valid and duly perfected or statutory  prepetition liens in favor of third parties, and (iv) the earned and court-approved broker's fee and costs on account of the sale of the assets of the Subsidiaries (a "<u>Subsidiary Asset Sale</u>") in an amount up to five percent (5%) of the proceeds of the Subsidiary Asset Sale together with associated, approved expenses (the "<u>Banker Fee</u>"), but senior in repayment to all other claims and administrative expenses of every type.

CARVEOUT:

The repayment of the DIP Amount and the Vuong Prepetition Secured Debt are subordinate to the following: (i) quarterly fees required to paid pursuant to 29 U.S.C. §1930(a)(6) (the "<u>U.S. Trustee Fees</u>"), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court; (ii) the allowed accrued and unpaid reasonable fees and expenses of professionals employed by the Debtor pursuant to Sections 327 and 330 of the Bankruptcy Code, not to exceed the total amounts set forth for such professionals, on an aggregate basis, in the Approved Budget (the "<u>Carveout</u>").

SUPERPRIORITY
DIP CLAIMS:

Priority DIP Tranche:  Subject only to the Carve-Out, on account of all Priority DIP Loans, the DIP Lenders are granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code).

Junior DIP Tranche:  Subject only to the Carve-Out, the Priority DIP Liens and the repayment of the Vuong Prepetition Secured Debt, on account of all Junior DIP Loans, NDMA is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code).

CONDITIONS
PRECEDENT
TO PRIORITY DIP
INITIAL ADVANCE AND
SUBSEQUENT ADVANCE: The closing of the DIP Financing and the DIP Lender's obligation to provide the Priority DIP Initial Advance and the Subsequent Advance, respectively, shall be subject to the satisfaction (or waiver) of the following customary conditions precedent (the "Closing Conditions"):

(i) Prior to the funding of the Priority DIP Initial Advance, the Interim DIP Order, in form and substance satisfactory to the DIP Lenders, shall have been entered by the Bankruptcy Court, shall be in full force and effect and shall not have been appealed, vacated, reversed, modified, amended or stayed, and full execution, delivery and (as appropriate) recording of customary loan and security documents;

(ii) Prior to the funding of Subsequent Advance, the Final DIP Order, which shall include, among other things, customary stipulations and acknowledgements related to the liens and interests of the DIP Lenders with respect to the DIP Loans and the Vuong Prepetition Liens shall have been entered by the Bankruptcy Court, shall be in full force and effect and shall not have been appealed, vacated, reversed, modified, amended or stayed;

(iii) Prior to the funding of the Priority DIP Initial Advance, a motion to approve the Subsidiary Asset Sale (which may include one or more assets of the Debtor, if the proposed buyer under the Subsidiary Asset Sale so elects and the parties hereto consent) and approval of bidding procedures for such sale shall be filed in form and substance reasonably satisfactory to the DIP Lenders;

(iv) No trustee or examiner having expanded powers shall have been appointed with respect to the Bankruptcy Case;

(v) Immediately prior to, and after giving effect to, the making of the DIP Loans, there shall exist no default under the Loan Documents;

(vi) The Maturity Date shall not have occurred;

(vii)      The making of the DIP Loans shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily or permanently; and

(viii)      The making of the DIP Loans shall not result in the aggregate outstanding obligations under the DIP Facility exceeding

5

the amount authorized by orders entered by the Bankruptcy Court or the DIP Orders, as applicable.

BANKRUPTCY
MILESTONES:

Each of the following shall constitute a milestone (each, a "<u>Bankruptcy Milestone</u>"):

