**<u>EXHIBIT A</u>**

**(Second Amended Plan)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Parlement Technologies, Inc.<br>(f/k/a Parler LLC, f/k/a Parler Inc.)<br><br>Debtor. | Case No. 24-10755 (CTG) |

---

**SECOND AMENDED COMBINED CHAPTER 11 PLAN OF
LIQUIDATION AND DISCLOSURE STATEMENT
<u>FOR PARLEMENT TECHNOLOGIES, INC.</u>**

---

Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
James R. Risener III (No. 7334)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
         rmcneill@potteranderson.com
         jrisener@potteranderson.com
         srizvi@potteranderson.com

*Counsel for Debtor and Debtor in Possession*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Introduction and Executive Summary ...............................................................................4

II.   Important Dates..................................................................................................................5

III.  Definitions and Construction of Terms...............................................................................6

    A.    Definitions..................................................................................................................6

    B.    Interpretation, Application of Definitions, and Rules of Construction..................16

IV.   Disclosures ......................................................................................................................17

    A.    General Background ................................................................................................17

        1.    The Company and Its Business....................................................................17

        2.    Financial Overview of the Company ..........................................................18

        3.    Events Precipitating the Chapter 11 Filing ................................................20

    B.    The Chapter 11 Case ..............................................................................................22

        1.    Retention of Professionals ..........................................................................22

        2.    DIP Financing .............................................................................................22

        3.    No Appointment of a Creditors' Committee ...............................................22

        4.    Sale of Substantially All of the Debtor's Assets........................................23

        5.    Claims Process and General Bar Date ........................................................23

        6.    Satisfaction of Claims Prior to the Effective Date.....................................24

    C.    Summary of Assets .................................................................................................24

    D.    Vuong Settlement....................................................................................................24

    E.    Summary of Treatment of Claims and Interests under the Combined Plan
        and Disclosure Statement........................................................................................26

    F.    Certain U.S. Federal Income Tax Consequences to the Combined Plan and
        Disclosure Statement ..............................................................................................26

        1.    Consequences to the Debtor........................................................................28

        2.    Consequences to Holders of Class 4 General Unsecured Claims...............30

    G.    Certain Risk Factors to Be Considered ..................................................................31

    H.    Feasibility................................................................................................................32

    I.    Best Interests Test and Alternatives to the Combined Plan and Disclosure
        Statement.................................................................................................................32

i

V.    Unclassified Claims ....................................................................................................33

    A.    Administrative Expense Claims....................................................................33

    B.    Professional Fee Claims..............................................................................34

    C.    Priority Tax Claims.....................................................................................34

    D.    Statutory Fees.............................................................................................35

VI.    Classification and Treatment of Claims and Interests ..............................................35

    A.    Classification of Claims and Interests........................................................35

    B.    Treatment of Claims and Interests .............................................................35

        1.    Class 1 – Miscellaneous Secured Claims....................................35

        2.    Class 2 – Remaining Vuong Prepetition Secured Claim ............36

        3.    Class 3 – Non-Tax Priority Claims.............................................36

        4.    Class 4 – General Unsecured Claims...........................................37

        5.    Class 5 – Existing Equity ............................................................37

    C.    Impaired Claims and Interests ...................................................................37

    D.    Cramdown and No Unfair Discrimination..................................................37

VII.    Confirmation Procedures ..........................................................................................38

    A.    Confirmation Procedures ............................................................................38

        1.    Confirmation Hearing .................................................................38

        2.    Procedure for Objections ............................................................38

        3.    Requirements for Confirmation ..................................................38

    B.    Solicitation and Voting Procedures ...........................................................39

        1.    Eligibility to Vote on the Combined Plan and Disclosure Statement........39

        2.    Solicitation Package....................................................................39

        3.    Voting Procedures and Voting Deadline ....................................39

        4.    Deemed Acceptance or Rejection ...............................................40

        5.    Acceptance by an Impaired Class ...............................................40

VIII.    Implementation and Execution of the Combined Plan and Disclosure Statement ...........41

    A.    Effective Date .............................................................................................41

    B.    Implementation of the Combined Plan and Disclosure Statement ........................41

        1.    General .......................................................................................41

ii

|  | 2. | Corporate Action, Officers and Directors, and Effectuating Documents | 41 |
| C. | | Records | 41 |
| D. | | Estimation | 42 |
| E. | | Liquidating Trust | 42 |
|  | 1. | Establishment of the Liquidating Trust | 42 |
|  | 2. | Appointment and Duties of the Liquidating Trustee | 43 |
|  | 3. | Purpose of Liquidating Trust | 45 |
|  | 4. | Transfer of Liquidating Trust Assets to Liquidating Trust | 46 |
|  | 5. | Preservation of Rights | 47 |
|  | 6. | Liquidating Trust Expenses | 48 |
|  | 7. | Privileges | 48 |
|  | 8. | Liquidating Trust Interest | 48 |
|  | 9. | Termination of Liquidating Trust | 49 |
| F. | | Effective Date and Other Transactions | 49 |
|  | 1. | Transfer of Assets to Liquidating Trust | 49 |
| G. | | Provisions Governing Distributions under the Combined Plan and Disclosure Statement | 49 |
|  | 1. | Method of Payment | 49 |
|  | 2. | Delivery of Distributions | 50 |
|  | 3. | Objection to and Resolution of Claims | 51 |
|  | 4. | Preservation of Rights to Settle Claims | 51 |
|  | 5. | Miscellaneous Distribution Provisions | 51 |
| IX. | | Executory Contracts and Unexpired Leases | 53 |
| A. | | Background | 53 |
| B. | | Executory Contracts and Unexpired Leases | 53 |
| C. | | Rejection Claims | 53 |
| X. | | Conditions Precedent to Confirmation and the Effective Date | 53 |
| A. | | Conditions Precedent to Confirmation | 53 |
| B. | | Conditions Precedent to the Effective Date | 54 |
| C. | | Waiver of Conditions | 54 |
| D. | | Effect of Nonoccurrence of Conditions | 54 |

IMPAC - 11983058v.5

XI.    Exculpation, Injunctions, and Releases .................................................................. 55

    A.    Injunction ........................................................................................................ 55

    B.    Exculpation ...................................................................................................... 55

    C.    Releases and Limitation of Liability ............................................................... 56

XII.    Retention of Jurisdiction ........................................................................................ 57

XIII.    Miscellaneous Provisions ...................................................................................... 58

    A.    Amendment or Modification of the Combined Plan and Disclosure
       Statement .......................................................................................................... 58

    B.    Closing of the Chapter 11 Case following the Effective Date .......................... 59

    C.    Plan Supplement .............................................................................................. 59

    D.    Filing of Additional Documents ...................................................................... 59

    E.    Entire Agreement ............................................................................................. 59

    F.    Binding Effect of the Combined Plan and Disclosure Statement ..................... 59

    G.    Application of Bankruptcy Rule 7068 ............................................................. 59

    H.    Governing Law ................................................................................................ 60

    I.    Time ................................................................................................................. 60

    J.    Severability ...................................................................................................... 60

    K.    Revocation ....................................................................................................... 60

    L.    Claims and Noticing Agent ............................................................................. 60

    M.    Inconsistency ................................................................................................... 60

    N.    No Admissions ................................................................................................. 61

    O.    Successors and Assigns .................................................................................... 61

    P.    Post-Effective Date Limitation of Notice ........................................................ 61

    Q.    Post-Confirmation Reporting ........................................................................... 61

    R.    Substantial Consummation of the Combined Plan and Disclosure
       Statement .......................................................................................................... 61

    S.    Reservation of Rights ....................................................................................... 61

    T.    No Discharge .................................................................................................... 61

    U.    Term of Injunction or Stays ............................................................................. 62

    V.    Notices ............................................................................................................. 62

iv

XIV.    Recommendation ................................................................................................63

**NOTICE**

THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.  ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH COMBINED PLAN AND DISCLOSURE STATEMENT.  THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.  THE COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF.  NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTOR'S BOOKS AND RECORDS AND CERTAIN PLEADINGS FILED BY THE DEBTOR WITH THE BANKRUPTCY COURT.  ALTHOUGH THE DEBTOR HAS ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THE DEBTOR IS UNABLE TO REPRESENT OR WARRANT THAT ALL OF THE INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS WITHOUT ERROR.  THE STATEMENTS CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 1125 AND 1126 AND BANKRUPTCY RULES 3016, 3017, AND 3018 AND NOT NECESSARILY IN COMPLIANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11.

NO REPRESENTATION CONCERNING THE DEBTOR OR THE VALUE OF THE DEBTOR'S ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTOR ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION, OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT.

YOU ARE STRONGLY URGED TO CONSULT WITH YOUR FINANCIAL, LEGAL, AND TAX ADVISORS TO UNDERSTAND FULLY THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS GIVEN AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED.  THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT DOES NOT, UNDER ANY CIRCUMSTANCE, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN AFTER SUCH DATE.  THIS COMBINED PLAN AND DISCLOSURE STATEMENT MUST BE READ IN CONJUNCTION WITH ANY EXHIBITS.

IF A HOLDER OF A CLAIM WISHES TO CHALLENGE THE ALLOWANCE OR DISALLOWANCE OF A CLAIM FOR VOTING PURPOSES UNDER THE TABULATION RULES SET FORTH IN THE SOLICITATION PROCEDURES ORDER, SUCH ENTITY MUST FILE A MOTION, PURSUANT TO BANKRUPTCY RULE 3018(a), FOR AN ORDER TEMPORARILY ALLOWING SUCH CLAIM IN A DIFFERENT AMOUNT OR CLASSIFICATION FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN AND SERVE SUCH MOTION ON COUNSEL TO THE DEBTOR SO THAT IT IS RECEIVED NO LATER THAN **4:00 P.M., PREVAILING EASTERN TIME, ON JULY 16, 2025.** THE DEBTOR AND OTHER PARTIES IN INTEREST SHALL HAVE UNTIL **4:00 P.M., PREVAILING EASTERN TIME, ON JULY 23, 2025** TO FILE AND SERVE ANY RESPONSES TO SUCH MOTIONS.  UNLESS THE BANKRUPTCY COURT ORDERS OTHERWISE, SUCH CLAIM WILL NOT BE COUNTED FOR VOTING PURPOSES IN EXCESS OF THE AMOUNT DETERMINED IN ACCORDANCE WITH THE TABULATION RULES.

IMPAC - 11983058v.5

I.      **Introduction and Executive Summary**[1]

The Debtor proposes the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code sections 1125 and 1129, and Local Rule 3017-2. The Debtor is a "proponent" of the Combined Plan and Disclosure Statement within the meaning of Bankruptcy Code section 1129.

Copies of the Combined Plan and Disclosure Statement and all other documents related to the Chapter 11 Case are available for review without charge on the Case Website at: https://www.bankruptcy-claims.com/parlement/CaseHome.aspx.

The Combined Plan and Disclosure Statement is a liquidating chapter 11 plan for the Debtor. The Purchased Assets from the Sale have been transferred from the Debtor to the Purchaser as part of closing of the Sale. The Combined Plan and Disclosure Statement provides that, upon the Effective Date, the Liquidating Trust Assets will be transferred to the Liquidating Trust and the Debtor will be dissolved. The Liquidating Trust Assets will be administered and distributed as soon as practicable pursuant to the terms of the Combined Plan and Disclosure Statement and Liquidating Trust Agreement.

Each Holder of a Claim against the Debtor who is entitled to vote to accept or reject the Combined Plan and Disclosure Statement is encouraged to read the Combined Plan and Disclosure Statement in its entirety before voting.

Holders of Miscellaneous Secured Claims (classified in Class 1) are not Impaired and will receive, either (a) such other treatment as may be agreed upon by any such holder of a Miscellaneous Secured Claim, the Debtor (prior to the Effective Date), and the Liquidation Trustee (after the Effective Date); or (b) at option of the Debtor or the Liquidating Trustee: (i) payment in cash of the allowed amount of such Miscellaneous Secured Claim (as determined by settlement or order of the Bankruptcy Court), (ii) return of all collateral secured by a valid, perfected, first-priority unavoidable lien securing such Miscellaneous Secured Claim, or (iii) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

Mr. Vuong, as Holder of the Remaining Vuong Prepetition Secured Claim (classified in Class 2) is Impaired and will receive the treatment afforded to him under the Vuong Settlement as set forth in the Vuong Settlement Term Sheet.

Holders of Non-Tax Priority Claims (classified in Class 3) are not Impaired and will be paid in full in cash on the Effective Date, the allowed amount of such claim, or receive such other treatment as may be agreed upon by the holder of a Non-Tax Priority Claim, the Debtor (prior to the Effective Date), and the Liquidation Trustee (after the Effective Date).

Holders of General Unsecured Claims (classified in Class 4) are Impaired and will receive their Pro Rata share of Liquidation Trust Interests, net of the Remaining Vuong Prepetition Secured Claim, Allowed Professional Fee Claims, Allowed Administrative Expense Claims,

---

[1]    All capitalized terms used but not defined in the introduction and executive summary shall have the meanings ascribed to them in Article III of the Combined Plan and Disclosure Statement.

4

Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, and the administrative expenses of the Liquidating Trustee and his professionals.

Holders of Existing Equity (classified in Class 5) are Impaired, are deemed to reject the Combined Plan and Disclosure Statement, and are not entitled to receive any Distribution.

The Liquidating Trust Expenses, including the fees of the Liquidating Trustee and fees for the Liquidating Trustee's professionals, will be paid out of the Liquidating Trust Assets prior to any interim or final Distribution being made to Holders of Claims or Interests.

Subject to the restrictions on modifications as set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and in the Combined Plan and Disclosure Statement, the Debtor expressly reserves the right to alter, amend, or modify the Combined Plan and Disclosure Statement one or more times before the Confirmation Hearing and/or its substantial consummation.

## II.    Important Dates

| Event | Date |
|---|---|
| Objection Deadline for Conditional Approval of the Disclosure Statement | June 24, 2025 |
| Hearing on Conditional Approval of the Disclosure Statement | July 1, 2025 at 10:00 a.m. (ET) |
| Voting Record Date | The date of entry of an order granting conditional approval of the Disclosure Statement (the "Proposed Order") |
| Deadline to Mail Solicitation Packages and all Notices | Five (5) business days after entry of the Proposed Order |
| Deadline to File Plan Supplement | Seven (7) days prior to the earlier of (a) the Voting Deadline or (b) the Combined Plan and Disclosure Statement Objection Deadline |
| Deadline for Creditors to File Bankruptcy Rule 3018 Motions | By 4:00 p.m. (ET) fourteen (14) days after entry of the Proposed Order |
| Deadline to Respond to Bankruptcy Rule 3018 Motions | By 4:00 p.m. (ET) twenty-one (21) days after entry of the Proposed Order |
| Voting Deadline for the Combined Plan and Disclosure Statement | By 4:00 p.m. (ET) ten (10) days prior to the Combined Hearing |
| Combined Plan and Disclosure Statement Objection Deadline | By 4:00 p.m. (ET) seven (7) days prior to the Combined Hearing |
| Deadline to file Voting Tabulation Affidavit, Reply to any Objections, Confirmation Brief, and other declarations or documents in support of the Combined Plan and Disclosure Statement | By 12:00 p.m. (ET) two (2) business days prior to the Combined Hearing |
| Combined Hearing on final approval of Disclosures and Confirmation of the Combined Plan and Disclosure Statement | August 7, 2025 at 2:00 p.m. (prevailing Eastern time) |

IMPAC - 11983058v.5

### III.    Definitions and Construction of Terms

####    A.    Definitions

"**Administrative Claim Bar Date**" means, for any unpaid Administrative Expense Claim arising prior to the Effective Date, the date that is thirty (30) calendar days after service of the notice of Effective Date, with such date to be provided in the notice of Effective Date, *provided, however*, Professional Fee Claims shall cover the period beginning from each Professional's retention date pursuant to an order of the Bankruptcy Court and the Effective Date.

"**Administrative Expense Claim**" means any right to payment constituting actual and necessary costs and expenses of preserving the Estate under Bankruptcy Code sections 503(b) and 507(a)(2) including, without limitation, any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code.  For the avoidance of doubt, Administrative Expense Claims include Professional Fee Claims.

"**Affiliate**" means an "affiliate" as defined in Bankruptcy Code section 101(2).

"**Alchemy**" means Alchemy Data Centers, LLC, a non-debtor subsidiary of the Debtor.

"**Allowed**" means, with reference to any Claim, proof of which was properly filed or, if no Proof of Claim was filed, that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bankruptcy Court; or (b) an objection has been interposed and such Claim has been allowed by the Bankruptcy Court, in whole or in part, by a Final Order.

"**Assets**" means any and all right, title, and interest of the Debtor in and to property of whatever type or nature, real or personal, tangible or intangible, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in progress, accounts, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, Claims, other causes of action, and any general intangibles, but specifically excludes the Purchased Assets.

