## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PARLEMENT TECHNOLOGIES, INC, (f/k/a Parler LLC, f/k/a Parler Inc.), | Case No. 24-10755 (CTG) |
| Debtor. | **Objections Due: July 31, 2025 at 4:00 p.m. (ET)** **Hearing Date:  August 7, 2025 at 2:00 p.m. (ET)** |
| | **Dkt. Ref. Nos. 252, 276** |

### OBJECTION OF JOHN MATZE TO DEBTOR'S COMBINED AMENDED PLAN OF LIQUIDATION AND RENEWED REQUEST FOR GRANT OF THE DEFERRED PART OF HIS STAY RELIEF MOTION

John Matze ("Matze"), a creditor and party-in-interest in the above-captioned bankruptcy case, hereby submits these objections to the Plan of Liquidation component (the "Plan") of the Debtor's *Amended Combined Chapter 11 Plan of Liquidation and Disclosure Statement* [D.I. 252], as supplemented by the *Plan Supplement* [D.I. 276] filed by Parlement Technologies, Inc. (f/k/a Parler LLC, f/k/a Parler Inc) (the "Debtor").  Separately, Matze has submitted a ballot and voted to reject the Plan, due to his objections to it as set forth herein.

The Debtors' Plan is flawed, as it fails to meet the Bankruptcy Code's requirements for confirmation.  In addition, the Liquidating Trust Agreement included in the Plan Supplement is flawed in the manner of its treatment of the obligations of the estate that arise from the Debtor's posture as a defendant and counter-claimant in the Nevada Litigation (as defined in the Disclosure Statement).  Matze submits that, while the Plan could be modified so as to be confirmable, it should not be approved in its present form.

In addition, Matze renews his motion for stay relief, which this Court granted in part and deferred in part, to the hearing on the Debtor's motion for confirmation of its Plan.

In support of this Objection, Matze states as follows:

## BACKGROUND

1.      Matze, formerly the chief executive officer and manager of Parler LLC, nka Parlement Technologies, Inc., is the plaintiff in a prepetition Nevada state court lawsuit against the Parlement Technologies, Inc. f/k/a Parler LLC (the "Debtor") and non-debtor defendants NDMAscendant, LLC, Jeffrey Wernick, Mark Meckler, Dan Bongino, Rebekah Mercer, *et al*. The Debtor has also filed counterclaims against Matze, which substantively overlap with his claims against the Debtor.   This is the "Nevada Litigation" that is identified and defined in the Disclosure Statement.

2.      Early in this bankruptcy case, the Debtor removed the Nevada action from state court to federal court in the District of Nevada, and moved to transfer the action to the District of Delaware.    The Debtor also moved this Court to extend the reach of the automatic stay to the nondebtor defendants.  This Court denied that motion, thus allowing Matze's action to proceed in Nevada against the non-debtor defendants.[1]

3.      The federal court in Nevada denied the Debtor's transfer motion, and instead remanded the action to the Nevada state court.

4.      The Clark County, Nevada state court recently set August 4, 2026 as the commencement date for the jury trial in Matze's action.

5.      The Debtor has asserted counterclaims against Matze in the action, which are unimpeded by the automatic stay, and which are thus also to be tried beginning on August 4, 2026.

6.      With the trial date set, Matze filed a Motion for Stay Relief in this Court, seeking relief from the automatic stay imposed by 11 U.S.C. § 362(a), so that he may continue with the

---

[1] While the action was removed to federal court, discovery proceeded against the non-debtor defendants, including requests for production, as well as multiple third-party subpoenas duces tecum.

action not only against the non-debtors, but also against the Debtor, in order to (i) liquidate his claims against the Debtor (but not seek to collect upon them outside this forum), while litigating against the other defendants, (ii) defend counterclaims brought against him by both the Debtor and the non-debtor defendants, and (iii) otherwise resolve the litigation in a single forum.

7.      At the conclusion of the hearing on that motion, conducted on July 9, 2025, this Court granted the motion in part, and deferred a ruling in part, with the deferred part to be taken up for consideration at the Confirmation Hearring.

8.      At the hearing on Matze's stay relief motion, Matze highlighted the fact that the Debtor filed its Chapter 11 petition on the morning of the day when the Nevada state court was set to hear a continued motion by Matze on discovery misconduct, to address the Debtor's continued failure to review and disclose its potentially privileged documents by a date set by the Nevada state court.