- On or before June 28, 2024, Debtor shall have filed a Motion to approve the DIP Financing;
- Entry of the Interim DIP Order no later than July 3, 2024;
- Entry of the Final DIP Order on or before 35 days from the entry of the Interim DIP Order;
- Entry of an order approving a compromise pursuant to Rule 9019 of the Bankruptcy Rules among Vuong, Dynascale, Inc. and the Debtor concerning certain transfers among such parties (the "<u>9019 Order</u>") on or before 35 days from the entry of the Interim DIP Order;
- Entry of an order approving the procedures for the Subsidiary Asset Sale on or before 35 days from the entry of the Interim DIP Order;
- Initial presentation of a strategic plan to maximize the estate's recovery of all material estate assets, including as to any litigation that may be appropriate against third parties (the "<u>Recovery Plan</u>") with DIP Lenders on or before August 15, 2024;
- Updated presentation of the Recovery Plan and initial implementation upon the earlier of December 2, 2024 or 30 days following the closing of the Subsidiary Asset Sale;
- Updated presentation of the Recovery Plan and continuing implementation upon the earlier of January 31, 2025 or 90 days following the conclusion of the Subsidiary Asset Sale;
- Receipt of all final bids in connection with the Subsidiary Asset Sale on or before September 30, 2024;
- Entry of an order approving a sale on or before October 15, 2024;
- Closing of sale of substantially on or before November 7, 2024;

SHARING OF
RECOVERIES
AND RECEIPTS:

The net proceeds of any Subsidiary Asset Sale and any other receipts of the Debtor, including any estate cause of action recoveries (except for the compromise reflected in the 9019 Order, which are free cash to the Debtor's estate) shall be distributed in accordance with the following waterfall:

All net proceeds of the Subsidiary Asset Sale shall be paid as follows:

6

- First, to pay any allowed Banker Fee;
- Second, to repay the Priority DIP Tranche (proportionately as to all participants) until satisfied in full;
- Third, to repay the Vuong Prepetition Secured Debt until repaid in full;
- Fourth, to repay the Junior DIP Tranche (proportionately with respect to principal and interest owed to all participants);
- and, once the Junior DIP Tranche is repaid, to the Debtor's estate for the benefit of its remaining creditors.

All net proceeds arising from the sale, recovery, or disposition of Debtor's prepetition assets (excluding any equity interests in the Subsidiaries or the Subsidiaries' assets) shall be paid as follows:

- First, to repay the Priority DIP Tranche (proportionately as to all participants) until satisfied in full;
- Second, split 75% in repayment of the Vuong Prepetition Secured Debt, and 25% (the "Estate Share") to repay the Junior DIP Tranche (proportionately as to all participants), until the Junior DIP Tranche is repaid in full after which the Estate Share shall be paid to the Debtor's estate for the benefit of its remaining creditors;
- and, once both of the Vuong Prepetition Secured Debt and the Junior DIP Tranche have been repaid in full, to the Debtor's estate for the benefit of its remaining creditors.

To the extent the Debtor's estate assigns claims to Vuong, Vuong will share the net proceeds of such claims, as and when received by him, as follows:

(i)     First, in the event that the DIP Amount has not been fully repaid from other sources at the time of Vuong's recovery with respect to any of the claims assigned to him by the Debtor's estate, Vuong will share the net proceeds of such claims pro rata based on the total amount outstanding under the Vuong Prepetition Secured Debt and the total amount outstanding to the DIP Lenders; provided, however, that Vuong shall have no obligation to pursue such claims assigned to him and may further assign them subject to the obligation to share such net proceeds as prescribed above;

(ii)    Second, once all amounts outstanding under the DIP Loans have been repaid in full, 95% of all further net proceeds will be paid towards the Vuong Prepetition Secured Debt and 5% to the Debtor's estate for further distribution to its creditors; and

7

          (iii)     Third, once all of Vuong's claims have been fully satisfied, Vuong will pay 75% of the net proceeds with respect to any of the claims assigned to him by the Debtor's estate to the Debtor's estate for further distribution to its creditors, and Vuong shall be entitled to retain 25% as additional consideration for his effort in obtaining such recoveries.

DIP ORDERS:        The DIP Financing shall be subject to and contingent upon approval of the Bankruptcy Court in the DIP Orders and acceptable to DIP Lenders in their reasonable discretion. The DIP Orders will, among other things, (i) adjudicate (a) all indebtedness under the DIP Loans to have "super-priority" claim status under Bankruptcy Code §§ 364(c)(1) and 507(b), and (b) the DIP Obligations to be fully secured as stated below under Bankruptcy Code §§ 364(c) and (d), with first priority liens on all of the Collateral; and (ii) include customary "good faith" findings as to all parties under Code Section 364(e).

DEADLINES WITH
RESPECT TO
CERTAIN CLAIMS:    The Debtor does hereby stipulate to the existence, extent, validity and priority of the Vuong Prepetition Liens as presently asserted, and the Final DIP Order shall provide that such stipulations be binding upon all parties and their successors upon entry of the Final DIP Order.