"**Avoidance Actions**" means any and all Causes of Action and rights to recover or avoid transfers or to avoid any lien under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, not including any cause of action included in the definition of "Parlement Assets" pursuant to the Vuong Asset Purchase Agreement.

"**Ballot**" means the voting form distributed to each Holder of an Impaired Claim entitled to vote on the Combined Plan and Disclosure Statement, on which the Holder is to indicate acceptance or rejection of the Combined Plan and Disclosure Statement in accordance with the voting instructions and make any other elections or representations required pursuant to the Combined Plan and Disclosure Statement.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

6

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Case or, if such Court ceases to exercise jurisdiction over the Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"**Bar Date Motion**" means the *Debtor's Motion for Entry of an Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 60].

"**Bar Date Order**" means the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 74].

"**Bidding Procedures Order**" means the *Corrected Order (I) Approving Bidding Procedures for the Sale of the Assets of the Debtor and/or Certain of its Non-Debtor Subsidiaries, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Seek Approval of Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. 143].

"**Board**" means the members of the Debtor's Board of Directors from the Petition Date through the Effective Date.

"**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in Wilmington, Delaware are required or authorized to close by law or executive order.

"**Case Website**" means the website maintained by the Claims and Noticing Agent at https://www.bankruptcy-claims.com/parlement/CaseHome.aspx.

"**Causes of Action**" means any Claim, cause of action (including Avoidance Actions, Nevada Counterclaims, D&O Claims, Olympic Claims, and Thurston Claims), controversy, right of setoff, cross claim, counterclaim, or recoupment, and any claim on contracts or for breaches of duties not transferred to the Purchasers pursuant to the Sale Orders and not otherwise expressly released hereunder imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, that have not been waived by a prior order of the Bankruptcy Court or released under the Combined Plan and Disclosure Statement.

"**Chapter 11 Case**" means the chapter 11 case given Case No. 24-10755(CTG) initiated by the Debtor's filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

"**Chief Restructuring Officer**" means Craig R. Jalbert from Verdolino & Lowey, P.C.

"**Claim**" shall have the meaning set forth in Bankruptcy Code section 101(5).

"**Claims and Noticing Agent**" means Reliable Companies in its capacity as claims and noticing agent to the Debtor.

"**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion.  Upon filing a motion to extend the Claims Objection Deadline, the Claims Objection Deadline shall be automatically extended as provided by the Local Rules.

"**Claims Register**" means the official register of Claims maintained by the Claims and Noticing Agent.

"**Class**" means any group of substantially similar Claims or Interests classified by the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

"**Clerk**" means the clerk of the Bankruptcy Court.

"**Combined Plan and Disclosure Statement**" means this amended combined chapter 11 plan of liquidation and disclosure statement including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time, including those set forth in the Plan Supplement.

"**Confirmation**" means confirmation of the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1129.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket.

"**Confirmation Hearing**" means the combined hearing to be held by the Bankruptcy Court to consider (a) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1129.

"**Contingency Counsel**" means any counsel engaged by the Debtor, the Liquidating Trust, and/or the Liquidating Trustee on a contingency fee basis to pursue any Cause of Action , and/or

any other Claim pursuant to the terms of the Combined Plan and Disclosure Statement and Liquidating Trust Agreement.

"**Creditor**" means any Person that is the Holder of a Claim against the Debtor as defined in Bankruptcy Code section 101(10).

"**D&O Claims**" means any Claims or Causes of Action arising prior to the Petition Date and held by the Debtor or its Estate against current and former directors, officers, and managers of the Debtor, except as limited by Article XI.C hereof.

"**Debtor**" means Parlement Technologies, Inc. (f/k/a Parler LLC, f/k/a Parler Inc.).

"**DIP Financing**" means, collectively, the Priority DIP Tranche and the Junior DIP Tranche.

"**DIP Financing Claim**" means all Claims against the Debtor by the DIP Lenders under the DIP Financing Term Sheet and DIP Orders, including, without limitation, principal, accrued and unpaid interest, any reimbursement obligations (contingent or otherwise), all fees, expenses, and disbursements (including, without limitations, attorneys' fees, financial advisors' fees, and related expenses and disbursements incurred by, or on behalf of, the DIP Lenders), indemnification obligations, all other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect thereof.

"**DIP Financing Term Sheet**" means the *DIP Financing Term Sheet*, dated as of June 28, 2024, among the Debtor and the DIP Lenders [Docket No. 75, Exhibit B].

"**DIP Lenders**" means Vincent Vuong and NDMA, each in its capacity as lender under the DIP Financing Term Sheet.

"**DIP Motion**" means the *Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing Debtor to Obtain Post-Petition Financing and to Grant Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Utilize Cash Collateral and Pay Certain Related Fees and Charges; (C) Modify the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 75].

"**DIP Orders**" means, collectively, the Interim DIP Order and the Final DIP Order.

"**Disallowed**" means any Claim or any portion thereof that (i) has been Disallowed by a Final Order, (ii) is not Scheduled and as to which no Proof of Claim or Administrative Expense Claim has been filed or submitted, (iii) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or Administrative Expense Claim has been filed or submitted, or (iv) has been withdrawn by the Holder of the Claim, or by agreement of the Debtor and the Holder thereof.

"**Disputed**" means any Claim or Interest, or any portion thereof, that is (a) listed on the Schedules as unliquidated, disputed, and/or contingent for which no Proof of Claim in a liquidated and non-contingent amount has been filed; or (b) the subject of an objection or request for

9

estimation filed by the Debtor or the Liquidating Trustee or any other party-in-interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order.

"**Distribution**" means any distribution to the Holders of Allowed Claims against the Debtor pursuant to the Combined Plan and Disclosure Statement.

"**Docket**" means the docket in this Chapter 11 Case maintained by the Clerk.

"**Dynascale**" means Dynascale, Inc., a non-debtor subsidiary of the Debtor.

"**Effective Date**" means the date on which the conditions specified in Article X.B of the Combined Plan and Disclosure Statement have been met or satisfied.

"**Effective Date Distributions**" means all Distributions required to be made on the Effective Date of the Combined Plan and Disclosure Statement to the Holders of Claims against the Debtor that are Allowed as of the Effective Date.

"**Entity**" means an "entity" as defined in Bankruptcy Code section 101(15).

"**Estate**" means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to Bankruptcy Code section 541.

"**Exculpated Parties**" means, with respect to the period beginning from the Petition Date, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtor; (b) the members of the Debtor's Board; (c) the Chief Restructuring Officer; and (d) the Debtor's Professionals retained in the Chapter 11 Case by order of the Bankruptcy Court.

"**Executory Contract**" or "**Unexpired Lease**" means, as the case may dictate, any executory contract or unexpired lease as of the Petition Date between the Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Combined Plan and Disclosure Statement.

"**Existing Equity**" means existing equity of the Debtor, classified in Class 5 in the Combined Plan and Disclosure Statement.

"**Final Decree**" means the order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Case.

"**Final DIP Order**" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e), and 507(a) (I) Authorizing Debtor to (A) Obtain Post-Petition Financing and to Grant Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); and (B) Utilize Cash Collateral and Pay Certain Related Fees and Charges; and (II) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362* [Docket No. 134].

"**Final Order**" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the Docket in the Chapter 11 Case (or the docket

10

of such other court) that is not subject to a stay and has not been modified, amended, reversed, or vacated and as to which (a) the time to appeal, petition for certiorari, move for leave to appeal, or move for a new trial, reargument, or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired.

"**First Day Declaration**" means the *Declaration of Craig Jalbert in Support of the Debtor's Chapter 11 Petition and Bankruptcy Case* [Docket No. 42].

"**General Bar Date**" means, with respect to those Claims covered by the Bar Date Order, August 1, 2024, at 5:00 p.m. prevailing Eastern Time, excluding Proofs of Claim filed by a Governmental Unit, which must be submitted by the Governmental Bar Date.

"**General Unsecured Claims**" means any unsecured Claim against the Debtor that is *not* a Non-Tax Priority Claim, Administrative Expense Claim, Professional Fee Claim, Priority Tax Claim, Miscellaneous Secured Claim, Intercompany Claim, Section 510(b) Claim, or Existing Equity.

"**Governmental Bar Date**" means, pursuant to the Bar Date Order, the date by which Proofs of Claim on behalf of Governmental Units must be submitted: October 12, 2024, at 5:00 p.m. prevailing Eastern Time.

"**Governmental Unit**" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"**Holder**" means the beneficial holder of any Claim or Interest.

"**Impaired**" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

"**Interest**" means any "equity security" in a Debtor as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized, or outstanding ownership interests (including common and preferred) or other equity interests and membership units, together with any warrants, options, convertible securities, liquidating preferred securities, or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"**Interim DIP Order**" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e), and 507(a) (I) Authorizing Debtor to (A) Obtain Post-Petition Financing and to Grant Security Interests and Super-Priority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); and (B) Utilize Cash Collateral and Pay Certain Related Fees and Charges; (II) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 86].

11

"**Junior DIP Tranche**" means that certain junior secured credit facility in an aggregate amount of $310,000, subject to the terms of the DIP Financing Term Sheet and the DIP Orders.

"**Liquidating Trust**" means the liquidating trust established on the Effective Date pursuant to the Liquidating Trust Agreement and the Combined Plan and Disclosure Statement for the purpose of administering the Liquidating Trust Assets and to make one or more Distribution(s) to Holders of Allowed Claims against the Debtor.

"**Liquidating Trust Agreement**" means the trust agreement, and related documents, that documents and governs the powers, duties, and responsibilities of the Liquidating Trustee, and which agreement will be materially consistent with and subject to the Combined Plan and Disclosure Statement and otherwise in the substance and form included in the Plan Supplement.

"**Liquidating Trust Assets**" means the (a) Causes of Action, including (i) Avoidance Actions, (ii) D&O Claims, (iii) Nevada Counterclaims; (iv) Olympic Claims); (v) Thurston Claims; (vi) any other Claims and Causes of Action that are not Purchased Assets under the Sale Orders, and (vii) the proceeds of each of the forgoing; (b) any other remaining Assets of the Estate; and (c) any and all Claims and Causes of Action related to or arising under the Sale Orders.

"**Liquidating Trust Beneficiaries**" means, collectively, the Holders of Allowed Claims under the Combined Plan and Disclosure Statement against the Debtor, or any successors to such Holders, or their interests in the Liquidating Trust, whether said Claims are Allowed before or after the Effective Date.

"**Liquidating Trust Expenses**" means all actual and necessary fees, costs, expenses, and obligations incurred or owed by the Liquidating Trustee or its agents, employees, attorneys, advisors, or other professionals in administering the Combined Plan and Disclosure Statement and the Liquidating Trust (including, without limitation, reasonable compensation for services rendered, and reimbursement for actual and necessary expense incurred by the Liquidating Trustee and its agents, employees, and professionals) arising after the Effective Date through and including the date upon which the Bankruptcy Court enters a Final Decree closing the Chapter 11 Case, which shall be solely payable from the Liquidating Trust Assets prior to any Distribution to Creditors.

"**Liquidating Trust Interests**" mean the non-certificated beneficial interests of the Liquidating Trust allocable to Holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the Liquidating Trust Agreement, which may or may not be transferable.

"**Liquidating Trustee**" means Craig R. Jalbert of Verdolino & Lowey, P.C.

"**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"**Miscellaneous Secured Claims**" means Claims which are: (a) secured by a valid and perfected lien in collateral which is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (i) as set forth in the Combined Plan and Disclosure Statement, (ii) as agreed to by the Holder of such Claim and the Debtor, or (iii) as

determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (b) subject to a valid right of setoff under Bankruptcy Code section 553 that is not a DIP Facility Claim or Remaining Vuong Prepetition Secured Claim.

"**NDMA**" means NDMAscendant, LLC or its designee.

"**Nevada Counterclaims**" means any claim(s), counterclaim(s), or crossclaim(s) that have or could have been brought by the Debtor in the Nevada Litigation.

"**Nevada Litigation**" means the case captioned *John Matze v. Parler LLC, NDMAscendant, LLC, Jeffrey Wernick, Mark Meckler, Dan Bogino, Rebekah Mercer, et al.* pending in the Eighth Judicial District Court, Clark County, Nevada, assigned Case No. A-21-831556-B.

"**Non-Tax Priority Claims**" means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims.

"**Officers**" means the officers of the Debtor as of the Petition Date.

"**Olympic**" means Olympic Media LLC.

"**Olympic APA**" means that certain asset purchase agreement entered into between Olympic and Parler 2022, Inc., dated in or around April 2023.

"**Olympic Claims**" means any or all Claims or Causes of Action of the Debtor arising out of or related to the Olympic APA.

"**Olympic Purchase Price**" means the total purchase price under the Olympic APA.

"**Person**" means a "person" as defined in Bankruptcy Code section 101(41).

"**Petition Date**" means April 15, 2024, the date on which the Debtor filed its voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

"**Plan Supplement**" means the appendix of schedules and exhibits to be filed with the Bankruptcy Court at least seven (7) days before the earlier of (i) the Voting Deadline or (ii) the deadline to object to confirmation of the Combined Plan and Disclosure Statement.  The Plan Supplement will contain, among other things: (a) a liquidation analysis; (b) the Liquidating Trust Agreement; (c) identification of the Liquidating Trustee; (d) the Schedule of Causes of Action; and (e) any other disclosures as required by the Bankruptcy Code.

"**Priority DIP Tranche**" means that certain superpriority senior secured priming credit facility in an aggregate amount of $800,000, subject to the terms of the DIP Financing Term Sheet and the DIP Orders.

13

"**Priority Tax Claims**" means Claims of a Governmental Unit against any Debtor entitled to priority pursuant to Bankruptcy Code section 507(a)(8) or as specified in Bankruptcy Code section 502(i).

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

"**Professional**" means any professional Person employed in the Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 pursuant to an order of the Bankruptcy Court and who is to be compensated for services rendered pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331, or 363.

"**Professional Fee Claims**" means all Claims for compensation and reimbursement of expenses by Professionals, for the period starting with each Professional's retention date pursuant to an order of the Bankruptcy Court and ending with the Effective Date, to the extent Allowed by the Bankruptcy Court.

"**Professional Fee Escrow**" means the escrow account containing $323,258.42 (as of June 10, 2025) that was funded by NDMA and is held by the Debtor.

"**Proof of Claim**" means a proof of claim filed against any Debtor in accordance with the Bar Date Order or any other order of the Bankruptcy Court requiring or setting forth a time period for the fixing of Claims.

"**Purchased Assets**" means the assets that were sold, granted, transferred, assigned, conveyed, and delivered to Purchaser pursuant to the Sale Order and the Vuong Asset Purchase Agreement.  Any inconsistencies that arise under this definition shall be interpreted in favor of the definition of "Purchased Assets" in the Vuong Asset Purchase Agreement, as modified by the Sale Order.

"**Purchaser**" means Vincent Vuong.

"**Rejection Claim**" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by the Debtor, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"**Related Person**" means with respect to any Person, such Person's current and former officers, directors, principals, partners, members, managers, shareholders, attorneys, accountants, financial advisors, investment bankers, and their respective successors and assigns all in their capacities as such.

"**Released Party**" means, collectively, and in each case, in their respective capacities as such, (i) all members of the Debtor's Board; (ii) the Debtor's Officers, directors, managers, principals, members, employees, and agents, that served as of or after the Petition Date (except as set forth below); and (iii) all current and former Professionals of the Debtor, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.  For the avoidance of doubt, the Released Parties shall not include any Holders of Interests in their capacity

14

as such.  For the further avoidance of doubt, the Released Parties do not include NDMAscendant, LLC, Jeffrey Wernick, Mark Meckler, Dan Bongino, or Rebekah Mercer.

"**Remaining Vuong Prepetition Secured Claim**" means the Claim of Mr. Vuong in the amount set forth on Proof of Claim No. 12 as adjusted in accordance with the terms of the Vuong Settlement Term Sheet.

"**Sale Order**" means the *Order (A) Approving Asset Purchase Agreement by and Among the Debtor, Dynascale Inc., Alchemy Data Center, LLC and Vinh Vuong; (B) Authorizing the Sale of the Parlement Assets to Vinh Vuong or his Designee, Free and Clear of All Liens, Claims, Encumbrances and Interests; and (C) Granting Related Relief* [Docket No. 202].

"**Sale**" means the sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances, pursuant to the Sale Order and the Vuong Asset Purchase Agreement.

"**Schedule of Causes of Action**" means the non-exclusive schedule of Causes of Action to be included in the Plan Supplement.

"**Schedules**" means collectively the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtor under Bankruptcy Code section 521 and Bankruptcy Rule 1007 [Docket No. 50], and all amendments and modifications thereto.

"**Scheduled**" refers to any Claim included in the Debtor's Schedules.

"**SEC**" means the United States Securities and Exchange Commission.

"**Section 510(b) Claim**" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

"**Solicitation Package**" means the package to be distributed to certain Creditors for solicitation of votes on the Combined Plan and Disclosure Statement.