9.      In granting the motion in part, the Court modified the automatic stay to allow Matze "to seek discovery from the debtor in the Nevada Litigation.  Such discovery is permitted only as it pertains to Matze's claims against the non-debtor defendants in the Nevada Litigation."  Order [D.I. 272], entered July 10, 2025.   The Court further ruled that it "will consider Matze's request for relief from the stay, for that portion of the relief that is denied herein," at the hearing set for consideration of the Debtor's motion for confirmation of its Plan.  *Id*.

10.     Matze now objects to the Plan (including its Supplement) on the grounds set forth herein, and urges the Court to grant him the balance of his request for stay relief that was deferred until the Confirmation Hearing

## OBJECTION TO PLAN AND RENEWED STAY RELIEF REQUEST

I.    The Plan Contains Provisions that Fail to Comply With the Bankruptcy Code

11.    For a plan to be confirmed, it must meet the requirements of 11 U.S.C. § 1129.

12.    One of the requirements of § 1129 is that the plan must comply with the provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).

13.    Section 1141(d)(3) of the Bankruptcy Code provides:

> **(d)(3)** The confirmation of a plan does not discharge a debtor if—
> **(A)** the plan provides for the liquidation of all or substantially all of the property of the estate;
> **(B)** the debtor does not engage in business after consummation of the plan; and
> **(C)** the debtor would be denied a discharge under section 727(a)[2] of this title if the case were a case under chapter 7 of this title.

11 U.S.C. §1141(d)(3).

14.    The Debtor's Plan provides for the liquidation of all or substantially all of the property of the estate; the Debtor has long ceased doing business and the Plan does not purport to revive it; and the Debtor is not an individual.  Accordingly, it is not entitled to a discharge under the Bankruptcy Code.

15.    Under Code § 362(c)(2), the automatic stay provided debtors under § 362(a) ceases, if the case is a case under Chapter 11, at "the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2)(C).

16.    Pursuant to § 1141(d)(3), the confirmation of a liquidating chapter 11 plan for a corporate debtor effects a denial of a discharge.   Thus, the automatic stay terminates when a liquidating chapter 11 plan, such as the Debtor's Plan, is confirmed.

---

[2] Under Section 727(a)(1), a Chapter 7 discharge is denied to any debtor that is not an individual.

17.    Although the Debtor's Plan purports not to grant it a discharge (in section XIII. T.), it aims to accomplish the same objective by other words, in contravention of § 1141(d)(3).

18.    The Plan also expressly contravenes § 362(c)(2)(C), by attempting to extend the automatic stay indefinitely beyond the date of confirmation.

19.    Section XI. A. (Injunction) of the Plan provides in part (in **bold** and ALL CAPS):

> **All injunctions or stays** provided for in the chapter 11 case under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the confirmation date **shall remain in full force and effect** until the later of (a) the Effective Date, or (b) the date indicated in the order providing for such injunction or stay. . .
>
> Except as otherwise provided in the Combined Plan and Disclosure Statement or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order, or a separate order of the Bankruptcy Court, all **entities who have held, hold, or may hold claims against** or interests in **the Debtor shall be permanently enjoined from taking any of the following action**s against any of the property that is to be distributed under the terms of the Combined Plan and Disclosure Statement (including liquidating trust assets), on account of any such claims or interests: (a) commencing or **continuing, in any manner or in any place, any action or other proceeding**; …

Plan, Section XI. A. (emphasis added).

20.    Section XIII. U. (Term of Injunction or Stays) of the Plan provides:

> [A]ll injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Combined Plan and Disclosure Statement or the Confirmation Order) shall remain in full force and effect until the Effective Date.  **All injunctions or stays contained in the Combined Plan and Disclosure Statement** or the Confirmation Order **shall remain in full force and effect in accordance with their terms**.

Plan Section XIII. U. (emphasis added).

21.    Thus, under Sections XI. A. and XIII. U. of the Plan, all persons with claims against the Debtor – including Matze – would be subject to an extension of the stay and a permanent injunction against continuation of their litigation against the Debtor.

22.     This directly contravenes the above-identified provisions of the Bankruptcy Code; it is impermissible; and it compels denial of confirmation of the Plan, as presented.