                                     With respect to the amounts of the prepetition secured and unsecured claims of Vuong and all DIP Financing participants (which for NDMA shall include NDMA, Rebekah Mercer, George Farmer, and Michael, The Lord, Farmer), (i) each such claimant shall file a proof of claim no later than ten (10) business days after entry of the Interim DIP Order (a "Lender Claim"); (ii) the Debtor shall have fifteen (15) business days after receipt of a Lender Claim to review and commence requests for additional information necessary to review and evaluate a Lender Claim ("Information Requests"); the Debtor shall have thirty (30) days after substantial completion of responses to Information Requests by which to object to the Lender Claim and, if no such objection is filed, such Lender Claim shall be deemed an allowed claim.

                                     The Final DIP Order shall provide that any additional claims in contract, tort, or in equity against Vuong, NDMA, Rebekah Mercer, George Farmer, or Michael, The Lord, Farmer that are held by the Debtor or any successor thereto shall be brought on or before December 15, 2024 or shall be forever barred.

APPROVED BUDGET
AND
REPORTING
COMPLIANCE:                     A budget with expense and cash flow projections for the Debtor for the
                                six (6) month period beginning upon the entry of the Interim DIP Order,
                                to be updated every four (4) weeks on a rolling basis, with reconciliation
                                on a line-item basis of actual results to projections, and with narrative
                                explanations prepared by the Debtor of any material variances, to be
                                certified by an authorized person of the Debtor and approved in form
                                and substance by the DIP Lender (once so approved, and subject to any
                                update as may be approved by the DIP Lender, the "Approved Budget").
                                The Debtor shall be required to comply with such Approved Budget in
                                all material respects for purposes of the DIP Facility in accordance with
                                the DIP Orders.

# **EXHIBIT 2**

## **Approved Budget**

**Parlement Technologies, Inc.**
**Chapter 11, Case No. 24-10755**
**Cash Flow Budget**

| | Month 4/15/2024 | 1 7/31/2024 | 2 8/31/2024 | 3 9/30/2024 | 4 10/31/2024 | 5 11/30/2024 | 6 12/31/2024 | TOTAL |
|---|---|---|---|---|---|---|---|---|
| **Cash Sources** | | | | | | | | |
| DIP Loan Proceeds | | 710,000 | 400,000 | | | | | 1,110,000 |
| 9019 Proceeds | | | 400,000 | | | | | 400,000 |
| **TOTAL CASH SOURCES** | - | 710,000 | 800,000 | - | - | - | - | 1,510,000 |
| **Cash Uses** | | | | | | | | |
| Director Fees - S. Gray | | 30,000 | 32,500 | 32,500 | 32,500 | 32,500 | 32,500 | 192,500 |
| CRO Fees - C. Jalbert | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 45,000 |
| Financial Advisory | | 22,500 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 147,500 |
| Debtor Counsel | | 150,000 | 125,000 | 100,000 | 50,000 | 50,000 | 50,000 | 525,000 |
| DIP Counsel | | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 20,000 | 270,000 |
| Special Counsel | | 15,000 | 5,000 | | | | | 20,000 |
| Claims Agent | | 25,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 62,500 |
| Investment Banker | | 50,000 | 50,000 | | | | | 100,000 |
| Insurance | | 75,000 | | | | | | 75,000 |
| DIP Lender Fee | | | 40,000 | | | | | 40,000 |
| Other | | 10,000 | 10,000 | 5,000 | | | | 25,000 |
| US Trustee fees | | 500 | | | 4,062 | | | 4,562 |
| **TOTAL CASH DISBURSEMENTS** | - | 435,500 | 352,500 | 227,500 | 176,562 | 172,500 | 142,500 | 1,507,062 |
| **Net Cash Flow** | - | 274,500 | 447,500 | (227,500) | (176,562) | (172,500) | (142,500) | 2,938 |
| **Beginning Cash Position** | - | - | 274,500 | 722,000 | 494,500 | 317,938 | 145,438 | - |
| **Ending Cash Position** | - | 274,500 | 722,000 | 494,500 | 317,938 | 145,438 | 2,938 | 2,938 |