"**Solicitation Procedures Order**" means the order, as amended, granting preliminary approval of the Combined Plan and Disclosure Statement for solicitation and scheduling the Confirmation Hearing.

"**Statutory Fees**" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

"**Tax Code**" means the Internal Revenue Code, as amended.

"**Thurston**" means Thurston Fund III, LP.

"**Thurston Claims**" means any Claims or Causes of Action of the Debtor against Thurston arising out of or related to the Thurston Commitment Agreement.

"**Thurston Commitment Agreement**" means that certain commitment agreement dated September 20, 2022, between Thurston and the Debtor whereby Thurston agreed to commit certain cash to the Debtor in exchange for stock in the Debtor under the terms and conditions set forth in that agreement.

"**Treasury Regulations**" means the regulations, including temporary regulations or any successor regulations, promulgated under the United States Internal Revenue Code, as amended from time to time.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

"**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

"**Unclaimed Distribution Deadline**" means three (3) months from the date the Debtor or the Liquidating Trustee, as the case may be, makes a Distribution pursuant to the Combined Plan and Disclosure Statement.

"**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

"**Voting Classes**" means Classes 2 and 4.

"**Voting Deadline**" means July 28, 2025 at 4:00 p.m. prevailing Eastern Time.

"**Voting Record Date**" means July 2, 2025.

"**Vuong Prepetition Liens**" has the meaning set forth in the DIP Term Sheet.

"**Vuong Asset Purchase Agreement**" means that certain asset purchase agreement dated as of October 31, 2024, by and among the Debtor, Dynascale, Alchemy, and Mr. Vuong, attached to the Sale Order as Exhibit A.

"**Vuong Settlement**" means the settlement agreement set forth in the Vuong Settlement Term Sheet.

"**Vuong Settlement Term Sheet**" means that certain term sheet, dated June 10, 2025, between Parlement Technologies, Inc. and Vincent Vuong.

### B.    Interpretation, Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

(1)    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral genders.

16

(2)     Unless otherwise specified, each section, article, schedule, or exhibit reference in the Combined Plan and Disclosure Statement is to the respective section in, article of, schedule to, or exhibit to the Combined Plan and Disclosure Statement.

(3)     The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained in the Combined Plan and Disclosure Statement.

(4)     The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction and interpretation of the Combined Plan and Disclosure Statement.

(5)     A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6)     The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

(7)     Unless otherwise provided, any reference in the Combined Plan and Disclosure Statement to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(8)     In computing any period of time prescribed or allowed by the Combined Plan and Disclosure Statement, the provisions of Bankruptcy Rule 9006(a) shall apply.

## IV.    Disclosures

The disclosures herein are drawn from, and incorporate by reference, the First Day Declaration and other pleadings filed by the Debtor, including in the Nevada Litigation.

### A.     General Background

#### 1.     The Company and Its Business

The Debtor is a privately owned corporation formed under the laws of Delaware, on June 21, 2022, and was the parent company of the conservative social media platform Parler. The Parler platform was a microblogging service that was both a website and app. The Parler App launched in August 2018 and served as an alternative to larger mainstream social media platforms such as Twitter/X and Facebook. What started out with 100,000 users in mid-2019, doubled shortly after, and at the height was said to have reached in excess of 10 million users.

The Parler App utilized technology known as "parleys," where the user's feed of posts appears to the user chronologically, instead of through an algorithm-based selection process. Parleys are limited to 1,000 characters in length, and the user can "vote" or "echo" the post of other users whom they follow – similar to the "like" and "retweet" features of Twitter/X. The platform also provided a direct message feature, allowing users to privately contact each other.

17

On or before January 10, 2021, there was a data breach.

In addition, the content and userbase of the Parler App came under scrutiny in 2021. For a brief time, the Parler App was removed from the Apple and Google app stores (and later restored) and removed from hosting services, and later reemerging using different hosting services.

In 2022, the company underwent a restructuring and began using cloud-based software services of Salesforce Inc. Its vision was to leapfrog the free speech social medial platform industry by building the world's premier free speech technology infrastructure and platform.

As part of the restructuring, the Debtor purchased 53,343 shares of common stock of Dynascale and 90% of the issued and outstanding membership interest in Alchemy, which were owned by Vincent Vuong ("**Mr. Vuong**"). Dynascale is a private cloud company that provides businesses around the globe an alternative to Big Tech providers by providing private and hybrid cloud solutions and customized managed services. Alchemy offers a complete assortment of enterprise technology environments, systems and processes that help businesses source, implement and support existing and future technology.

In January of 2023, the Debtor laid off a majority of its staff, and shortly thereafter sold the Parler App to Olympic, an affiliate of the digital media conglomerate Starboard, and the Parler App was to be temporarily shut down in April 2023.

Shortly prior to the Petition Date, the Debtor appointed Mr. Craig R. Jalbert as Chief Restructuring Officer and Mr. Stephen S. Gray as sole director, President, Chief Executive Officer ("**CEO**"), Treasurer, and Secretary.

## 2.      Financial Overview of the Company

As of the Petition Date, the Debtor reported that it had total assets in excess of $10,000,000, and total liabilities as of the Petition Date of approximately $15,000,000. On May 29, 2024, the Debtor filed its Schedules, listing total known assets of $68,930,440.99 (including the Debtor's interests and investments in Dynascale, Alchemy, and Parler 2022, Inc.), and total known liabilities (including contingent, unliquidated, and disputed liabilities) of $16,690,380.49. On January 3, 2025, the Claims and Noticing Agent filed a copy of the Claims Register [Docket No. 234], listing total filed claims in an amount of $1,620,674,049.29.[2] $1.6 billion of this total represents the filed claim of John Matze ("**Mr. Matze**"), asserted in the Nevada Litigation, which the Debtor scheduled as a contingent, unliquidated, and disputed claim of $10 million.

### a.      The Prepetition Secured Debt

In September 2022, the Debtor entered into a transaction with Mr. Vuong for the purchase of Dynascale and Alchemy. In connection with the transaction and pursuant to various transaction documents, Mr. Vuong held the Vuong Prepetition Secured Debt. Mr. Vuong, having filed a UCC-1 financing statement, asserts a security interest in all of the Debtor's assets, which also includes

---

[2]     This amount excludes apparent duplicate claims. No claims reconciliation process has yet been undertaken, and nothing in this Combined Plan or Disclosure Statement shall alter the rights of any Party with respect to filed Claims.

(i) a pledge to Mr. Vuong of 10,000 shares of common stock of Dynascale, and (ii) an assignment of ninety percent (90%) of the membership interest in Alchemy to Mr. Vuong. The Debtor and Mr. Vuong entered into a Forbearance Agreement in June of 2023, so that the Debtor could obtain financing. As of the Petition Date, Mr. Vuong had recently asserted control over the voting and shareholder rights of Dynascale, and asserted sole membership and management of Alchemy.

Upon information and belief of the Chief Restructuring Officer as of the Petition Date, on May 3, 2023, the Debtor obtained a $600,000 loan from Thurston. Pursuant to the terms of the agreement, Thurston agreed to fund an additional $1,900,000 to support the $2.5 million loan previously made by the Company to M-Theory enterprise.

In addition, on or about September 20, 2022, Thurston signed the Thurston Commitment Agreement with the Debtor whereby Thurston agreed to commit $10.0 million to the Debtor in exchange for stock in the Debtor, pursuant to the terms of that agreement. Upon information and belief, Thurston did not provide the committed funds to the Debtor as required under this Thurston Commitment Agreement.

### b.    Unsecured Debt

The total aggregate amount of unsecured Claims filed in this Chapter 11 Case is approximately $1,610,450,000. Of that amount, $1.6 billion represents the contingent, unliquidated, and disputed Claim of Mr. Matze asserted in the Nevada Litigation. The remaining Claims are held by about 35 distinct creditors, including trade vendors, former employees, holders of indemnity claims, and unsecured lenders. As of June 2024, the Debtor believed General Unsecured Claims would likely be in the range of $6,000,000. *See Declaration of Craig R. Jalbert in Support of Debtor's Opposition to Abstention or Remand*, filed in the Nevada Litigation at Docket No. 25 ¶ 11.

### c.    Prepetition Assets

Pursuant to a certain Promissory Note from April 2023 (the "**Singularity Note**"), Singularity Ventures, Inc. ("**Singularity**") received a loan from the Debtor in the amount of $2,500,000, and Singularity granted the Debtor a first priority lien on all of its assets. The Singularity Note was acquired by Vuong in connection with the Sale.

In April of 2023, pursuant to the Olympic APA, Olympic Media LLC ("**Olympic**") purchased certain assets of Parler 2022, Inc. for a cash payment of $200,000 plus 30% of the net revenue generated by Olympic from the text database; and over a 36 month period (i) 50% of the first $2 million of revenue generated by Olympic from the e-mail database, up to $1 million ("**Initial Tranche**"), and (ii) following after the Initial Tranche, 30% of the revenue generated by Olympic from the e-mail database, provided that the Purchase Price shall in no event be less than $2.1 million or exceed $3 million.

Based on the Debtor's books and records, as of the Petition Date, it had receivables due from Olympic that were believed to be collectible. In addition, the Debtor has claims against Thurston related to the Thurston Commitment Agreement that was not funded. The Debtor expects the receivables from Olympic and the claims against Thurston to be collectible sometime in 2026.

The Debtor also has claims, counterclaims, or cross-claims against Mr. Matze or other parties related to the Nevada Litigation.

### d.    Equity

As of the Petition Date, the Debtor's total Class A Common Stock consisted of 311,324 shares, and its Class B consisted of 24,265 shares. The Debtor issued 73,142 Class A Voting Common Stock to ten (10) shareholders, and 82,527 were reserved. The Debtor had issued 5,641 shares of Class B Nonvoting Common stock to seven (7) shareholders, and 18,206 shares were reserved.

### 3.    Events Precipitating the Chapter 11 Filing

A number of factors negatively impacted the Debtor's financial performance, ultimately leading the Debtor to seek relief under chapter 11.

The Debtor has a brief but checkered background.  The initial company, Parler LLC was a limited liability company formed in Nevada on May 17, 2018.  Pursuant to its Articles of Conversion filed August 2, 2021, Parler LLC became a Delaware C Corp. Parler Inc., a corporation formed in Delaware on August 2, 2021 (collectively Parler LLC and Parler Inc are referred to as "**Parler**").

Parler was founded in 2018 to address an unmet market need for safe spaces for free thought to flourish online, as an alternative to larger tach companies like Twitter/X, Facebook, and Google.  Parler marketed itself to conservative thought leaders and users with the fear of being "deplatformed."  Parler was said to be succeeding in that regard and towards the end of 2020 and in the beginning of 2021, it was said to be the most successful, fastest-growing social medial companies, ranking #812 on Alexa.com's rankings as of late January 2021.

As a result of the January 6, 2021, riot in Washington, D.C., Parler was targeted and resulted in "deplatforming" by Apple, Google, and Amazon.  Apple and Google effectuated removal of the Parler App from their App Store and Play Store, and Amazon Web Services Terminated services to Parler on January 10, 2021.  At that same time, Parler suffered a data breach.

Mr. Matze was the founder and served as CEO, manager and member of Parler.  In January 2021, Mr. Matze's management of Parler came under scrutiny by shareholders and the Board of Directors.  The dispute over control of Parler ended with the removal of Mr. Matze as CEO, but he remained as manger and member of Parler.  The internal management dispute became public in early February 2021, and widely reported on Fox News Business, USA Today, Axios, and Buzzfeed.

On February 13, 2021, as a result of the unresolved dispute between Mr. Matze and Parler's shareholders and Board of Directors, Parler repurchased Mr. Matze's interest.

20

In May of 2021, George Farmer became CEO replacing Mr. Matze.  Due to certain controversy surrounding the Parler App and amongst it being taken offline, the user base remained stagnant.

In April of 2023, the Debtor sought a loan from Singularity Ventures, Inc. in the amount of $2.5 million.

After the restructuring, the Debtor was unable to obtain third party financing sufficient to satisfy Mr. Vuong's $10 million senior secured note to the Debtor.  The Debtor continued to work with Mr. Vuong in hopes of achieving an amicable resolution.

In April of 2023 George Farmer resigned as the Debtor's CEO and member of the Board of Directors, and Igor Shalkevich was appointed as CEO.

In 2023, the Debtor began layoffs which continued through December leaving relatively few employees.  The layoffs included the Debtor's top executives.  In addition, the Debtor's Board of Directors also resigned, leaving only one remaining director in early 2024.

Parler is also engaged in protracted litigation.  On March 22, 2021, Mr. Matze instituted litigation against Parler LLC and other defendants in a case captioned *John Matze v. Parler LLC, NDMAscendant, LLC, Jeffrey Wernick, Mark Meckler, Dan Bongino, Rebekah Mercer, et al.* in the Eighth Judicial District Court, Clark County, Nevada (the "Nevada State Court"), assigned Case No. A-21-831556-B ("**Nevada Litigation**").  The Nevada Litigation stems from Mr. Matze's removal as CEO, manager and member of Parler.  Mr. Matze alleged that, pursuant to an orchestrated conspiracy, he was abruptly ousted from Parler and his ownership interest stripped, alleging millions in damages, in addition to punitive damages. Certain of the defendants in the Nevada Litigation have filed counterclaims against Mr. Matze.  Following the filing of the Chapter 11 Cases, Parler removed the Nevada Litigation from the Nevada State Court to the United States District Court for the District of Nevada (the "Nevada District Court") and sought to transfer venue to the Bankruptcy court in Delaware.  Mr. Matze objected to the venue transfer and counter-moved for remand to the Nevada State Court.  On January 21, 2025, the Nevada District Court, among other things, found that it was without jurisdiction to consider Parler's motion to transfer venue and granted Mr. Matze's motion to remand to the Nevada State Court.  The Nevada Litigation is now going forward against the non-debtor defendants in the Nevada State Court, with a jury trial now scheduled to commence on August 4, 2026.  Matze has filed a motion in the Debtor's bankruptcy case for relief from the automatic stay, to be heard on July 9, 2025, by which he seeks to have the amount (if any) of the Debtor's liability to Matze determined in that trial, along with Matze's claims against the other defendants as well as all counterclaims and cross-claims.  As of the date of this Disclosure Statement, the Debtor has not formally taken a position on the Matze Stay Relief Motion.

Other litigation included a lawsuit filed in Washington state court by Parler LLC on March 2, 2021, captioned *Parler LLC v. Amazon Web Services Inc.* (the "**Amazon Litigation**"), *intra alia,* for breach of contract and tortious interference with a contract.  The Amazon Litigation was settled by agreement of the parties.

21

A trademark infringement case was filed on May 26, 2021, in the United States District Court for the District of Nevada, captioned as *46 Labs LLC v. Parler LLC*, and assigned Case No. 2:21-cv-01006 ("**46 Labs Case**").  The 46 Labs Case was dismissed on September 1, 2023.

In September 2022 litigation was brought against Parler Inc. captioned as *Migliano v. Parler Inc.*, Case No. 0:22-cv-61805-RKA (Fed. D. Ct., S. D. of Florida) for alleged violations of the Federal Telephone Consumer Protection Act, as well as the Florida Telephone Solicitation Act. Parler reached a settlement in this case and it was dismissed April 10, 2023.

## B.    The Chapter 11 Case

### 1.    Retention of Professionals

The Debtor, through various applications which were subsequently approved by the Bankruptcy Court, employed certain professionals including: Potter Anderson & Corroon LLP as counsel [Docket No. 104]; Bielli & Klauder, LLC as counsel [Docket No. 13] (later replaced by Potter Anderson & Corroon, LLP); Craig R. Jalbert and Verdolino & Lowey, P.C. as Chief Restructuring Officer [Docket No. 12]; Force 10 Partners, LLC as investment banker [Docket No. 113]; David J. Merrill P.C. as Special Counsel [Docket No. 55]; and Reliable Companies as Claims and Noticing Agent [Docket No. 11].

### 2.    DIP Financing

Pursuant to the DIP Motion, the Debtor sought authorization to obtain the DIP Facility pursuant to the DIP Financing Term Sheet: (i) a senior secured priming credit facility in an amount not to exceed $800,000; and (ii) a junior secured tranche in the maximum aggregate amount of $310,000, funded by NDMA, which is junior to both the Priority DIP Tranche and the Vuong Prepetition Secured Debt.

The Debtor further sought authorization, through the DIP Motion, to use Cash Collateral (each as defined in the Interim DIP Order), and granting the DIP Lenders (i) superpriority senior secured and priming interests in and liens on all of the DIP Collateral (as defined in the DIP Motion) in the priorities set forth in the Interim DIP Order and DIP Financing Term Sheet; as well as (ii) allowed super priority administrative expense claims with respect to the Debtor's obligations under the DIP Facility.  The Debtor entered the Chapter 11 Case with minimal cash on hand, and thus access to the DIP Facility and the use of Cash Collateral was critical to ensure the Debtor's smooth entry into chapter 11 and ability to fund the marketing and sale of their assets.  The Court entered the Interim DIP Order on July 3, 2024, and the Final DIP Order on August 9, 2024, in each case approving the DIP Motion.