23.     At the hearing on Matze's motion for stay relief, the following colloquy between the Court and counsel for the Debtor took place:

> THE COURT: … . [D]oes your plan impose some post-emergence stay with respect to any claims?
>
> MR. MCNEILL: Your Honor, we have the kind of standard language that you would see with kind of a confirmation injunction that stops parties from taking actions to try to collect on claims and things of that nature.
>
> THE COURT: But this is a liquidating case, right?  So this --
>
> MR. MCNEILL: Correct.
>
> THE COURT: So you don't have a discharge.
>
> MR. MCNEILL: Correct.
>
> THE COURT: So how can you -- you can't get the same injunction by disguise, right?  A discharge by calling it an "injunction." I understand an injunction that would prevent people from seeking trust assets.
>
> MR. MCNEILL: Correct.
>
> THE COURT: But as to the debtor as an entity, is it protected?
>
> MR. MCNEILL: I'm not sure, Your Honor. I would -- I'd have to check. I mean, we -- obviously, that is an issue for confirmation --

Transcript, 7-9-2025 Hearing, pp. 25-26.

24.     Matze, in seeking stay relief, has made it abundantly clear that, as to the Debtor, his is not seeking to collect directly from any assets of the estate.  He is seeking to proceed with the Nevada Litigation – against all the defendants, all together; under the jurisdiction and oversight of the Nevada state court, through to judgment against all the defendants together, with the express caveat that Matze does not seek any right to independently pursue collection against the Debtor upon any resulting judgment, but instead understands that any collection on any resulting judgment

against the Debtor will take place through the structure of the liquidating trust that the Debtor seeks to establish through its Plan.[3]

25.    In view of the Bankruptcy Code's provisions on when the automatic stay ends and on when a discharge of a corporate debtor must be denied, it should be evident that the termination of the automatic stay should go hand-in-hand with confirmation of a liquidating plan that complies with the Bankruptcy Code.

26.    Since the Debtor's Plan impermissibly would prevent Matze from proceeding with the Nevada Litigation in that manner, in contravention of the Bankruptcy Code, confirmation of the Plan must be denied unless corrected to eliminate this defect.

II.    The Plan's Definition of "Effective Date" Is Unjustifiably Left to the Debtor's Discretion, and Would Likely Occur Many Months After Confirmation

27.    Under the Plan, virtually all of what it provides for would be triggered on the "Effective Date" of the Plan.  In addition, the Plan purports to extend the automatic stay beyond confirmation (when it would terminate under the Bankruptcy Code) to the "Effective Date."  *See* Section XI. A. and Section XIII. U.

28.    As explained above, in a Chapter 11 case, the automatic stay terminates at "the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2)(C); and the confirmation of a liquidating Chapter 11 plan of a corporate debtor would serve to deny the debtor a discharge, per 11 U.S.C. § 1141(d)(3).   The period within which an appeal could be filed from an order of confirmation is 14 days.  Fed. R. Bankr. P. 8002(a)(1).   If no appeal is taken, then 14 days after a confirmation order is entered, it is a final order.   Under the Bankruptcy Code, the automatic stay in a case such as this one should not extend beyond that.

---

[3] In addition, to the extent that it is a concern to this Court, if Matze should seek any pretrial sanctions against the Debtor such as for non-compliance with discovery requests or related orders of the court, Matze will not seek any *monetary* sanctions as against the Debtor.

29.     But it would likely extend many months beyond that, or longer, under the Debtor's Plan.

30.     The Plan defines "Effective Date" as: "the date on which the conditions specified in Article X.B of the Combined Plan and Disclosure Statement have been met or satisfied." *See* Plan, Section III. A. (Definitions).

31.     The first four conditions specified in Article X. Section B of the Plan seem appropriate; it is the fifth one that is highly problematic.  The Section provides as follows:

> **B. Conditions Precedent to the Effective Date**
>
> The following is the list of conditions precedent to the Effective Date:
>
> (1) The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall be a Final Order;
>
> (2) no stay of the Confirmation Order shall then be in effect;
>
> (3) the Liquidating Trust Agreement shall be executed and the Liquidating Trustee shall have been appointed and accepted such appointment;[4]
>
> (4) the Combined Plan and Disclosure Statement shall not have been materially amended, altered, or modified from the Combined Plan and Disclosure Statement as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with Article XIII herein; and
>
> (5) the Debtor shall have filed a notice of Effective Date.

Plan, Section X. B (emphasis added).

32.     Pursuant to Code § 1129(a)(8), for a plan to be confirmed, the Court must find that priority claims -- including most tax claims, administrative expense claims, and others -- will be paid on the effective date of the plan, unless they have agreed to different treatment.