### 3.    No Appointment of a Creditors' Committee

On July 10, 2024, the U.S. Trustee filed the *Statement That Unsecured Creditors' Committee Has Not Been Appointed* [Docket No. 94], notifying parties in interest that the U.S. Trustee had not appointed a statutory committee of unsecured creditors in the Chapter 11 Case. The Debtor held a meeting of creditors pursuant to section 341 of the Bankruptcy Code on September 9, 2024.

4. **Sale of Substantially All of the Debtor's Assets**

The Debtor filed the Chapter 11 Case to market and sell all of the Debtor's assets.

To that end, amongst other things, the Debtor, on July 22, 2024, filed the *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of the Assets of the Debtor and/or Certain of its Non-Debtor Subsidiaries, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Seek Approval of Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 108] (the "**Bidding Procedures Motion**").

On August 13, 2024, the Bankruptcy Court entered the *Corrected Order (I) Approving Bidding Procedures for the Sale of the Assets of the Debtor and/or Certain of its Non-Debtor Subsidiaries, (II) Authorizing the Debtor to Designate a Stalking Horse Bidder and to Seek Approval of Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. 143].

On October 25 and October 28, 2024, pursuant to the Bidding Procedures Order, the Debtor commenced the Auction for the sale of the Assets. Mr. Vuong was named as the successful bidder for the Assets, as described in the Vuong Asset Purchase Agreement. With respect to the assets of Alchemy and Dynascale included in Mr. Vuong's successful bid, Mr. Vuong conducted an Article 9 foreclosure sale. Mr. Vuong's bid consisted of $6.35 million, comprising a combination of cash and credit applied in connection with the Vuong Prepetition Secured Debt and Mr. Vuong's entitlements under the DIP Facility, as set forth in the Vuong Asset Purchase Agreement. After a successful auction and a hearing to approve the Sale, on November 1, 2024, the Bankruptcy Court entered the *Order (A) Approving Asset Purchase Agreement by and Among the Debtor, Dynascale Inc., Alchemy Data Center, LLC and Vinh Vuong; (B) Authorizing the Sale of the Parlement Assets to Vinh Vuong or his Designee, Free and Clear of All Liens, Claims, Encumbrances and Interests, and (C) Granting Related Relief* [Docket No. 202]. The Sale closed on November 26, 2024.

5. **Claims Process and General Bar Date**

The Debtor filed the Bar Date Motion on June 14, 2024, and on June 28, 2024, the Bankruptcy Court entered the Bar Date Order. The Debtor filed the *Notice of Deadline for Filing Proofs of Claim* on July 3, 2024 [Docket No. 85], which established the General Bar Date and the Governmental Bar Date.

Pursuant to the Bar Date Order, all Creditors holding or wishing to assert a Claim against the Debtor or the Debtor's Estate, accruing prior to the Petition Date, and which remain unpaid, including Claims arising under Bankruptcy Code section 503(b)(9), were required to file a Proof of Claim by the General Bar Date.

Further, pursuant to the Bar Date Order, Governmental Units with Claims against the Debtor or the Debtor's Estate, accruing prior to the Petition Date, were required to file Proofs of Claim by the Governmental Bar Date.

### 6. Satisfaction of Claims Prior to the Effective Date

a. Vuong Prepetition Secured Debt – Approximately $5,227,500 of the Vuong Prepetition Secured Debt was satisfied by being credited toward the purchase price for the Sale, as set forth in the Vuong Asset Purchase Agreement.

b. DIP Facility Claims – The DIP Facility Claims were satisfied through the closing of the Sale. The DIP Lenders will not receive any further Distribution on account of any claims arising from the DIP Facility.

### C. Summary of Assets

Following the closings of the Sale, the Debtor has no remaining tangible Assets, and its remaining Assets consist primarily of cash, Causes of Action, and other miscellaneous Assets.

### D. Vuong Settlement[3]

On June 10, 2025, the Debtor and Mr. Vuong entered into the Vuong Settlement Term Sheet, a copy of which is attached hereto as **<u>Exhibit A</u>** and incorporated into this Combined Plan and Disclosure Statement as if fully set forth herein. The Vuong Settlement Term Sheet memorializes the terms of the Vuong Settlement, pursuant to which the Debtor agreed to, among other things, (i) allow the Remaining Vuong Prepetition Secured Claim in the amount of $8,090,294.90; (ii) provide a release of Mr. Vuong and his related persons or entities from any and all claims, objections, challenges, and other causes of action that the Debtor may have asserted against Mr. Vuong and his affiliates arising, accruing, or existing at any time prior to the Effective Date; and (iii) engage counsel for the Thurston and Olympic litigation claims, which may be different counsel, acceptable to Mr. Vuong to manage and prosecute the litigation of the Debtor's claims against Thurston and Olympic, including and the negotiation of the terms of the engagement of such counsel, with any disagreements as to material aspects of the Recovery Plan, including settlement, subject to resolution by the Bankruptcy Court; the Parties agree that any fee earned by or any expense reimbursement owed to counsel with respect to any recovery on the Thurston or Olympic litigation claims shall be paid first from the recoveries of the applicable litigation, with the net recoveries shared as set forth below. In exchange, Mr. Vuong has agreed as follows:

(a) Except as provided under subsection (b), Mr. Vuong and the Debtor will share in the recovery of all remaining Assets of the Debtor's estate, including, without limitation, the net proceeds of any Assets, which shall be shared between Mr. Vuong and the Debtor's estate with 75% of the cash recoveries provided to Mr. Vuong and 25% provided to the Debtor's estate until the Vuong Claim is paid in full; in the event the

---

[3] The description of the Vuong Settlement described herein are qualified in their entirety by the terms of the Vuong Settlement Term Sheet, and in the event the description herein differs from the terms of the Vuong Settlement Term Sheet, the Vuong Settlement Term Sheet shall control.

24

Vuong Claim is paid in full, the proceeds of all remaining Assets will be paid to the Debtor's estate;

(b) In the event that the Liquidating Trust determines that it will be unable to or does not actually initiate legal proceedings to recover against any Asset at least seventy-five (75) days prior to the applicable termination of any statute of limitations or other deadlines established by laws applicable to remaining Assets (as applicable, an "**SOL Deadline**"), then the Liquidating Trust shall, at Mr. Vuong's option and written request (which may be by e-mail) cede control over such Assets to Mr. Vuong, and shall thereafter take all further actions necessary to vest with Mr. Vuong all appropriate authority to prosecute all claims related to such Asset(s) for and on behalf of the Liquidating Trust (the "**Vuong Option**").   At such time following Mr. Vuong's exercise of the Vuong Option with respect to one or more Assets, Mr. Vuong shall be permitted (but not required) to engage counsel, to initiate legal proceedings with respect to such Asset in the name of and behalf of the Liquidating Trust and the estate, on terms reasonably agreeable to Mr. Vuong and the Liquidating Trust, and to manage and prosecute any necessary litigation in respect of the applicable Asset.  In the event that Mr. Vuong exercises the Vuong Option, Mr. Vuong and the Liquidating Trust agree that (i) Vuong shall be primarily liable for all costs and expenses associated with seeking recovery against the applicable Asset(s), (ii) Mr. Vuong may manage and prosecute any litigation in connection with the recovery of the applicable Asset(s), (iii) any fee earned by or any expense reimbursement owed to counsel with respect to any recovery on the such Assets managed and prosecuted by Mr. Vuong (a "**Vuong Recovery**") shall be paid first from the recoveries of the applicable litigation, after which 95% of the net recovery from each Vuong Recovery (after payment of all costs of collection) shall be allocated to Vuong and 5% of the net recovery from each Vuong Recovery shall be allocated to the Liquidating Trust and the estate, until the Remaining Vuong Prepetition Secured Claim is paid in full, and thereafter all remaining recoveries from the Assets shall be paid to the Liquidating Trust.  Any disagreements as to material aspects of the recovery plan for such Assets, including settlement, shall be subject to resolution by the Bankruptcy Court.

(c) Mr. Vuong will waive any deficiency with respect to the Remaining Vuong Prepetition Secured Claim and agrees to cap his recovery on the Remaining Vuong Prepetition Secured Claim to 75% of the Debtor's remaining assets, as set forth above (or 95% of the applicable Assets, with respect to which the Vuong Option is exercised);

(d) Mr. Vuong will provide full cooperation to the Debtor in connection with the liquidation of the Assets and will vote in favor of the Plan with respect to the Remaining Vuong Prepetition Secured Claim, provided the Plan is consistent with the terms of the Vuong Settlement Term Sheet or are otherwise acceptable to Mr. Vuong;

(e) Subject to the terms of the Vuong Settlement Term Sheet, all administrative expenses accrued in the Debtor's bankruptcy estate and the Liquidating Trust shall be paid solely from the estate's 25% share of the Assets (or estate's 5% share of the applicable Assets with respect to which the Vuong Option is exercised) and Mr. Vuong shall have no right to object to such claims.  Mr. Vuong shall have no input in or right to receive any

25

budget prepared by the Debtor, the Litigation Trust, or any of their professionals or representatives.

(f) The Vuong Settlement shall be effective upon the earlier of the Effective Date of the Plan and the date the entry of an order of the Bankruptcy Court approving the Vuong Settlement pursuant to Bankruptcy Rule 9019 becomes a final order.

### E. Summary of Treatment of Claims and Interests under the Combined Plan and Disclosure Statement

The following chart summarizes the classification and treatment of the Classes:

| Class | Estimated Range of Allowed Claims[4] | Treatment | Entitled to Vote | Estimated Recovery to Holders of Allowed Claims[5] |
|---|---|---|---|---|
| Class 1 – Miscellaneous Secured Claims | $0 | Unimpaired | No | 100% |
| Class 2 – Remaining Vuong Prepetition Secured Claim | $8,090,294.90 | Impaired | Yes | 75-100% |
| Class 3 – Non-Tax Priority Claims | $0 | Unimpaired | No | 100% |
| Class 4 - General Unsecured Claims | $6,000,000 to $1,610,450,000 | Impaired | Yes | 0-2% |
| Class 5 – Existing Equity | N/A | Impaired/ Deemed to Reject | No | 0% |

### F. Certain U.S. Federal Income Tax Consequences to the Combined Plan and Disclosure Statement

Substantial uncertainty exists with respect to many of the tax issues discussed below. Therefore, each holder of a Claim is urged to consult its own tax advisor regarding the federal,

---

[4] The Debtor has not completed an analysis of Claims in the Chapter 11 Case, and all objections to such Claims have not been filed and/or fully litigated and may continue following the Effective Date. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[5] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims against the Debtor in the Chapter 11 Case. As set forth above, the actual amount of the Allowed Claims may be greater or lower than estimated. Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court and the actual amount of cash available for Distribution.

state, and other tax consequences of this Combined Plan and Disclosure Statement. No rulings have been or are expected to be requested from the Internal Revenue Service ("**IRS**") with respect to any tax aspects of this Combined Plan and Disclosure Statement.

A summary description of certain United States ("**U.S.**") federal income tax consequences of this Combined Plan and Disclosure Statement is provided below. The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of this Combined Plan and Disclosure Statement as discussed herein. Only the potential material U.S. federal income tax consequences to the Debtor and to hypothetical Holders of Claims who are entitled to vote to accept or reject this Combined Plan and Disclosure Statement are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of this Combined Plan and Disclosure Statement, and no tax opinion is being given in this Combined Plan Disclosure Statement. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to any tax consequences of this Combined Plan and Disclosure Statement, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of this Combined Plan and Disclosure Statement. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Tax Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the Holders of Claims. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE, OR LOCAL TAX CONSEQUENCES OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS, AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT TO ANY SPECIFIC HOLDER OF A CLAIM.  EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

### 1.    Consequences to the Debtor

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness ("**COD**") income recognized during the taxable year.  COD income generally equals the excess of the adjusted issue price of the indebtedness discharged over the sum of (i) the amount of cash; (ii) the issue price of any new debt; and (iii) the fair market value of any other property (including stock) transferred by the Debtor in satisfaction of such discharged indebtedness.  COD income also includes any interest that has been previously accrued and deducted but remains unpaid at the time the indebtedness is discharged.

Section 108(a)(1)(A) of the Tax Code provides an exception to this rule, however, where a taxpayer is in bankruptcy and where the discharge is granted or is effected pursuant to an approved plan of reorganization by the Bankruptcy Court.  In such a case, instead of recognizing income, the taxpayer is required, under section 108(b) of the Tax Code, to reduce certain of its tax attributes by the amount of COD income.  The attributes of the taxpayer are to be reduced in the following order: current year Net Operating Losses ("**NOLs**") and NOL carryovers, general business and minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets, and finally, foreign tax credit carryforwards.  The reduction in the foregoing tax attributes generally occurs after the calculation of a debtor's tax for the year in which the debt is discharged.  Section 108(b)(5) of the Tax Code permits a taxpayer to elect to first apply the reduction to the basis of the taxpayer's depreciable assets, with any remaining balance applied to the taxpayer's other tax attributes in the order stated above.  In addition to the foregoing, section 108(e)(2) of the Tax Code provides a further exception to the realization of COD income upon the discharge of debt in that a taxpayer will not recognize COD income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for federal income tax purposes.

The Debtor may realize COD income as a result of this Combined Plan and Disclosure Statement.  The ultimate amount of any COD income realized by the Debtor is uncertain because, among other things, it will depend on the fair market value of all assets transferred to Holders of Claims issued on the Effective Date.

In general, if a debtor sells property to a third party it will recognize taxable income equal to the difference between the amount realized on the sale and its tax basis in such assets sold.  In addition, if a debtor conveys appreciated (or depreciated) property (i.e., property having an adjusted tax basis less (or greater) than its fair market value) to a creditor in cancellation of debt, the debtor must recognize taxable gain or loss (which may be ordinary income or loss, capital gain or loss, or a combination of each) equal to the excess or shortfall, respectively, of such fair market value over the debtor's adjusted tax basis in such property.

28

On the Effective Date, the Debtor and the Liquidating Trustee shall execute the Liquidating Trust Agreement, which shall be in all respects acceptable to the Debtor, and shall take all steps necessary to establish the Liquidating Trust in accordance with this Combined Plan and Disclosure Statement, which shall be for the benefit of the Holders of Claims that receive beneficial interests in the Liquidating Trust. Additionally, on the Effective Date the Debtor shall transfer and/or assign and shall be deemed to transfer and/or assign to the Liquidating Trust all of its rights, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with Bankruptcy Code section 1141, the Liquidating Trust Assets shall automatically vest in the Liquidating Trust free and clear of all Claims and liens, subject only to (a) the beneficial interests in the Liquidating Trust, and (b) the expenses of the Liquidating Trust as provided for in the Liquidating Trust Agreement and herein.

The Liquidating Trust shall be governed by the Liquidating Trust Agreement and administered by the Liquidating Trustee. The powers, rights, responsibilities, and compensation of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement. The Liquidating Trustee shall hold and distribute the Liquidating Trust Assets in accordance with this Combined Plan and Disclosure Statement and the Liquidating Trust Agreement. Other rights and duties of the Liquidating Trustee and the Holders of Claims that receive beneficial interests in the Liquidating Trust shall be as set forth in the Liquidating Trust Agreement.

After the Effective Date, the Debtor shall have no interest in the Liquidating Trust Assets. To the extent that any Liquidating Trust Assets cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Bankruptcy Code section 1123 or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Debtor and the Liquidating Trust shall be deemed to have been designated as a representative of the Debtor pursuant to Bankruptcy Code section 1123(b)(3)(B) to enforce and pursue such Liquidating Trust Assets on behalf of the Debtor for the benefit of the Holders of Claims that receive beneficial interests in the Liquidating Trust. Notwithstanding the foregoing, all net proceeds of such Liquidating Trust Assets shall be transferred to the Liquidating Trust, to be distributed in accordance with this Combined Plan and Disclosure Statement.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trust is intended to be treated as a "liquidating trust" for U.S. federal income tax purposes pursuant to Treasury Regulation section 301.7701-4(d), and the Liquidating Trustee will take this position on the Liquidating Trust's tax return accordingly. The beneficiaries of the Liquidating Trust shall be treated as the grantors of the Liquidating Trust and as the deemed owners of the Liquidating Trust Assets. For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of Allowed Claims and (b) a second-step transfer by such Holders to the Liquidating Trust. As a result, the transfer of the Liquidating Trust Assets to the Liquidating Trust should be a taxable transaction, and the Debtor should recognize gain or loss equal to the difference between the tax basis and fair value of such assets. In addition, as detailed above, if the total fair value of the Liquidating Trust Assets is less than the total of the Allowed Claims (that have been deducted for federal income tax purposes) the Debtor will recognize COD income equal to such difference. As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Liquidating

29

Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtor, the Liquidating Trustee, and the Holders of Claims receiving beneficial interests in the Liquidating Trust shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes. The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

If the Liquidating Trust were not to qualify as a "liquidating trust," as described above, the Liquidating Trustee will take the position that it is a partnership for U.S. federal income tax purposes. In either case, each Liquidating Trust Beneficiary will include its distributive share of income, as reported to it by the Liquidating Trustee, and may not receive sufficient cash to satisfy its tax liability. The IRS may take the position that the Liquidating Trust should be taxed as a corporation for U.S. federal income tax purposes. If the IRS were to prevail in that position, the Liquidating Trust would be subject to U.S. federal income tax which would reduce the return to a Liquidating Trust Beneficiary. Each Liquidating Trust Beneficiary is urged to consult with its own tax advisor.