---

[4]  While making the execution of the Liquidating Trust Agreement a *condition* for the Effective Date to occur, the Plan elsewhere says that "[*o*]*n the Effective Date*, the Liquidating Trustee *shall execute* the Liquidating Trust Agreement." Plan, p. 28 (emphasis added).

17460863/1

33.     Inexplicably, the Disclosure Statement (at 26) fails to disclose the amounts of the tax priority claims or administrative expense claims (instead, only showing "Non-Tax Priority Claims" and indicating their value at $0.).

34.     The Claims Register[5] for the Debtor, however, does reveal several tax priority claims, including from the IRS, the Nevada Department of Taxation, and the Tennessee Department of Revenue.  According to the Claims Register, these three claims amount to about $21,600.[6]

35.     Furthermore, the Liquidation Analysis discloses $400,000 in current, unpaid Chapter 11 administrative claims and expenses.

36.     The Liquidation Analysis further represents that the amount of cash currently held by the Debtor is $0 (zero).

37.     At the hearing on Matze's stay relief motion, the Debtor's counsel stated: "There will be no funds available to pay to unsecured creditors until at least the middle of next year, when the litigation claims that are identified in the plan and disclosure statement become ripe, at least according to the litigation targets."  Transcript, 7-9-2025 Hearing, p. 27.

38.     The priority creditors are also unsecured.

39.     With no cash funds to pay any creditors currently, and no evidence of an agreement with priority claimants to defer payment, the only apparent way the Debtor might say its Plan could satisfy Code § 1129(a)(8) is by pointing out that the Plan would enable the Debtor to defer filing

---

[5] The Claims Register is not readily available, but was furnished to Matze's counsel, upon request for it, in an Excel spreadsheet format, by the Reliable Companies, dba Reliable.

[6] Despite what the Claims Register shows, the Liquidation Analysis in the Plan Supplement indicates only $5,000 in total priority claims.   Plan Supp., Ex. D.

17460863/1

a Notice of Effective Date until whenever cash comes into the estate – even if that happens to be the middle of next year.

40.     Debtor's counsel hinted at this prospect in some of his colloquy with the Court at the stay relief motion hearing.  In responding to a question from the Court about the consequences to a debtor coming out of bankruptcy, without a discharge, and subject to litigation, Debtor's counsel responded:

> MR. MCNEILL: Well, Your Honor, I guess, one, there's no guarantee that the plan gets confirmed.  Two, it still has to go effective, before we come out of bankruptcy, and we don't know if we'll be able to go effective immediately or not --
>
> THE COURT: Okay.
>
> MR. MCNEILL: -- especially if there's a requirement to pay administrative claims because we can't do that right now, Your Honor; we don't have the money to pay all admin claims right now.

Transcript, 7-9-2025 Hearing, p. 29.

41.     If the Plan as presented were confirmed, that would mean enabling an extension of the automatic stay long past when the Code provides that it would terminate.  And that would, again, be both improper under the Bankruptcy Code and it would unfairly and unjustifiably interfere with, and be prejudicial to, Matze's ability to proceed in the Nevada Litigation in which, as the Court knows, a trial date has been set in August 2026.

III.   The Schedule of Retained Causes of Action Describes the Nevada Counterclaims as a Valuable Asset, Highlighting One Reason Why Stay Relief for Matze Is Critical

42.     As discussed *supra,* however this bankruptcy case winds up, the Debtor will not be entitled to a discharge under the Bankruptcy Code.  It has already substantially liquidated its assets, it is not continuing in business, and it is not an individual.  In addition, however this bankruptcy

case winds up, the Debtor will not be entitled to a permanent injunction or extension of the automatic stay. [7]

43.    With the Nevada state court litigation now on track – despite the Debtor's efforts to interfere with it – it would be grossly unfair and prejudicial to Matze to prevent him from liquidating his claims and obtaining a judgment against the Debtor in the Nevada state court, while litigating against all the non-debtor defendants.

44.    As Matze's counsel indicated at the stay relief motion hearing, stay relief to be able to proceed with litigating against the Debtor to allow Matze's claim against the Debtor to be liquidated is especially important as to the claims in which the Debtor is one of several co-defendants, since the Nevada court may need to allocate relative liability in such claims.

45.    That interference is especially inappropriate in view of the Debtor's counterclaim against Matze.  According to the Schedule of Retained Causes of Action, filed by the Debtor on July 21, 2025, "the Nevada Counterclaims [along with three other sets of claims], which are described in detail in the Plan, are critical to the viability of the Plan." Plan Supplement, Exhibit C, p. 3, n. 2.[8]

46.    "[T]he stay does not seek to prevent defendants sued by a debtor from defending their legal rights." *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006).