As detailed above, the transfer of the Liquidating Trust Assets to the Liquidating Trust could give rise to taxable income or loss equal to the difference between the tax basis and fair value of the Liquidating Trust Assets.

With respect to any COD income recognized due the transfer of the Liquidating Trust Assets to the Liquidating Trust, section 108(a)(1)(A) of the Tax Code should apply and thus any COD income should be excluded. However, any NOLs (or other tax attributes) remaining after the use of said NOLs to offset taxable income generated by the asset transfers will be reduced by the amount of such COD income excluded above.

## 2.    Consequences to Holders of Class 4 General Unsecured Claims

Pursuant to this Combined Plan and Disclosure Statement, each Holder of an Allowed Class 4 General Unsecured Claim against the Debtor will receive in satisfaction of its Claim a Pro Rata beneficial interest in the Liquidating Trust which includes all of the Liquidating Trust Assets remaining after satisfaction of all Liquidating Trust Expenses and senior Claims. The U.S. federal income tax treatment to Holders of Allowed General Unsecured Claims may depend in part on the tax basis a Holder has in its Claim, and, in some circumstances, what gave rise to or the nature of the Holder's Claim.

As set forth above, for federal income tax purposes, the Class 4 General Unsecured Claims will be satisfied by the deemed transfer to them of the Liquidating Trust Assets followed by a deemed contribution of said assets to the Liquidating Trust in exchange for their Pro Rata beneficial interest in the Liquidating Trust. It is intended that the Liquidating Trust be treated as

30

a liquidating trust for federal income tax purposes and, if it does not so qualify, as a partnership for federal income tax purposes.

Because of the nature of the Liquidating Trust Assets, the deemed transfer by the Debtor of the Liquidating Trust Assets could cause a Holder to recognize gain, or loss, due to said transfer. The Liquidating Trust Assets that will be deemed transferred to Holders of Class 4 General Unsecured Claims include various assets including the Causes of Action (and proceeds thereof). To the extent that the (i) fair market value of the Pro Rata beneficial interest in the Liquidating Trust Assets that a Holder of a Class 4 General Unsecured Claim receives, exceeds (or is less than) (ii) the Holder's tax basis in such Claim, the Holder should recognize gain (or loss) on such deemed transfer equal to such excess. Such gain (or loss) could be capital or ordinary in nature depending on the genesis and nature of the Claim being satisfied.

### G.    Certain Risk Factors to Be Considered

Holders of Claims who are entitled to vote on the Combined Plan and Disclosure Statement should read and carefully consider the following factors, before deciding whether to vote to accept or reject the Combined Plan and Disclosure Statement.

Effect of Failure to Confirm the Combined Plan and Disclosure Statement. If the Combined Plan and Disclosure Statement is not confirmed by the requisite majorities in number and amount as required by Bankruptcy Code section 1126, or if any of the other confirmation requirements imposed by the Bankruptcy Code are not met, the Chapter 11 Case may not have sufficient funding to proceed, which may result in conversion to a case under chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Case.

"Cramdown". While the Debtor believes that the requirements of Bankruptcy Code section 1129 have been met, the Bankruptcy Court is afforded discretion to determine whether dissenting Holders of Claims would receive more if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

Claims Estimation. While the Debtor has undertaken best efforts to estimate the amount of Claims in each Class correctly, the actual amount of allowed Claims may differ from the estimates and, thus, the potential Distributions to Creditors may be different.

Causes of Action. Pursuant to the Combined Plan and Disclosure Statement, the Liquidating Trust Assets, including the Estate's Causes of Action will be transferred to the Liquidating Trust upon the establishment of the Liquidating Trust on the Effective Date. The Causes of Action include Causes of Action which are not released, waived, or transferred pursuant to the Sale, the Combined Plan and Disclosure Statement, or otherwise. There is no assurance that the Liquidating Trust will be successful in prosecuting any Cause of Action or generate sufficient proceeds from the Causes of Action for Distribution. To the extent Distributions are possible from the Causes of Action, the timing of any such Distribution is uncertain.

Delays. Any delay in confirmation of the Combined Plan and Disclosure Statement or delay to the Effective Date could result in additional Statutory Fees, Administrative Expense Claims, and/or other expenses. This may endanger ultimate approval of the effectiveness of the

Combined Plan and Disclosure Statement or result in a decreased recovery for Holders of Claims entitled to a Distribution.

Sufficient Cash to Pay Claims.  The Combined Plan and Disclosure Statement and the process for confirming the same is subject to the Debtor's and its Estate's use of its Assets.  To the extent that the Debtor or its Estate incurs costs beyond the cash held by the Debtor, the Holders of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Remaining Vuong Prepetition Secured Claims, and Non-Tax Priority Claims may not be paid in full.

Sufficient Cash for Liquidating Trust Distributions.  There is no assurance that the Liquidating Trust Assets will be sufficient to fund the Liquidating Trust's expenses to enable the Liquidating Trust to hold and liquidate the Liquidating Trust Assets as envisioned under the Combined Plan and Disclosure Statement.  Accordingly, there is no assurance that the Liquidating Trust will make any Distributions, the amount, if any, or the timing on which such Distributions may be made.

## H.    Feasibility

The Bankruptcy Code requires that, in order for a plan of reorganization to be confirmed, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or need for further reorganization of the Debtor unless contemplated by the plan.  11 U.S.C. § 1129(a)(1).

Here, the Combined Plan and Disclosure Statement provides for the liquidation and distribution of all of the Debtor's remaining Assets.  Accordingly, the Debtor believe all chapter 11 plan obligations will be satisfied without the need for further reorganization of the Debtor.

## I.    Best Interests Test and Alternatives to the Combined Plan and Disclosure Statement

Notwithstanding acceptance of a plan of reorganization by a voting impaired class, if an impaired class does not vote to accept the plan, the Bankruptcy Court must determine that the plan provides to each member of such impaired class a recovery, on account of each member's claim or interest, that has a value, as of the Effective Date, at least equal to the recovery that such class member would receive if the debtor was liquidated under chapter 7.  11 U.S.C. § 1129(a)(7).  This inquiry is often referred to as the "best interests of creditors test."

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens.  If any assets are remaining in the bankruptcy estate after satisfaction of the secured creditors' claims, administrative expenses are next to receive payment, followed by priority claims such as certain tax claims.  Unsecured creditors are paid from any remaining proceeds, according to their respective priorities.  Unsecured creditors with the same priority share *Pro Rata*.  Finally, equity interest holders receive the balance that remains, if any, after all other creditors are paid in full.

Here, the Debtor believes the Combined Plan and Disclosure Statement satisfies the best interests of creditors test as the recoveries expected to be available to Holders of Allowed Claims under the Combined Plan and Disclosure Statement will be greater than the recoveries expected in a liquidation under chapter 7 of the Bankruptcy Code.

The Assets have already been sold to the Purchaser under the Sale Order, and the Debtor has limited Assets remaining in its Estate. While a liquidation under chapter 7 of the Bankruptcy Code would have the same goal, the Debtor believes that the Combined Plan and Disclosure Statement provides the best source of recovery for multiple reasons. First, liquidation under chapter 7 of the Bankruptcy Code would not provide for a timely Distribution and likely no Distribution at all. Second, Distributions would likely be smaller because of the fees and expenses incurred in a liquidation under chapter 7 of the Bankruptcy Code. The Debtor believes that a liquidation under chapter 7 would not provide for a timely distribution and that such distributions would likely be smaller because a chapter 7 trustee and his/her professionals would have to expend significant time and resources familiarizing themselves with the history of the Debtor and the Causes of Action prior to pursuing any such Causes of Action.

Under the Combined Plan and Disclosure Statement, the Liquidating Trust Expenses, including the fees of the Liquidating Trustee and fees for the Liquidating Trustee's professionals, will be paid out of the Liquidating Trust Assets prior to any Distribution being made to creditors.

At this time, there are no alternative plans available to the Debtor. The closing of the Sale has already occurred, and the Debtor is no longer a going concern enterprise and has few Assets remaining, if any, to administer. Therefore, the Debtor believes that the Combined Plan and Disclosure Statement provides the greatest possible value to all stakeholders under the circumstances and has the greatest chance to be confirmed and consummated.

## V.    Unclassified Claims

### A.    Administrative Expense Claims

Requests for allowance and payment of Administrative Expense Claims arising through the Effective Date must be filed no later than the Administrative Claim Bar Date. Any such Administrative Expense Claim must be filed with the Bankruptcy Court with a copy served on the Debtor's counsel (prior to the Effective Date) and the Liquidating Trustee and its counsel (after the Effective Date), as applicable, by regular mail, overnight courier, or hand delivery to the Debtor at the following address by the Administrative Claim Bar Date:

**Parlement Technologies, Inc.**
**c/o Potter Anderson & Corroon LLP**
**Re: Parlement Technologies, Inc.**
**Attn: Jeremy Ryan**
**1313 North Market Street, 6th Floor**
**Wilmington, DE 19801**

Holders of Administrative Expense Claims arising through the Effective Date that do not file requests for the allowance and payment thereof on or before the Administrative Claim Bar

33

Date shall forever be barred from asserting such Administrative Expense Claims against the Debtor or the Estate, the Liquidating Trust, or the Liquidating Trust Assets.

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment or has been paid by the Debtor or the Purchaser prior to the Effective Date, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in cash (or other available funds in the Estate) from the remaining Assets or the Liquidating Trust Assets: (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable; (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due; or (c) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

### B.    Professional Fee Claims

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Administrative Claim Bar Date.

A final fee hearing to determine the allowance of Professional Fee Claims shall be held as soon as practicable after the Administrative Claim Bar Date. The Debtor or the Liquidating Trustee shall file a notice of such final fee hearing. Such notice shall be posted on the Docket and served upon counsel for all Professionals and the U.S. Trustee.

Allowed Professional Fee Claims shall be paid by the Debtor and/or the Liquidating Trustee: (a) as soon as is reasonably practicable following the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Allowed Professional Fee Claims is entered by the Bankruptcy Court; or (b) upon such other terms as agreed by the Holder of such an Allowed Professional Fee Claim.

Allowed Professional Fee Claims shall be paid in cash from the Professional Fee Escrow, and to the extent necessary, the Debtor's available Assets, or other available Liquidating Trust Assets, and in accordance with the Final Orders entered in the Chapter 11 Case and subject to the Vuong Settlement.

### C.    Priority Tax Claims

Except to the extent the Debtor and/or the Liquidating Trustee and the Holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Debtor or the Liquidating Trustee, as applicable, shall pay, in full satisfaction and release of such Claim, to each Holder of a Priority Tax Claim, cash from their available Assets or as otherwise provided for in the Liquidating Trust Agreement, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date, and (b) the date on which such Priority Tax Claim becomes an

34

Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due from the Liquidating Trust Assets. After the Allowed Priority Tax Claim is paid in full, any liens securing such Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization, or approval of any Person.

### D.   Statutory Fees

All U.S. Trustee Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtor on the Effective Date. After the Effective Date, the Debtor and the Liquidating Trust shall be jointly and severally liable to pay any and all U.S. Trustee Statutory Fees when due and payable. The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trust shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. The Liquidating Trust shall remain obligated to pay U.S. Trustee Statutory Fees on account of the Debtor's Chapter 11 Case until the earliest of the Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Proof of Claim for an Administrative Expense Claim in the Chapter 11 Case and shall not be treated as providing any release under the Combined Plan and Disclosure Statement.

## VI.   Classification and Treatment of Claims and Interests

### A.   Classification of Claims and Interests

The below categories of Claims and Interests classify such Claims and Interests for all purposes, including voting, Confirmation, and Distribution pursuant hereto and pursuant to Bankruptcy Code sections 1122 and 1123.

### B.   Treatment of Claims and Interests

#### 1.   Class 1 – Miscellaneous Secured Claims

a.   *Classification:* Class 1 consists of the Miscellaneous Secured Claims.

b.   *Treatment:* In full and complete satisfaction of an Allowed Miscellaneous Secured Claim against the Debtor, each Holder of an Allowed Class 1 Miscellaneous Secured Claim shall receive, either:

**(i)**   such other treatment as may be agreed upon by any such Holder of a Miscellaneous Secured Claim, the Debtor (prior to the Effective Date), and the Liquidating Trustee (after the Effective Date), or

35

**(ii)** at the Debtor's or the Liquidating Trustee's option, as applicable: (x) payment in cash in the Allowed amount of such Miscellaneous Secured Claim (as determined by settlement or order of the Bankruptcy Court), (y) return of any and all collateral upon which the Holder of such Miscellaneous Secured Claim has a valid first-priority perfected unavoidable lien or (y) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

c.   *Voting:* Holders of Miscellaneous Secured Claims in Class 1 are Unimpaired and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**2.     Class 2 – Remaining Vuong Prepetition Secured Claim**

a.   *Classification*:  Class 2 consists of the Remaining Vuong Prepetition Secured Claim.

b.   *Treatment*:  In full and final satisfaction of the Remaining Vuong Prepetition Secured Claim, at the option of the Debtor or the Liquidating Trustee, Mr. Vuong shall receive Liquidating Trust Interests subject to the Vuong Settlement, up to the amount of the Allowed Remaining Prepetition Vuong Secured Claim; or (iii) such other treatment as may be agreed upon by Mr. Vuong, the Debtor (prior to the Effective Date) or the Liquidating Trustee (after the Effective Date).  For the avoidance of doubt, the treatment of the Remaining Vuong Prepetition Secured Claim shall in all respects comport with the Vuong Settlement Term Sheet.

c.   *Voting*:  The Remaining Vuong Prepetition Secured Claim is Impaired and, therefore, is entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

**3.     Class 3 – Non-Tax Priority Claims**

a.   *Classification:*  Class 3 consists of the Non-Tax Priority Claims.

b.   *Treatment:*  In full and complete satisfaction of an Allowed Non-Tax Priority Claim against the Debtor, each Holder of an Allowed Class 3 Non-Tax Priority Claim shall be paid in cash on the Effective Date, the allowed amount of such claim, or receive such other treatment as may be agreed upon by the holder of a Non-Tax Priority Claim, the Debtor (prior to the Effective Date), and the Liquidation Trustee (after the Effective Date).

c.   *Voting:*  Holders of Non-Tax Priority Claims in Class 3 are not Impaired and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

36

4.      **Class 4 – General Unsecured Claims**

a.      *Classification*:  Class 4 consists of the General Unsecured Claims.

b.      *Treatment*:  In full and complete satisfaction of an Allowed General Unsecured Claim against the Debtor, each Holder of an Allowed Class 4 General Unsecured Claim shall receive its Pro Rata share of Liquidating Trust Interests, net of the Remaining Prepetition Vuong Secured Claim, Allowed Professional Fee Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, and Liquidating Trust Expenses.

c.      *Voting:*  Holders of General Unsecured Claims in Class 4 are Impaired and therefore, are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

5.      **Class 5 – Existing Equity**

a.      *Classification:* Class 5 consists of all Existing Equity.

b.      *Treatment*:  On the Effective Date, existing equity of the Debtor shall be cancelled, and the Holders of existing equity interests shall receive no Distribution under the Combined Plan and Disclosure Statement.

**c.**      *Voting*:  Holders of Existing Equity in Class 5 are deemed Impaired and are deemed to reject the Combined Plan and Disclosure Statement.  As such, Holders of Existing Equity in Class 5 are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

C.      **Impaired Claims and Interests**

Under the Combined Plan and Disclosure Statement, Holders of Claims in Classes 2 and 4 are Impaired pursuant to Bankruptcy Code section 1124 because the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the Holders of such Claims treated in such Classes.

D.      **Cramdown and No Unfair Discrimination**

To the extent that any Impaired Class does not vote to accept the Combined Plan and Disclosure Statement, the Debtor will seek Confirmation pursuant to Bankruptcy Code section 1129(b).  This provision allows the Bankruptcy Court to confirm a plan of reorganization accepted by at least one impaired class so long as it does not unfairly discriminate and is fair and equitable with respect to each class of claims and interest that is impaired and has not accepted the plan. Colloquially, this mechanism is known as a "cramdown."

37

The Debtor believes the treatment of Claims and Interests described in the Combined Plan and Disclosure Statement is fair and equitable and does not discriminate unfairly. The proposed treatment of Claims and Interests provides that each Holder of such Allowed Claim or Interest will be treated identically within its respective Class and that, except when agreed to by such Holder, no Holder of any Claim or Interest junior will receive or retain any property on account of such junior Claim or Interest.