---

[7] Indeed, even in a case where a chapter 7 debtor had been granted a discharge, a tort plaintiff was held by the Second Circuit Court of Appeals to be allowed to proceed with litigation against the discharged debtor, so long as it was only to establish liability, to facilitate collection from another source.  *Green v. Welsh*, 956 F.2d 30 (2d Cir. 1992); see also *In re Morris*, 570 B.R. 708 (Bankr. M.D. Pa. 2017) (same).

[8] Notably, that appears to contradict this statement of Debtor's counsel at the stay relief motion hearing on July 9, 2025: "Right now, we are not plan – the debtors do not intend to pursue the claims against Mr. Matze in Nevada.  … [W]e don't intend to pursue our counterclaims; there's no money to do so." Transcript, 7-9-2025 Hearing, p. 27.

47.    As this Court has observed:

> [W]here the debtor initiates a prepetition suit against a defendant (which is not subject to the stay) and that defendant asserts certain counterclaims in the same case, courts should be cognizant of the fact that, while the defendant's counterclaims are subject to the automatic stay, <u>in practice it may make sense to allow both claims to proceed outside of bankruptcy</u> to ensure that the same facts are not litigated twice and that one side is not forced into a fight with one hand tied behind its back.

*In re AP Orangevale, LLC*, 2023 WL 5093819, at *8 (Bankr.D. Del. Aug. 8, 2023) (emphasis added).  That principle, as espoused in *AP Orangevale*, should apply equally where the debtor is the defendant and a counter-claimant.

48.    Notably, even though the Litigation Trustee would take assignment of the Debtor's assets, the Litigation Trust is not a *successor* to the Debtor.  It would not cause the Liquidating Trust to be a successor to the Debtor in its capacity as *defendant* in the Nevada Litigation.  *See generally* Plan, Section VIII. E.  The Debtor, as a corporate entity created under state law, remains in existence until dissolved under state law.

IV.    <u>Other Points Raised by Debtor's Counsel at the Stay Relief Motion Hearing Do Not Justify Denying Stay Relief to Matze</u>

49.    At the stay relief motion hearing, Debtor's counsel raised a number of contentions about the litigation and Matze's claims, but they do not justify denying full stay relief to Matze now.

50.    For example, Debtor's counsel asserted, without evidence or factual basis, that the Debtor (or Liquidating Trustee) might seek to *subordinate* Matze's claim – even while also stating "We don't intend to object to his claim, at this point. … We don't intend to seek estimation of those claims."  Transcript, 7-9-2025 Hearing, pp. 27-28.

51.     But "subordination relates to the postponement of claims, not to their disallowance, and is inappropriate for consideration in an automatic stay proceeding." *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984).

52.     Debtor's counsel complained about the costs of complying with discovery requests in the litigation.  But, '[w]here equitable considerations merit lifting of the stay, as here, the debtor's legal costs are not a consideration." *In re Saxon Indus., Inc.*, 43 B.R. at 67.  *See also* cases cited in Matze's Stay Relief Motion.

53.     Debtor's counsel complained about the scope or extent of discovery sought by Matze.  Of course, Debtor has brought broad counterclaims against Matze for which there is no stay of discovery.[9]  Debtor's potential objections to Matze's scope of discovery, and similar objections, are simply not appropriately addressed, out of the context of the larger litigation, by this Bankruptcy Court.  Such objections could be raised to, and addressed by, the Nevada state court overseeing the overall litigation.

*[Remainder of Page Intentionally Left Blank]*

---

[9] Debtor is maintaining its counterclaims against Matze for 1) Breach of Contract – Operating Agreement and 2) Declaratory Judgment.

17460863/1

WHEREFORE, for the foregoing reasons, Matze respectfully requests the Court to deny approval of the Plan, unless it is revised to address the objections described herein, and further requests that this Court grant him the full stay relief that was deferred at the prior hearing.

Dated:  July 31, 2025

**MORRIS JAMES LLP**

*/s/ Douglas N. Candeub*
Carl N. Kunz, III (DE Bar No. 3201)
Douglas N. Candeub (DE Bar No. 4211)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email:  ckunz@morrisjames.com
dcandeub@morrisjames.com

*Counsel for John Matze*

17460863/1