## VII. Confirmation Procedures

### A. Confirmation Procedures

#### 1. Confirmation Hearing

The Confirmation Hearing before the Bankruptcy Court has been scheduled for **August 7, 2025 at 2:00 p.m. (prevailing Eastern time)** at the United States Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom No. 7, Wilmington, Delaware 19801 to consider (a) approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1129. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing and filed with the Bankruptcy Court.

#### 2. Procedure for Objections

Any objection to approval or confirmation of the Combined Plan and Disclosure Statement must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be filed by **July 31, 2025 at 4:00 p.m. (prevailing Eastern time)** with the Bankruptcy Court and served on (i) counsel to the Debtor, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware, 19801, Attn: Jeremy W. Ryan, Esq. (jryan@potteranderson.com) and R. Stephen McNeill, Esq. (rmcneill@potteranderson.com); and (ii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Jr., Esq. (timothy.fox@usdoj.gov). Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.

#### 3. Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if the requirements of Bankruptcy Code section 1129 are met. As set forth in the Combined Plan and Disclosure Statement, the Debtor believes that the Combined Plan and Disclosure Statement: (a) meets the cramdown requirements; (b) meets the feasibility requirements; (c) is in the best interests of creditors; (d) has been proposed in good faith; and (e) meets all other technical requirements imposed by the Bankruptcy Code.

Additionally, pursuant to Bankruptcy Code section 1126, under the Combined Plan and Disclosure Statement, only Holders of Claims in Impaired Classes are entitled to vote.

### B.    Solicitation and Voting Procedures

#### 1.    Eligibility to Vote on the Combined Plan and Disclosure Statement

Except as otherwise ordered by the Bankruptcy Court, only Holders of Claims in Classes 2 and 4 against the Debtor may vote on the Combined Plan and Disclosure Statement pursuant to Bankruptcy Code section 1126.  To vote on the Combined Plan and Disclosure Statement, a Holder must hold a Claim in Class 2 or 4 and have timely filed a Proof of Claim or have a Claim that is identified on the Schedules and is not listed as disputed, unliquidated, or contingent, or be the holder of a Claim that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 2 AND 4.**

#### 2.    Solicitation Package

The Solicitation Packages will contain: (a) the Combined Plan and Disclosure Statement and any exhibits or schedules thereto; (b) the Solicitation Procedures Order, excluding the exhibits annexed thereto; (c) notice of the Confirmation Hearing; (d) an appropriate Ballot, including voting instructions and a pre-addressed, postage prepaid return envelope; and (e) such other materials as the Bankruptcy Court may direct or approve, or that the Debtor deems appropriate.

Holders of Claims in non-voting classes that are deemed to either accept or reject the Combined Plan and Disclosure Statement will receive packages consisting of: (a) notice of the Confirmation Hearing; and (b) a notice of such Holder's non-voting status.

Copies of the Combined Plan and Disclosure Statement and any exhibits annexed thereto shall be available on Docket.  Any creditor or party-in-interest can request a hard copy of the Combined Plan and Disclosure Statement be sent to them by regular mail by contacting the Debtor by e-mail at jrisener@potteranderson.com or by telephone at (302) 984-6176.

#### 3.    Voting Procedures and Voting Deadline

The Voting Record Date for determining which Holders of Claims in Classes 2 and 4 may vote on the Combined Plan and Disclosure Statement is **July 2, 2025**.

The Voting Deadline by which the Debtor must *RECEIVE* original Ballots is **July 28, 2025 at 4:00 p.m. (prevailing Eastern time)**.  In order to be counted as a vote to accept or reject the Combined Plan and Disclosure Statement, each Ballot must be properly delivered to the Debtor by either: (i) mail to Parlement Technologies, Inc., c/o Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801; or (ii) overnight courier or hand delivery to Parlement Technologies, Inc., c/o Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801.

If you are entitled to vote to accept or reject the Combined Plan and Disclosure Statement, a Ballot is enclosed.  Please carefully review the Ballot instructions and complete the Ballot by:

(a) indicating your acceptance or rejection of the Combined Plan and Disclosure Statement; and (b) signing and returning the Ballot to the Debtor.

If you are a member of a Class entitled to vote and did not receive a Ballot, received a damaged Ballot, or lost your Ballot, contact the Debtor at jrisener@potteranderson.com or by telephone at (302) 984-6176.

The following Ballots will not be counted or considered:

(a)     any Ballot received after the Voting Deadline, unless the Bankruptcy Court grants an extension to the Voting Deadline with respect to such Ballot or the Debtor in its discretion agrees to such extension;

(b)     any Ballot that is illegible or contains insufficient information;

(c)     any Ballot cast by a Person or Entity that does not hold a Claim in a Class entitled to vote;

(d)     any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of the Combined Plan and Disclosure Statement;

(e)     simultaneous duplicative Ballots voted inconsistently;

(f)     Ballots partially rejecting and partially accepting the Combined Plan and Disclosure Statement;

(g)     any Ballot received other than the official form sent by the Debtor;

(h)     any unsigned Ballot; or

(i)     any Ballot that is submitted by e-mail, unless the Debtor in its discretion agrees to accept such Ballot by facsimile or e-mail.

### 4.     Deemed Acceptance or Rejection

Holders of Claims in Classes 1 and 3 are unimpaired, and thus deemed to accept the Combined Plan and Disclosure Statement.  Under Bankruptcy Code section 1126(f), Holders of such Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement, and the votes of the Holders of such Claims shall not be solicited.

### 5.     Acceptance by an Impaired Class

In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (i.e., more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one (1) Impaired Class of creditors, excluding the votes of insiders,

must actually vote to accept the Combined Plan and Disclosure Statement. The Debtor urges that you vote to accept the Combined Plan and Disclosure Statement.

**YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

## VIII.    Implementation and Execution of the Combined Plan and Disclosure Statement

### A.    Effective Date

The Effective Date shall not occur until all conditions for the Effective Date are satisfied or otherwise waived in accordance with the terms of the Combined Plan and Disclosure Statement. Upon occurrence of the Effective Date, the Debtor shall file a notice of Effective Date, which shall also be posted on the Case Website.

### B.    Implementation of the Combined Plan and Disclosure Statement

#### 1.    General

The Combined Plan and Disclosure Statement shall be implemented as described in detail below; *provided*, *however*, that the provisions contained in the Combined Plan and Disclosure Statement shall be subject in all respects to the provisions of the Sale Order, the Vuong Asset Purchase Agreement, and the Final DIP Order; and nothing in the Combined Plan and Disclosure Statement shall be deemed to modify, negate, abrogate, overrule, or supersede the terms and provisions of the aforementioned documents.

#### 2.    Corporate Action, Officers and Directors, and Effectuating Documents

On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the Officer(s) or director(s) of the Debtor, including the Chief Restructuring Officer, shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the Board.

The Chief Restructuring Officer, prior to the Effective Date, or the Liquidating Trustee, after the Effective Date, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Combined Plan and Disclosure Statement.

### C.    Records

The Liquidating Trustee shall retain those documents maintained by the Debtor in the ordinary course of business and which were not otherwise transferred to the Purchaser pursuant to the Sale Order. After receipt of such documents, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his reasonable judgment;

*provided*, *however*, that the Liquidating Trustee shall not destroy any documents, including but not limited to tax documents, that the Liquidating Trust is required to retain under applicable law.

### D.    Estimation

The Debtor and/or the Liquidating Trustee, as applicable, may move for the estimation of certain Claims.  Bankruptcy Code section 502(c) provides for the mandatory estimation of (i) any contingent or unliquidated claim, the fixing or liquidation of which would unduly delay the administration of the Chapter 11 Case; or (ii) any right to payment arising from a right to an equitable remedy for breach of performance.  In June 2024, Craig R. Jalbert stated in a Declaration filed in the Nevada Litigation, in the U.S. District Court for the District of Nevada (the "Nevada District Court"), in Support of the Debtor's Opposition to Abstention or Remand (Docket No. 25), that the Debtor believes that, absent estimation of claims brought against the Debtor in the Nevada Litigation, the Nevada Litigation could "derail the Debtor's successful exit from Chapter 11." Nonetheless, as noted above, in January 2025, the Nevada District Court denied the Debtor's motion to transfer the Nevada Litigation to the bankruptcy court in Delaware and instead remanded the litigation back to the Nevada state court where it originated.  If the bankruptcy court grants Matze's currently pending Stay Relief Motion, then the amount of Matze's claim may be determined in the trial in the Nevada state court, scheduled to begin on August 4, 2026.  Otherwise, the Debtor believes that either it or the Liquidating Trust may seek an estimation of Matze's claim in the bankruptcy court.

### E.    Liquidating Trust

#### 1.    Establishment of the Liquidating Trust

The Liquidating Trust will be formed on the Effective Date in accordance with the Combined Plan and Disclosure Statement and pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) implementing the Combined Plan and Disclosure Statement; (ii) investigating and, if appropriate, prosecuting the Causes of Action (including Avoidance Actions, Nevada Counterclaims, D&O Claims, Olympic Claims, and Thurston Claims); (iii) administering, monetizing and/or liquidating the Liquidating Trust Assets; (iv) resolving all Disputed Claims; and (v) making all Distributions to Holders of Allowed Claims from the Liquidating Trust and as provided for in the Combined Plan and Disclosure Statement and the Liquidating Trust Agreement.

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Liquidating Trust Beneficiaries, and making Distributions in accordance with the Combined Plan and Disclosure Statement to the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

Upon establishment of the Liquidating Trust, all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtor, or any employees, Officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtor. The Debtor shall have the power and authority to enter into the Liquidating Trust Agreement on the Effective Date.

The Liquidating Trust Agreement will be filed by no later than the filing of the Plan Supplement and will be considered an integral part of the Combined Plan and Disclosure Statement and is incorporated herein by reference in its entirety.

## 2.    Appointment and Duties of the Liquidating Trustee

Appointment of the Liquidating Trustee. The Debtor designates Craig R. Jalbert, a disinterested Person, as Liquidating Trustee. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. As set forth herein, the material terms of the Liquidating Trustee's compensation are included in the Liquidating Trust Agreement. Effective as of the Effective Date, the Board and/or members/managers of the Debtor shall be comprised solely of the Liquidating Trustee. Effective as of the Effective Date, to the extent not previously resigned, each member of the Board, Officer, manager, or member of the Debtor shall be deemed to have resigned and shall have no continuing obligations to the Debtor on or after the Effective Date. Effective as of the Effective Date, the sole Officer/director/member/manager of the Debtor shall be the Liquidating Trustee.

The Liquidating Trustee shall carry out the duties as set forth in this Section VIII.E and in the Liquidating Trust Agreement. Pursuant to Bankruptcy Code section 1123(b)(3), the Liquidating Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, Claims, and Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust Beneficiaries. In the event that the Liquidating Trustee resigns, is removed, terminated, or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust Agreement. Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of the Combined Plan and Disclosure Statement, the Confirmation Order, and the Liquidating Trust Agreement.

Responsibilities and Authority of the Liquidating Trustee. The responsibilities and authority of the Liquidating Trustee shall include: (a) establishing reserves and investing cash; (b) liquidating non-cash Liquidating Trust Assets; (c) retaining and paying Professionals as necessary to carry out the purposes of the Liquidating Trust; (d) preparing and filing tax returns for the Debtor and the Liquidating Trust as set forth herein; (e) preparing and filing reports and other documents necessary to conclude and close the Chapter 11 Case; (f) objecting to, reconciling, seeking to subordinate, compromising, or settling any or all Claims and Interests, and administering Distributions on account of the Holders of Allowed Claims that are Liquidating Trust Beneficiaries pursuant to the terms of the Combined Plan and Disclosure Statement and Liquidating Trust Agreement; (g) evaluating, filing, litigating, settling, or otherwise pursuing any Causes of Action; (h) abandoning any property of the Liquidating Trust that cannot be sold or distributed economically; (i) making interim and final Distributions of Liquidating Trust Assets;

43

(j) winding up the affairs of the Liquidating Trust and dissolving it under applicable law; (k) destroying records once they are no longer needed for administration of the Chapter 11 Case or the Liquating Trust; and (l) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Combined Plan and Disclosure Statement, the Liquidating Trust Agreement, the Confirmation Order, or any Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Combined Plan and Disclosure Statement.

<u>Powers of the Liquidating Trustee</u>.  The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Bankruptcy Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Combined Plan and Disclosure Statement, including without limitation any powers set forth herein, *provided, however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Combined Plan and Disclosure Statement, the Liquidating Trust Agreement, the Confirmation Order, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by the Combined Plan and Disclosure Statement.  The Liquidating Trustee shall have the power and authority without further approval by the Bankruptcy Court to liquidate the Liquidating Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, including Contingency Counsel, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Cause of Action, and otherwise take any action as shall be necessary to administer the Chapter 11 Case and effect the closing of the Chapter 11 Case, including, without limitation, as follows: (a) the power to invest funds, in accordance with Bankruptcy Code section 345, make Distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee in accordance with the Combined Plan and Disclosure Statement and Liquidating Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and Professionals, including Contingency Counsel, to assist the Liquidating Trustee with respect to his responsibilities; (c) the power to pursue, prosecute, resolve, and compromise and settle any Causes of Action on behalf of the Liquidating Trust without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Combined Plan and Disclosure Statement, the Liquidating Trust Agreement, the Confirmation Order, any other Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Combined Plan and Disclosure Statement.  Except as expressly set forth in the Combined Plan and Disclosure Statement and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any Causes of Action as it determines is in the best interests of the Liquidating Trust Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his decision, other than those decisions constituting gross negligence or willful misconduct.  The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to cash.  Subject to the other terms and provisions of the Combined Plan and Disclosure Statement, the Liquidating Trustee shall be granted standing,

authority, power, and right to assert, prosecute and/or settle the Causes of Action and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a Court-appointed representative of the Estate with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials.

Enforcement of Any Avoidance Actions and Other Causes of Action.  Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee, on behalf of and for the benefit of the Liquidating Trust Beneficiaries, shall be vested with and shall retain and may enforce any Avoidance Actions, Nevada Counterclaims, D&O Claims, Olympic Claims, Thurston Claims and other Causes of Action transferred to the Liquidating Trust that were held by, through, or on behalf of the Debtor and/or the Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Causes of Action are specifically identified in the Combined Plan and Disclosure Statement and whether or not litigation with respect to same has been commenced prior to the Effective Date.  The recoveries from any Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and distributed in accordance with the Liquidating Trust Agreement and the Combined Plan and Disclosure Statement.

Compensation of the Liquidating Trustee.  The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement; *provided*, *however* that such compensation shall only be payable from the Liquidating Trust Assets.  The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in the Combined Plan and Disclosure Statement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee shall not be required to file a fee application to receive compensation.

Retention and Payment of Professionals.  The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, including counsel, to assist and advise the Liquidating Trustee in the performance of his duties and compensate such professionals from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement, including but not limited to, Professionals retained by the Debtor, without the need for an order of the Bankruptcy Court.

Limitation of Liability of the Liquidating Trustee.  The Liquidating Trust shall indemnify the Liquidating Trustee and his Professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his Professionals may incur or sustain by reason of being or having been a Liquidating Trustee or Professional of the Liquidating Trustee for performing any functions incidental to such service; *provided*, *however*, the foregoing shall not relieve the Liquidating Trustee or his professionals from liability for willful misconduct, reckless disregard of duty, breach of fiduciary duty, criminal conduct, gross negligence, fraud, or self-dealing.

### 3.    Purpose of Liquidating Trust

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, prosecuting any Causes of Action transferred to the Liquidating Trust (including the Nevada Counterclaims, the Olympic Claims, the Thurston Claims, and the D&O Claims) to

IMPAC - 11983058v.5

maximize recoveries for the benefit of the Liquidating Trust Beneficiaries, and making Distributions in accordance with the Combined Plan and Disclosure Statement to the Liquidating Trust Beneficiaries with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).

The Liquidating Trust shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Liquidating Trust, and, to the extent not previously filed, for the Debtor.  The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Combined Plan and Disclosure Statement, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Combined Plan and Disclosure Statement unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements.  Any property to be distributed by the Liquidating Trust shall, pending the implementation of such arrangements, be treated as an unclaimed Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

In connection with the consummation of this Combined Plan and Disclosure Statement, the Debtor and the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  All Liquidating Trust Beneficiaries, as a condition to receiving any Distribution, shall provide the Liquidating Trustee with a completed and executed Tax Form W-8 or Tax Form W-9, or similar form within sixty (60) days of a written request by the Liquidating Trustee or be forever barred from receiving a Distribution.

### 4.      Transfer of Liquidating Trust Assets to Liquidating Trust

Pursuant to Bankruptcy Code sections 1123(a)(5) and 1141, all transfers and contributions made to the Liquidating Trust shall be made free and clear of all Claims, liens, encumbrances, charges, and other Interests.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtor will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Combined Plan and Disclosure Statement as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

46

### 5.    Preservation of Rights

Under the Combined Plan and Disclosure Statement, but subject in all respects to the Sale Orders, the Liquidating Trustee retains any and all rights of, and on behalf of, the Debtor, the Estate, and the Liquidating Trust to commence and pursue any and all Causes of Action, including, without limitation, Avoidance Actions, Nevada Counterclaims, D&O Claims, Olympic Claims, Thurston Claims, other Causes of Action, setoff, offset, and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Combined Plan and Disclosure Statement, the Plan Supplement, or elsewhere or the representative of the Estate pursuant to section 1123 of the Bankruptcy Code and all other applicable law, and all such rights shall not be deemed modified, waived, released in any manner, nor shall confirmation of the Combined Plan and Disclosure Statement or the Confirmation Order act as *res judicata* or limit any of such rights of the Liquidating Trustee to commence and pursue any and all Causes of Action, Avoidance Actions, and other causes of actions, or Claims, including, without limitation, setoff, offset and recoupment rights, to the extent the Liquidating Trustee deems appropriate.  Any and all Causes of Action, including, without limitation, Avoidance Actions, Nevada Counterclaims, D&O Claims, Olympic Claims, Thurston Claims, other causes of action, setoff, offset, and recoupment rights, may, but need not, be pursued by the Debtor prior to the Effective Date and by the Liquidating Trustee after the Effective Date, to the extent warranted.

Unless a Cause of Action or other Claim or cause of action against a creditor or other Entity is expressly waived, relinquished, released, compromised, or settled in the Combined Plan and Disclosure Statement, or any Final Order, including the Sale Orders, the Debtor expressly reserves any and all Causes of Action, including, without limitation, setoff, offset, and recoupment rights, for later enforcement and prosecution by the Liquidating Trustee (including, without limitation, any Causes of Actions set forth in the Plan Supplement, or not specifically identified herein, or otherwise, or which the Debtor may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time, or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such any and all Causes of Action, including, without limitation, setoff, offset, and recoupment rights, upon or after the confirmation or consummation of the Combined Plan and Disclosure Statement based on the Combined Plan and Disclosure Statement or the Confirmation Order.  In addition, the Liquidating Trust expressly reserves the right to pursue or adopt any and all Causes of Action, including, without limitation, setoff, offset, and recoupment rights, alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of the Combined Plan and Disclosure Statement or any Final Order.

The Debtor and the Liquidating Trustee do not intend, and it should not be assumed (nor shall it be deemed) that because any existing or potential Causes of Action, including, without limitation, setoff, offset, and recoupment rights, have not yet been pursued by the Debtor or are not set forth herein, or otherwise, that any Causes of Action, including, without limitation, setoff, offset, and recoupment rights, have been waived or expunged.

### 6. Liquidating Trust Expenses

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Liquidating Trust Expenses. All Liquidating Trust Expenses shall be charged against and paid from the Liquidating Trust Assets as provided in the Liquidating Trust Agreement.

### 7. Privileges

On and subject to the terms of the Combined Plan and Disclosure Statement, all of the Debtor's privileges (the "**Privileges**"), including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "**Transferred Privileges**") shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver, limitation, or release, and shall vest with the Liquidating Trust on the Effective Date.

The Liquidating Trust shall hold and be the beneficiary of all Transferred Privileges and entitled to assert all Transferred Privileges. No Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtor's documents, information, or communications subject to any privilege, protection, or immunity or protections from disclosure jointly held by the Debtor and the Liquidating Trust.

The Debtor's Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach or waiver of any Privileges.

To the extent of any conflict between this Section VIII.E.7 of the Combined Plan and Disclosure Statement and any other provision of the Combined Plan and Disclosure Statement relating to Privileges, this Section VIII.E shall control.

### 8. Liquidating Trust Interest

Each Liquidating Trust Interest will entitle its Holder to Distributions from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement. The Liquidating Trust Interests will be uncertificated; thus, Distributions from a Liquidating Trust Interest will be accomplished solely by the entry of names of the Holders and their respective Liquidating Trust Interests in the books and records of the Liquidating Trust. Each Holder of a Liquidating Trust Interest shall take and hold its uncertificated beneficial Interest subject to all the terms and provisions of the Combined Plan and Disclosure Statement, the Confirmation Order, and the Liquidating Trust Agreement.

The Liquidating Trust Interests shall not be registered pursuant to the Securities Act of 1933, as amended, or any state securities law and shall be exempt from registrations thereunder pursuant to section 1145 of the Bankruptcy Code. The Liquidating Trust Interest shall be freely transferrable; *provided, however*, that the transfer of the Liquidating Trust Interest will be

48

prohibited to the extent such transfer would subject the Debtor or the Liquidating Trust to the registration and reporting requirements of the Securities Act and the Security Exchange Act.

### 9.   Termination of Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of the Distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries or the fifth (5th) anniversary of the creation of the Liquidating Trust, *provided that* the Liquidating Trustee shall, in his/her sole discretion, be authorized to seek to extend the dissolution date upon Bankruptcy Court approval by the filing of a motion served on the master service list for cause shown.  This motion must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

### F.   Effective Date and Other Transactions

### 1.   Transfer of Assets to Liquidating Trust

On the Effective Date, except as otherwise expressly provided in the Combined Plan and Disclosure Statement, title to the Liquidating Trust Assets (including the Nevada Counterclaims, the Olympic Claims, the Thurston Claims, and the D&O Claims) shall vest in the Liquidating Trust free and clear of all liens, encumbrances, or interests of any kind.  Except as otherwise provided in the Sale Orders or the Combined Plan and Disclosure Statement, the Liquidating Trust shall succeed to all rights and interests retained by or provided to the Debtor and the Estate to the extent permitted under the Sale Orders.

On the Effective Date, the Debtor will transfer to the Liquidating Trust the Liquidating Trust Assets (including the Nevada Counterclaims, the Olympic Claims, the Thurston Claims, and the D&O Claims).  The Debtor shall thereafter be deemed dissolved on the Effective Date without the need for further notice or action.

### G.   Provisions Governing Distributions under the Combined Plan and Disclosure Statement

### 1.   Method of Payment

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Combined Plan and Disclosure Statement, no interest shall accrue or be payable with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under the Combined Plan and Disclosure Statement is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

49

All Distributions hereunder shall be made by the Debtor, the Liquidating Trustee, or his/her named successor or assign, as "**Disbursing Agent**," on or after the Effective Date or as otherwise provided herein. For the avoidance of doubt, (i) the Debtor or such other Entity designated by the Debtor, shall act as Disbursing Agent with respect to all Effective Date Distributions; and (ii) the Liquidating Trustee, or such other Entity designated by the Liquidating Trustee, shall act as Disbursing Agent with respect to all other Distributions to be made pursuant to the Combined Plan and Disclosure Statement or the Liquidating Trust Agreement following the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Unless otherwise expressly agreed in writing, all cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire.

## 2.    Delivery of Distributions

Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (b) at the addresses set forth in any written notice of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim; or (c) at the address reflected in the Schedules or other more recent records of the Debtor if no Proof of Claim is filed and the Liquidating Trustee has not received a written notice of a change of address.

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees. If any Distribution to a Holder of an Allowed Claim is returned as undeliverable the Disbursing Agent shall make reasonable inquiry for a correct current address. In the event reasonable inquiry does not yield a correct current address, the Disbursing Agent shall have no further obligation to determine the correct current address of such Holder and no Distribution to such Holder shall be made unless and until the Disbursing Agent is notified, in writing, by the Holder of the correct current address of such Holder within ninety (90) days of such Distribution, at which time a Distribution shall be made to such Holder without interest; *provided that* such Distributions shall be deemed unclaimed property or an unclaimed Distribution under Bankruptcy Code section 347(b) at the expiration of ninety (90) days from the Distribution. After such date, all unclaimed property or interest in property shall revert to the Liquidating Trust and (i) if there are to be further Distributions to Holders of Allowed Claims, such unclaimed property or interest in property shall be distributed to Holders of Allowed Claims in accordance with the terms of the Liquidating Trust Agreement and the Combined Plan and Disclosure Statement; and (ii) if a final Distribution has been made, such unclaimed property or interest in property shall be disposed of in accordance with Section VIII.F.5 of the Combined Plan and Disclosure Statement and the Claim of any other Holder to such property or interest in property shall be released and forever barred.

IMPAC - 11983058v.5

### 3. Objection to and Resolution of Claims

Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim is deemed Allowed under the Combined Plan and Disclosure Statement or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim. On or after the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date, including the right to seek estimation of any Claim.

Except as provided herein and in Article IX of the Combined Plan and Disclosure Statement, the Liquidating Trustee or other party-in-interest with standing, to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claim no later than the Claims Objection Deadline.

### 4. Preservation of Rights to Settle Claims

Except as otherwise expressly provided herein, including in Article XI of the Combined Plan and Disclosure Statement, nothing contained in the Combined Plan and Disclosure Statement and related documents, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor or the Estate may have or which the Liquidating Trustee may choose to assert on behalf of the Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (a) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against the Debtor, their Officers, directors, or representatives; and (b) the turnover of all property of the Estate. This section shall not apply to any Claims sold, released, waived, relinquished, exculpated, compromised, or settled under the Combined Plan and Disclosure Statement or pursuant to a Final Order, expressly including the Sale Order. Except as expressly provided in the Combined Plan and Disclosure Statement, nothing contained in the Combined Plan and Disclosure Statement and related documents, or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in the Combined Plan and Disclosure Statement, the Plan Supplement, or any other document related to the Combined Plan and Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them. The Debtor and the Liquidating Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Combined Plan and Disclosure Statement.

### 5. Miscellaneous Distribution Provisions

<u>Disputed Claims</u>. At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim the Distribution to which such Holder is entitled under the Combined Plan and Disclosure Statement with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is Disallowed,

the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is Disallowed and any property withheld pending the resolution of such Claim shall be reallocated Pro Rata to the Holders of Allowed Claims in the same Class.

Disputed Claims Reserve.  The Liquidating Trustee may establish a separate Disputed Claims Reserve in accordance with the Liquidating Trust Agreement on account of Distributions of cash or other property as necessary hereunder.  The Liquidating Trustee shall not make any Distributions of Liquidating Trust Assets to the Liquidating Trust Beneficiaries unless the Liquidating Trustee retains and reserves in the Disputed Claims Reserve such amounts as are reasonably necessary to satisfy amounts that would have been distributed in accordance with Combined Plan and Disclosure Statement in respect of Disputed Claims if the Disputed Claims were determined to be Allowed Claims immediately prior to such proposed Distribution to the Liquidating Trust Beneficiaries.

Distributions After Allowance.  To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Combined Plan and Disclosure Statement.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Liquidating Trustee or, as applicable, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

Setoff.  The Debtor or the Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtor's books and records and in accordance with the Bankruptcy Code.  A claimant may challenge any such setoff made by the Debtor or the Liquidating Trustee in the Bankruptcy Court or any other court with jurisdiction.

Postpetition Interest.  Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims, if any, under section 506(b) of the Bankruptcy Code.

Minimum Distributions.  Notwithstanding anything herein to the contrary, (a) the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Combined Plan and Disclosure Statement would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $100,000, in which case such Distributions shall be deferred to the next Distribution date, (ii) if the amount to be distributed to a Holder on the particular Distribution date is less than $50.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to such Holder is $25.00 or less, in which case no Distribution will be made to that Holder and such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims.

Donation of Remaining Liquidating Trust Assets.  After final Distributions have been made in accordance with the terms of the Combined Plan and Disclosure Statement and the Liquidating Trust Agreement, if the amount of remaining cash is less than $30,000, then the Liquidating Trustee shall donate such amount to charity in accordance with the terms of the Liquidating Trust Agreement.

## IX.    Executory Contracts and Unexpired Leases

### A.    Background

The Sale Order provided for certain treatment of Executory Contracts and Unexpired Leases.  While nothing in the Combined Plan and Disclosure Statement shall be deemed to supersede Sale Order, Article IX of the Combined Plan and Disclosure Statement is included out of an abundance of caution.

### B.    Executory Contracts and Unexpired Leases

All Executory Contracts and Unexpired Leases of the Debtor which have not been assumed, assigned, and/or rejected prior to the Effective Date and that are not subject to a motion to assume or reject as of the Effective Date (if any) shall be deemed rejected on the Effective Date, but the rejection will be effective as of the entry of the Confirmation Order.

### C.    Rejection Claims

In the event that the rejection of an Executory Contract or Unexpired Lease by the Debtor pursuant to the Combined Plan and Disclosure Statement results in a Rejection Claim in favor of a counterparty to such Executory Contract or Unexpired Lease, such Rejection Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtor or the Liquidating Trust, or their respective properties or Interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor and the Liquidating Trustee on or before the date that is thirty (30) days after service of notice of the Effective Date, which notice shall set forth the bar date for Rejection Claims.  All Allowed Rejection Claims shall be treated as General Unsecured Claims in Class 4 pursuant to the terms of the Combined Plan and Disclosure Statement.

## X.    Conditions Precedent to Confirmation and the Effective Date

### A.    Conditions Precedent to Confirmation

The following is the list of conditions precedent to Confirmation:

(1)    the Plan Supplement is filed;

(2)    the form of Liquidating Trust Agreement shall be agreed upon by the Debtor and the proposed Liquidating Trustee; and

(3)     the Combined Plan and Disclosure Statement shall not have been materially amended, altered, or modified from the Combined Plan and Disclosure Statement as filed unless such material amendment, alteration, or modification has been made in accordance with Article XIII herein.

## B.     Conditions Precedent to the Effective Date

The following is the list of conditions precedent to the Effective Date:

(1)     The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall be a Final Order;

(2)     no stay of the Confirmation Order shall then be in effect;

(3)     the Liquidating Trust Agreement shall be executed and the Liquidating Trustee shall have been appointed and accepted such appointment;

(4)     the Combined Plan and Disclosure Statement shall not have been materially amended, altered, or modified from the Combined Plan and Disclosure Statement as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with Article XIII herein; and

(5)     the Debtor shall have filed a notice of Effective Date.

## C.     Waiver of Conditions

The conditions precedent to Confirmation and conditions precedent to the Effective Date may be waived in whole or in part, in writing, by the Debtor, without further order of the Bankruptcy Court.

## D.     Effect of Nonoccurrence of Conditions

If the conditions precedent to the Effective Date are not satisfied or waived, the Debtor may, upon motion and notice to parties in interest, seek to vacate the Confirmation Order; *provided, however*, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions precedent to the Effective Date are satisfied or waived before the Bankruptcy Court enters an order granting such motion.

If the Confirmation Order is vacated: (a) the Combined Plan and Disclosure Statement is null and void in all respects; and (b) nothing contained in the Combined Plan and Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against the Debtor, nor (ii) prejudice, in any manner, the rights of the Debtor or any other party-in-interest.

54

**XI.      Exculpation, Injunctions, and Releases**

**A.      Injunction**

ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER BANKRUPTCY CODE SECTIONS 105 OR 362, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE LATER OF (A) THE EFFECTIVE DATE, OR (B) THE DATE INDICATED IN THE ORDER PROVIDING FOR SUCH INJUNCTION OR STAY. NOTWITHSTANDING THE FOREGOING, NOTHING HEREIN SHALL BE OTHERWISE DEEMED TO MODIFY, LIMIT, AMEND, OR SUPERSEDE ANY INJUNCTIONS OR STAYS GRANTED IN THE SALE ORDERS.

EXCEPT AS OTHERWISE PROVIDED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT OR TO THE EXTENT NECESSARY TO ENFORCE THE TERMS AND CONDITIONS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE CONFIRMATION ORDER, OR A SEPARATE ORDER OF THE BANKRUPTCY COURT, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTOR SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST ANY OF THE PROPERTY THAT IS TO BE DISTRIBUTED UNDER THE TERMS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT (INCLUDING LIQUIDATING TRUST ASSETS), ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A RIGHT OF SETOFF, OTHER THAN ANY RIGHTS OF SETOFF THAT WERE EXERCISED PRIOR TO THE PETITION DATE; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; *PROVIDED, HOWEVER*, THAT SUCH ENTITIES SHALL NOT BE PRECLUDED FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT OR THE CONFIRMATION ORDER; *PROVIDED, FURTHER*, THAT THE FOREGOING SHALL NOT APPLY TO ANY ACTS, OMISSIONS, CLAIMS, CAUSES OF ACTION, OR OTHER OBLIGATIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE COMBINED PLAN AND DISCLOSURE STATEMENT OR ANY DEFENSES THERETO. NOTWITHSTANDING THE FOREGOING, NOTHING HEREIN SHALL BE OTHERWISE DEEMED TO MODIFY, LIMIT, AMEND OR SUPERSEDE ANY INJUNCTIONS OR STAYS GRANTED IN THE SALE ORDER.

**B.      Exculpation**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, EFFECTIVE AS OF THE EFFECTIVE DATE,

55

THE EXCULPATED PARTIES SHALL NOT HAVE NOR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST OR ANY OF THEIR RELATED PERSONS FOR ANY POSTPETITION, BUT PRE-EFFECTIVE DATE, ACT OR OMISSION IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION, THE SOLICITATION OF VOTES ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE CONFIRMATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE CONSUMMATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE ADMINISTRATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT, OR ANY POSTPETITION, BUT PRE-EFFECTIVE DATE, ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE LIQUIDATION OF THE DEBTOR, INCLUDING SPECIFICALLY THE PURSUIT AND ENTRY OF THE SALE ORDER, EXCEPT FOR THEIR FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS SUBSEQUENTLY DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION, AND IN ALL RESPECTS SHALL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE FOREGOING PARAGRAPH SHALL APPLY TO ATTORNEYS AND LAWYERS TO THE GREATEST EXTENT PERMISSIBLE UNDER APPLICABLE BAR RULES AND CASE LAW BUT SHALL NOT BE DEEMED TO RELEASE, AFFECT, OR LIMIT ANY OF THE RIGHTS AND OBLIGATIONS OF THE EXCULPATED PARTIES FROM, OR EXCULPATE THE EXCULPATED PARTIES WITH RESPECT TO, ANY OF THE EXCULPATED PARTIES' OBLIGATIONS OR COVENANTS ARISING PURSUANT TO THIS COMBINED PLAN AND DISCLOSURE STATEMENT OR THE CONFIRMATION ORDER.

C.      **Releases and Limitation of Liability**

(i)      ON THE EFFECTIVE DATE, THE RELEASED PARTIES SHALL BE FULLY RELEASED AND DISCHARGED BY THE DEBTOR AND ITS ESTATE FROM ANY AND ALL LIABILITIES OF THE DEBTOR AND ALL CLAIMS OR CAUSES OF ACTION WHICH COULD BE PURSUED BY OR ON BEHALF OF THE DEBTOR, ITS ESTATE, OR THE LIQUIDATING TRUSTEE PURSUANT TO THIS COMBINED PLAN AND DISCLOSURE STATEMENT.

(ii)      FOR THE AVOIDANCE OF DOUBT, AND WITHOUT LIMITING THE FOREGOING, ON THE EFFECTIVE DATE OF THE VUONG SETTLEMENT, VUONG AND ANY PERSONS OR ENTITIES RELATED TO MR. VUONG SHALL BE RELEASED BY THE DEBTOR FROM ANY AND ALL CLAIMS, OBJECTIONS, CHALLENGES, AND OTHER CAUSES OF ACTION THAT THE DEBTOR MAY HAVE ASSERTED AGAINST MR. VUONG ARISING, ACCRUING, OR EXISTING AT ANY TIME PRIOR TO THE EFFECTIVE DATE OF THE VUONG SETTLEMENT, WHETHER KNOWN OR NOT KNOWN, INCLUDING, WITHOUT LIMITATION,

56

**THOSE CLAIMS AND CAUSES OF ACTION INCLUDED IN THE DRAFT COMPLAINT AND THAT LENDER CLAIM ANALYSIS LETTER SHARED WITH MR. VUONG'S COUNSEL ON OR ABOUT DECEMBER 20, 2024.**

      **(iii)** **Notwithstanding any language to the contrary in this Combined Plan and Disclosure Statement, except as set forth in Article XI.C(ii) of the Combined Plan and Disclosure Statement, nothing herein shall release any party from the Causes of Action.**

**XII.** **Retention of Jurisdiction**

      Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes:

      (1)    to hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

      (2)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

      (3)    to issue such orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, to the extent authorized by Bankruptcy Code section 1142;

      (4)    to consider any amendments to or modifications of the Combined Plan and Disclosure Statement, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

      (5)    to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

      (6)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Combined Plan and Disclosure Statement;

      (7)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Sale Orders;

      (8)    to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

      (9)    to hear any other matter as to which the Bankruptcy Court has jurisdiction;

      (10)    to enter the Final Decree;

      (11)    to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

(12)   to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(13)   to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

(14)   to determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement;

(15)   to determine any other matters that may arise in connection with or related to the Sale Orders or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with the Sale Orders;

(16)   to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(17)   to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

(18)   to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the General Bar Date, the administrative claim bar date set forth in the Bar Date Order, the Governmental Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is released or enjoined hereunder, or for any other purpose.

## XIII.   Miscellaneous Provisions

### A.   Amendment or Modification of the Combined Plan and Disclosure Statement

The Debtor may amend or modify the Combined Plan and Disclosure Statement at any time prior to entry of the Confirmation Order in accordance with the Bankruptcy Code and the Bankruptcy Rules, or after Confirmation and before substantial consummation, provided that the Combined Plan and Disclosure Statement, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications and any such modifications are in compliance with section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019 (b).  A Holder of a Claim that has accepted the Combined Plan and Disclosure Statement shall be deemed to have accepted such Combined Plan and Disclosure Statement as modified if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

IMPAC - 11983058v.5

### B.     Closing of the Chapter 11 Case following the Effective Date

Following the Effective Date, the Liquidating Trustee may file a motion and submit a proposed order for entry by the Bankruptcy Court to effectuate the closing of the Chapter 11 Case.

### C.     Plan Supplement

The Debtor will file the Plan Supplement no later than seven (7) days prior to the Voting Deadline.  The Plan Supplement will contain, among other things: (a) Liquidation Analysis; (b) the Liquidating Trust Agreement; (c) identification of the Liquidating Trustee; (d) a schedule of Causes of Action; and (e) any other disclosures as required by the Bankruptcy Court.

### D.     Filing of Additional Documents

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Liquidating Trustee shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

### E.     Entire Agreement

Except as otherwise indicated, this Combined Plan and Disclosure Statement supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Combined Plan and Disclosure Statement.

### F.     Binding Effect of the Combined Plan and Disclosure Statement

The Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtor, the Holders of Claims, the Holders of Interests, other parties-in-interest and their respective successors, assigns and heirs.  Notwithstanding anything to the contrary herein, nothing in the Combined Plan and Disclosure Statement modifies, alters, or amends the respective rights and obligations of the Debtor or Purchaser under the Sale Order or any other document governing the Sale.

### G.     Application of Bankruptcy Rule 7068

The Debtor, before the Effective Date, and the Liquidating Trustee following the Effective Date, is authorized to serve upon a Holder of Disputed Claim an offer to allow judgment to be taken on account of such Disputed Claim, and, pursuant to Bankruptcy Rule 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Disputed Claim must pay the costs incurred by the Debtor or the Liquidating Trustee after the making of such offer, the Debtor and the Liquidating Trustee are entitled to set off such amounts against the amount of any Distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

### H.    Governing Law

Except as required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

### I.    Time

To the extent that any time for the occurrence or happening of an event as set forth in the Combined Plan and Disclosure Statement falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### J.    Severability

Should any provision of the Combined Plan and Disclosure Statement be deemed unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Combined Plan and Disclosure Statement.

### K.    Revocation

The Debtor reserves the right to revoke and withdraw the Combined Plan and Disclosure Statement prior to the entry of the Confirmation Order.  If the Debtor revokes or withdraws the Combined Plan and Disclosure Statement, then the Combined Plan and Disclosure Statement shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

### L.    Claims and Noticing Agent

The Claims and Noticing Agent shall be relieved of such duties on the date of the entry of the Final Decree or upon written notice by the Debtor or the Liquidating Trustee, and subject to approval by the Bankruptcy Court.

### M.    Inconsistency

To the extent that the Combined Plan and Disclosure Statement conflicts with or is inconsistent with any agreement related to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall control; *provided*, *however*, that nothing in the Combined Plan and Disclosure Statement shall be deemed to supersede, amend, or modify the provisions of the Sale Order or the Final DIP Order.  In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

IMPAC - 11983058v.5

### N.     No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed an admission by any Entity or Person with respect to any matter set forth herein.

### O.     Successors and Assigns

The rights, benefits, and obligations of any Person or Entity named or referred to in this Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such Person or Entity.

### P.     Post-Effective Date Limitation of Notice

After the Effective Date, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, Persons and Entities must file with the Bankruptcy Court a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Persons and Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons and Entities that have filed with the Bankruptcy Court such a renewed request *provided, however*, that parties in interest shall also serve those parties directly affected by, or having a direct interest in, the particular filing in accordance with Local Bankruptcy Rule 2002-1(b).

### Q.     Post-Confirmation Reporting

After the Effective Date, in accordance with the Guidelines established by the U.S. Trustee, the Liquidating Trustee will file quarterly operating reports with the Bankruptcy Court.

### R.     Substantial Consummation of the Combined Plan and Disclosure Statement

On the Effective Date, the Combined Plan and Disclosure Statement shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### S.     Reservation of Rights

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor, Holders of Claims, or Holders of Interests before the Effective Date.

### T.     No Discharge

As set forth in Bankruptcy Code section 1141(d)(3), the Combined Plan and Disclosure Statement does not grant the Debtor a discharge.

IMPAC - 11983058v.5

**U.      Term of Injunction or Stays**

Unless otherwise provided in the Combined Plan and Disclosure Statement or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Combined Plan and Disclosure Statement or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Combined Plan and Disclosure Statement or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**V.      Notices**

To be effective, all notices, requests and demands to or upon the Debtor shall be in writing (which may be by e-mail, if available), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by e-mail, when received and telephonically confirmed, addressed to the following:

**If to the Debtor:**

Parlement Technologies, Inc.
c/o Gray & Company LLC
Attn: Stephen Gray
207 Union Wharf
Boston, Massachusetts 02109
ssg@grayandcompanyllc.com

With a copy (which shall not serve as notice) to:

Potter Anderson & Corroon LLP
Attn: Jeremy W. Ryan and R. Stephen McNeill
1313 North Market Street
6th Floor
Wilmington, Delaware 19801
jryan@pottteranderson.com
rmcneill@potteranderson.com

**If to the Office of the United States Trustee:**

U.S. Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Attn: Timothy J. Fox, Jr., Esq.
Wilmington, Delaware 19801
timothy.fox@usdoj.gov

## XIV.    Recommendation

In the opinion of the Debtor, the Combined Plan and Disclosure Statement is superior and preferable to the alternatives described in the Combined Plan and Disclosure Statement. Accordingly, the Debtor recommends that Holders of Claims entitled to vote on the Combined Plan and Disclosure Statement vote to accept the Combined Plan and Disclosure Statement and support Confirmation.

Dated: July 3, 2025
      Wilmington, Delaware

*/s/ Craig R. Jalbert*
Name:  Craig R. Jalbert, CIRA
Title:    Chief Restructuring Officer

63

**EXHIBIT A**

**Vuong Settlement Term Sheet**

IMPAC - 11983058v.5

**Parlement – Vuong Settlement Term Sheet**

DATE: June 10, 2025

| | |
|---|---|
| **Parties** | (a) Parlement Technologies, Inc. (the "<u>Debtor</u>") and (b) Vincent Vuong ("<u>Vuong</u>"). |
| **Allowance of Vuong Claim** | The proof of claim filed by Vuong, Claim No. 12 will be allowed in the amount of $8,090,294.90 (the "<u>Vuong Claim</u>"). |
| **Debtor Release of Claims Against Vuong** | The Debtor will release Vuong and any persons or entities related to Vuong from any and all claims, objections, challenges, and other causes of action that it may have asserted against Vuong arising, accruing, or existing at any time prior to the Effective Date, including, without limitation, those claims and causes of action included in the draft Complaint shared with Vuong's counsel and that Lender Claim Analysis Letter on or about December 20, 2024.  This release shall be effectuated through a plan of liquidation to be filed in the Debtor's bankruptcy case (the "<u>Plan</u>") |
| **Sharing of Recoveries from Debtor's Assets** | <u>Sharing of Recoveries:</u> Subject to the Vuong Option (defined below), all remaining assets of the Debtor's estate, including, without limitation, the net proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code, the Debtor's claims against Olympic Media LLC ("<u>Olympic</u>") under that certain asset purchase agreement entered into between Olympic and Parler 2022, Inc., dated in or around April 2023, and the Debtor's claims against Thurston Fund III, LP ("<u>Thurston</u>") under that certain commitment agreement dated September 20, 2022 by Thurston (collectively, the "<u>Assets</u>") shall be shared between Vuong and the Debtor's estate with 75% of the cash recoveries provided to Vuong and 25% provided to the Debtor's estate until the Vuong Claim is paid in full.  In the event the Vuong Claim is paid in full, the proceeds of all remaining Assets will be paid to the Debtor's estate. |
| | <u>Vuong Option</u>. In the event that the Liquidating Trust determines that it will be unable to or does not actually initiate legal proceedings to recover against any Asset at least seventy-five (75) days prior to the applicable termination of any statute of limitations or other deadlines established by laws applicable to remaining Assets (as applicable, each, an "<u>SOL Deadline</u>"), then the Liquidating Trust shall, at Mr. Vuong's option and written request (which may be by e-mail) cede control over such Assets to Mr. Vuong, and shall thereafter take all further actions necessary to vest with Mr. Vuong all appropriate authority to prosecute all claims related to such Asset(s) for and on behalf of the Liquidating Trust (the "<u>Vuong Option</u>").  At such time following Mr. Vuong's exercise of the Vuong Option with respect to one or more Assets, Mr. Vuong shall be permitted (but not required) to engage counsel, to initiate legal proceedings with respect to such Asset in the name of and behalf of the Liquidating Trust and the estate, on terms reasonably agreeable to Mr. Vuong and the Liquidating Trust, and to manage and prosecute any necessary litigation in respect of the applicable Asset.  In the event that Mr. Vuong exercises the Vuong Option, Mr. Vuong and the Liquidating Trust agree that (i) Vuong shall be primarily liable for all costs and expenses associated with seeking recovery against the applicable |

Asset(s), (ii) Mr. Vuong may manage and prosecute any litigation in connection with the recovery of the applicable Asset(s), (iii) any fee earned by or any expense reimbursement owed to counsel with respect to any recovery on the such Assets managed and prosecuted by Mr. Vuong (a "Vuong Recovery") shall be paid first from the recoveries of the applicable litigation, after which 95% of the net recovery from each Vuong Recovery (after payment of all costs of collection) shall be allocated to Vuong and 5% of the net recovery from each Vuong Recovery shall be allocated to the Liquidating Trust and the estate, until the Remaining Vuong Prepetition Secured Claim is paid in full, and thereafter all remaining recoveries from the Assets shall be paid to the Liquidating Trust.  Any disagreements as to material aspects of the recovery plan for such Assets, including settlement, shall be subject to resolution by the Bankruptcy Court.

<u>Limitation on Vuong's Recovery</u>: Vuong agrees to waive any deficiency with respect to the Vuong Claim and agrees to cap his recovery on the Vuong Claim to 75% of the Debtor's remaining assets (or 95% of the applicable Assets, with respect to which the Vuong Option is exercised).

<u>Cooperation</u>: Vuong agrees to provide full cooperation to the Debtor in connection with the liquidation of the Assets.  The Parties contemplate that the Assets will be transferred to a Liquidation Trust pursuant to the Plan.  Vuong agrees to vote the Vuong Claim in support of the Plan, provided that the terms thereof are consistent with the terms of this Term Sheet or are otherwise acceptable to Vuong.

<u>Professionals for Thurston and Olympic Litigation</u>: Subject to the Vuong Option, the Debtor will engage counsel for the Thurston and Olympic litigation claims, which may be different counsel, acceptable to Vuong to manage and prosecute the litigation of the Debtor's claims against Thurston and Olympic, including and the negotiation of the terms of the engagement of such counsel, with disagreements as to material aspects of the Recovery Plan, including settlement, shall be subject to resolution by the Bankruptcy Court.  The Parties agree that any fee earned by or any expense reimbursement owed to counsel with respect to any recovery on the Thurston or Olympic litigation claims shall be paid first from the recoveries of the applicable litigation.

**Budget**   Subject to the foregoing, the Parties agree that all administrative expenses accrued in the Debtor's bankruptcy estate and the Liquidating Trust shall be paid solely from the estate's 25% share of the Assets (and/or the estate's 5% share of the Assets with respect to which the Vuong Option is exercised) and Vuong shall have no right to object to such claims.  Vuong shall have no input in or right to receive any budget prepared by the Debtor, the Litigation Trust, or any of their professionals or representatives.

**Effective Date**   The Settlement contemplated by this Term Sheet shall be effective upon the earlier of the effective date of the Plan and the date the entry of an order of the Bankruptcy Court approving the Settlement pursuant to Bankruptcy

Rule 9019 becomes a final order (the "<u>Effective Date</u>").  This Term Sheet shall become effective upon the date first set forth above.

Dated:  June 10, 2025                           **VINH VUONG**


                                                */s/ Vinh Vuong*
                                                Vinh Vuong


Dated:  June 10, 2025                           **PARLEMENT TECHNOLOGIES, Inc.**


                                                By: */s/ Craig R. Jalbert*
                                                    Craig R. Jalbert, CIRA
                                                    Chief Restructuring Officer