**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Parlement Technologies, Inc.<br>(f/k/a Parler LLC, f/k/a Parler Inc.) | Case No. 24-10755 (CTG) |
| Debtor. | **Re: Docket Nos. 236, 252, 263 & 280** |

**MEMORANDUM OF LAW IN SUPPORT OF AN ORDER
(I) APPROVING THE DEBTOR'S COMBINED PLAN AND DISCLOSURE
STATEMENT ON A FINAL BASIS AND (II) CONFIRMING THE DEBTOR'S
COMBINED PLAN AND DISCLOSURE STATEMENT**

Dated: August 5, 2025

Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
James R. Risener III (No. 7334)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
        rmcneill@potteranderson.com
        jrisener@potteranderson.com
        srizvi@potteranderson.com

*Counsel for Debtor and Debtor-in-Possession*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 2

BACKGROUND ....................................................................................................................... 4

I.    PROCEDURAL HISTORY. ............................................................................................... 4

II.   THE PLAN SOLICITATION AND NOTIFICATION PROCESS. ....................................... 5

III.  CONFIRMATION HEARING NOTICE. ............................................................................. 6

IV.  OBJECTIONS TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN. ...................................................................................... 7

ARGUMENT ........................................................................................................................... 7

I.    THE DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" AS
REQUIRED BY BANKRUPTCY CODE SECTIONS 1125 AND 1126 AND SHOULD BE
APPROVED. ...................................................................................................................... 8

    A.    The Disclosure Statement Contains Adequate Information. .......................................... 8

    B.    The Debtor Complied with the Requirements Set Forth in the Solicitation Procedures

        Order. ....................................................................................................................... 10

        i.    The Debtor Complied with the Notice Requirements Set Forth in the Solicitation
Procedures Order ................................................................................................. 10

        ii.   The Ballot Used to Solicit Holders of Claims Entitled to Vote on the Plan
Complied with the Solicitation Procedures Order ................................................. 11

        iii.  The Solicitation Period Complied with the Solicitation Procedures Order .......... 11

        iv.  The Tabulation Procedures Complied with the Solicitation Procedures Order .... 12

        v.   Solicitation Complied with the Bankruptcy Code and Was in Good Faith .......... 12

II.   THE PLAN SATISFIES EACH OF THE REQUIREMENTS FOR CONFIRMATION
UNDER THE BANKRUPTCY CODE. ................................................................................ 13

    A.    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code ................................... 13

        i.    Classification of Claims and Interests Complies with Section 1122 of the
Bankruptcy Code ................................................................................................. 13

        ii.   The Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code
............................................................................................................................. 15

        iii.  The Plan Complies with the Discretionary Provisions of Section 1123 of the
Bankruptcy Code ................................................................................................. 16

        iv.  The Exculpation, Release, and Injunctions Provided Under the Plan Are
Appropriate and Should be Approved ................................................................... 17

            a.    The Exculpation Provision Is Appropriate ..................................................... 18

            b.    The Debtor Releases Are Appropriate ............................................................ 20

i

       c.  *The Injunction Provision Is Appropriate* ........................................ 22

B.  The Debtor Has Satisfied Section 1129(a)(2) of the Bankruptcy Code........................ 24

    i.  The Debtor Has Complied with the Requirements of Section 1125 of the Bankruptcy Code ......................................................................... 25

    ii.  The Debtor Has Complied with the Requirements of Bankruptcy Rules 3017(d) and 3018(c)..................................................................... 26

    iii.  The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a) ... 28

C.  The Plan Has Been Proposed in Good Faith in Compliance with Section 1129(a)(3) of the Bankruptcy Code.................................................................................. 29

D.  The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code ......................... 30

E.  The Debtor Has Complied with Section 1129(a)(5) of the Bankruptcy Code.............. 31

F.  No Rate Changes Under Section 1129(a)(6) of the Bankruptcy Code ......................... 31

G.  The Plan Is in the Best Interests of All Creditors and Interest Holders Under Section 1129(a)(7) of the Bankruptcy Code .............................................................. 31

H.  The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.................................................................................. 33

I.  The Plan Provides for the Payment in Full of All Allowed Priority Claims Pursuant to Section 1129(a)(9) of the Bankruptcy Code ................................................ 34

J.  The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code ................................ 35

K.  The Plan Is Feasible and Satisfies Section 1129(a)(11) of the Bankruptcy Code ........ 36

L.  The Plan Satisfies Section 1129(a)(12) of the Bankruptcy Code ................................ 37

M.  The Plan Satisfies Section 1129(a)(13) of the Bankruptcy Code ................................ 37

N.  Sections 1129(a)(14), (15), and (16) of the Bankruptcy Code Are Inapplicable.......... 37

O.  The Plan Satisfies the "Cramdown" Requirements for Non-Accepting Classes .......... 38

    i.  The Plan Does Not Discriminate Unfairly............................................................ 39

    ii.  The Plan Is Fair and Equitable.............................................................................. 41

P.  The Plan Satisfies Section 1129(c) of the Bankruptcy Code ....................................... 42

Q.  The Principal Purpose of the Plan................................................................................. 42

III.  MODIFICATIONS TO THE PLAN ....................................................................................... 42

A.  The Pre-Effective Date Portion of the Injunction Provision Should Extend Until the Effective Date. ..................................................................................44

B.  The Objection Mischaracterizes Certain Priority Claims Against the Debtor and Is Rendered Inapposite by the Revisions to the Injunction Provision.................. 45

ii

C.    Matze's Argument in the Objection with Respect to the Nevada
      Counterclaims is Misplaced. ........................................................................47

IV.  WAIVER OF THE STAY OF THE CONFIRMATION ORDER ....................................... 48

CONCLUSION ............................................................................................................................ 50

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 203 N. LaSalle St. Ltd. P'ship,*
  190 B.R. 567 (Bankr. N.D. Ill. 1995), rev'd on other grounds, 526 U.S. 434 (1999) .......39, 41

*In re 222 Liberty Assoc.,*
  108 B.R. 971 (Bankr. E.D. Pa. 1990) ....................................................................................39

*In re Adelphia Commnc'ns Corp.,*
  368 B.R. 140 (Bankr. S.D.N.Y. 2007)....................................................................................14

*Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Ct. (In re Chateaugay Corp.),*
  89 F.3d 942 (2d Cir. 1996).....................................................................................................14

*In re Aleris Int'l, Inc.,*
  No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010)............................39

*In re Armstrong World Indus.,*
  348 B.R. 111 (Bankr. D. Del. 2006) ......................................................................................12

*In re Aztec Co.,*
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) ...............................................................................39

*In re Burns & Roe Enters., Inc.,*
  No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) ............................................43

*Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson),*
  767 F.2d 417 (8th Cir. 1985) .................................................................................................36

*In re Coram Healthcare Corp.,*
  315 B.R. 321 (Bankr. D. Del. 2004) ......................................................................................20

*In re Exaeris, Inc.,*
  380 B.R. 741 (Bankr. D. Del. 2008) ......................................................................................20

*In re Flintkote Co.,*
  486 B.R. 99 (Bankr. D. Del. 2012) ........................................................................................36

*In re Freymiller Trucking, Inc.,*
  190 B.R. 913 (Bankr. W.D. Okla. 1996) ...............................................................................39

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),*
  10 F.3d 944 (2d Cir. 1993).....................................................................................................14

iv

*In re Genesis Health Ventures, Inc.*,
   266 B.R. 591 (Bankr. D. Del. 2001) .................................................................... 12, 39-41

*In re Glob. Safety Textiles Holdings LLC*,
   No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009)..............................43

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) ..............................................................................18, 21

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987)...........................................................................................14

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
   987 F.2d 154 (3d Cir. 1993)............................................................................................38

*In re Johns-Manville Corp.*,
   68 B.R., aff'd, 843 F.2d 636 (2d Cir. 1988) ........................................................................39

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   843 F.2d 636 (2d Cir. 1988).......................................................................................13, 36

*In re Lapworth*,
   No. 97-34529-DWS, 1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998) ...............................24

*In re Lernout & Hauspie Speech Prods., N.V.*,
   301 B.R. 651 (Bankr. D. Del. 2003) ..................................................................................39

*Moreno-Cuevas v. Town Sports Int'l, LLC (In re Town Sports Int'l)*,
   2023 U.S. Dist. LEXIS 227402 (D. Del. 2023) .....................................................................45

*In re NII Holdings, Inc.*,
   288 B.R. 356 (Bankr. D. Del. 2002) ..................................................................................30

*In re Nuverra Env't Sols., Inc.*,
   590 B.R. 75 (Bankr. D. Del. 2018) ...............................................................................13, 40

*Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*,
   141 B.R. 715 (Bankr. E.D. Cal. 1992) ................................................................................24

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
   848 F.2d 414 (3d Cir. 1988)..............................................................................................9

*Orange County Water Dist. v. Fairchild Corp. (In re Fairchild Corp.)*,
   2014 U.S. Dist. LEXIS 174022 (D. Del. 2014) .....................................................................44

*In re Orlando Investors, L.P.*,
   103 B.R. 593 (Bankr. E.D. Pa. 1989) .................................................................................36

v

*In re Prussia Assocs.*,
　322 B.R. 572 (Bankr. E.D. Pa. 2005) ..................................................................36

*In re PWS Holding Corp.*,
　228 F.3d 224 (3d Cir. 2000)....................................................... 18-19, 24, 29

*In re Resorts Int'l, Inc.*,
　145 B.R. 412 (Bankr. D.N.J. 1990) ....................................................................30

*In re River Village Assoc.*,
　181 B.R. 795 (Bankr. E.D. Pa. 1995) ..................................................................9

*In re Sound Radio, Inc.*,
　93 B.R. 849 (Bankr. D.N.J. 1988), aff'd in part and remanded in part on other grounds, 103
　B.R. 521 (Bankr. D.N.J. 1989), aff'd, 908 F.2d 964 (3d Cir. 1990)......................................29

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*,
　800 F.2d 581 (6th Cir. 1986) .............................................................................13

*In re Texaco Inc.*,
　84 B.R. 893 (Bankr. S.D.N.Y. 1988)...................................................................24

*In re Tribune Co.*,
　464 B.R. 126 (Bankr. D. Del.), modified, 464 B.R. 208 (Bankr. D. Del. 2011) ...............21, 36

*U.S. Bank Nat'l Assn' v. Wilmington Tr. Co. (In re Spansion, Inc.)*,
　426 B.R. 114 (Bankr. D. Del. 2010) ................................................................ 20-21

*In re W.R. Grace & Co.*,
　446 B.R. 96 (Bankr. D. Del. 2011) .....................................................................19

*In re W.R. Grace*,
　475 B.R. 34 (Bankr. D. Del. 2012) ..............................................................13, 29, 36

*In re Wash. Mut. Inc.*,
　442 B.R. 314 (Bankr. D. Del. 2011) ................................................................ 20-22

*In re Worldcom, Inc.*,
　2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ...........................................40

*In re Zenith Elecs. Corp.*,
　241 B.R. 92 (Bankr. D. Del. 1999) ..............................................................21, 38

## STATUTES

8 Del. C. § 145 ...............................................................................................19

11 U.S.C. § 105..............................................................................................26

11 U.S.C. § 365 .................................................................................................17, 48

11 U.S.C. § 503 .........................................................................................................46

11 U.S.C. § 507 ...........................................................................................34, 45, 46

11 U.S.C. § 524 .........................................................................................................18

11 U.S.C. § 1107 .........................................................................................................4

11 U.S.C. § 1108 .........................................................................................................4

11 U.S.C. § 1114 .......................................................................................................37

11 U.S.C. § 1122 ........................................................................................... 13-15, 42

11 U.S.C. § 1123 .................................................................................................. *passim*

11 U.S.C. § 1125 .................................................................................................. *passim*

11 U.S.C. § 1126 .................................................................................................. *passim*

11 U.S.C. § 1127 ...............................................................................................7, 42, 43

11 U.S.C. § 1129 .................................................................................................. *passim*

11 U.S.C. § 1141 .......................................................................................................43

28 U.S.C. § 1930 .......................................................................................................37

**OTHER AUTHORITIES**

Collier on Bankruptcy ¶ 507.11 (16th ed. 2020) ..........................................................46

Del. Bankr. L.R. 3017-1................................................................................................10

Fed. R. Bankr. P. 2002.................................................................................................26

Fed. R. Bankr. P. 3002.................................................................................................33

Fed. R. Bankr. P. 3016...................................................................................................9

Fed. R. Bankr. P. 3017......................................................................................... *passim*

Fed. R. Bankr. P. 3018......................................................................................... *passim*

Fed. R. Bankr. P. 3019......................................................................................... 7, 42-43

Fed. R. Bankr. P. 3020.................................................................................................48

IMPAC - 12367026v.6

Fed. R. Bankr. P. 6004................................................................................................48

Fed. R. Bankr. P. 6006................................................................................................48

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962 (1977).....................9, 13, 24

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 (1978) ............................13, 24

IMPAC - 12367026v.6

## **RELIEF REQUESTED**

Parlement Technologies, Inc. (f/k/a Parler LLC, f/k/a Parler Inc.) as debtor and debtor-in-possession (the "Debtor") submits this memorandum of law (the "Memorandum") in support of confirmation of the *Combined Chapter 11 Plan of Liquidation and Disclosure Statement for Parlement Technologies, Inc.* [Docket No. 236], as modified by the *Amended Combined Chapter 11 Plan of Liquidation and Disclosure Statement for Parlement Technologies, Inc.* [Docket No. 252]; *Second Amended Combined Chapter 11 Plan of Liquidation and Disclosure Statement for Parlement Technologies, Inc.* [Docket No. 263-1]; and *Second Amended Modified Combined Chapter 11 Plan of Liquidation and Disclosure Statement for Parlement Technologies, Inc.* [Docket No. 280-1] (the disclosure statement portion thereof, the "Disclosure Statement," and the chapter 11 plan portion thereof, the "Plan," as may be modified, supplemented, or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement").[1]  The Debtor filed its proposed order confirming the Plan (the "Confirmation Order") contemporaneously with the filing of this Memorandum.

This Memorandum, final approval of the Disclosure Statement, confirmation of the Plan, and entry of the Confirmation Order, are supported by, among other things, the following:

1)      the Combined Plan and Disclosure Statement;

2)      the *Debtor's Motion for Entry of an Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Plan and Disclosure Statement; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballot and Opt-In Form; and (V) Granting Related Relief* [Docket No. 304] (the "Solicitation Procedures Motion");

3)      the *Order (I) Granting Interim Approval of the Disclosures in the Amended Combined Plan and Disclosure Statement; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures;*

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Combined Plan and Disclosure Statement.

*(IV) Approving the Form of Ballots; and (V) Granting Related Relief* [Docket No. 268] (the "Solicitation Procedures Order");

4)       the *Notice of (I) Interim Approval of Combined Plan and Disclosure Statement and (II) Hearing to Consider (A) Final Approval of the Combined Plan and Disclosure Statement as Containing Adequate Information and (B) Confirmation of the Combined Plan and Disclosure Statement* [Docket No. 331] (the "Confirmation Hearing Notice");

5)       the *Notice of Filing of Plan Supplement* [Docket No. 276] (as it may be further amended, modified, or supplemented from time to time, the "Plan Supplement);

6)       the *Declaration of James R. Risener III, on Behalf of Potter Anderson & Corroon LLP, Regarding Solicitation and Tabulation of Ballots Cast on the Combined Chapter 11 Plan and Disclosure Statement for Parlement Technologies, Inc.* [Docket No. 279] (the "Voting Declaration");

7)       the *Declaration of Craig R. Jalbert in Support of Confirmation of the Combined Chapter 11 Plan of Liquidation and Disclosure Statement for Parlement Technologies, Inc.* [Docket No. 281] (the "Confirmation Declaration"); and

8)       the *Affidavit of Service* with respect to the notice of Confirmation Hearing and solicitation of voting on the Plan [Docket No. 273] (the "Affidavit of Service").

In further support of confirmation and final approval of the Combined Plan and Disclosure Statement, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor commenced the Chapter 11 Case to effectuate the sale of its assets and simultaneously achieve an orderly and efficient wind down and liquidation of its business and other remaining assets.  The Debtor determined a sale was necessary to address the severe liquidity pressures and generate the highest possible recoveries in the most efficient and expeditious manner possible.  To that end, the Debtor initiated a marketing process, which resulted in the Sale of substantially all of the Debtor's assets.  On October 25 and October 28, 2024, pursuant to the Bidding Procedures Order, the Debtor commenced the Auction for the sale of the Assets.  Mr. Vuong was named as the successful bidder for the Assets, as described in the Vuong Asset Purchase Agreement.  With respect to the assets of Alchemy and Dynascale included in Mr.

2

Vuong's successful bid, Mr. Vuong conducted an Article 9 foreclosure sale. Mr. Vuong's bid consisted of $6.35 million, comprising a combination of cash and credit applied in connection with the Vuong Prepetition Secured Debt and Mr. Vuong's entitlements under the DIP Facility, as set forth in the Vuong Asset Purchase Agreement. On November 1, 2024, the Court entered the Sale Order approving the Sale. The Sale closed on November 26, 2024.

Following the approval of the Sale, the Debtor prepared the Plan to effectuate an orderly, value-maximizing liquidation of its remaining assets to provide the best possible recovery for creditors. The Plan contemplates creation of a trust (the "Liquidating Trust") to administer and liquidate the Debtors' remaining assets.

Although the Plan provides for the liquidation of the Debtor's remaining assets, recoveries to creditors are expected to be greater and will be distributed sooner than recoveries in a liquidation under chapter 7 of the Bankruptcy Code because a chapter 7 trustee and its professionals would have to expend significant time and resources familiarizing themselves with the Debtor's history, including its non-debtor subsidiaries. Indeed, most of the creditors who voted on the Plan voted to accept the Plan. As reflected in the tabulation ballot,[2] the votes cast in favor of the Plan reflect strong support for the Plan, with two exceptions, one of which is a litigation counterparty asserting a $1.6 billion claim for, among other things, claims related to the counterparty's ouster from management of the Debtor. Moreover, and as explained further below, the Combined Plan and Disclosure Statement comply with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

---

[2] *See* Voting Declaration, Exhibit A.

3

Lastly, the release, exculpation, and injunction provisions contained in the Combined Plan and Disclosure Statement are necessary and appropriate to the success of the Plan and should be approved.

Together, this Memorandum, the Combined Plan and Disclosure Statement, the Plan Supplement, the Confirmation Declaration, the Voting Declaration, and the Affidavit of Service, along with the files and records in the Chapter 11 Case, reflect that the Combined Plan and Disclosure Statement complies with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and provides the legal and evidentiary bases necessary for the Court to confirm the Plan and approve the Disclosure Statement on a final basis.

## **BACKGROUND**

## II.    **PROCEDURAL HISTORY.**

1.      On the Petition Date, the Debtor commenced with the Court a voluntary case under the Bankruptcy Code.  The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.  On July 10, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") filed the *Statement That Unsecured Creditors' Committee Has Not Been Appointed* [Docket No. 94], notifying parties in interest that the U.S. Trustee had not appointed a statutory committee of unsecured creditors in the Chapter 11 Case.  Additional information regarding the Debtor's business and capital structure as of the Petition Date, and the circumstances leading to the commencement of the Chapter 11 Case is set forth in the First Day Declaration.

2.      As discussed above, the Debtor entered the Chapter 11 Case with the intention of selling all or substantially all of its assets.  Prepetition and postpetition, the Debtor engaged in arm's-length, good-faith negotiations with interested parties regarding such potential sale.  These negotiations culminated with the consummation of the Sale.  Soon thereafter, the Debtor filed the

Combined Plan and Disclosure Statement.  On July 3, 2025, the Debtor filed the solicitation version of the Combined Plan and Disclosure Statement.  On July 7, 2025, the Court entered the Solicitation Procedures Order, approving, among other things, the proposed procedures for solicitation of the Solicitation Packages.  Solicitation commenced on July 9, 2025 in accordance with the Solicitation Procedures Order.

3.     The Debtor has filed the Plan Supplement in accordance with the Solicitation Procedures Order.

## III.    THE PLAN SOLICITATION AND NOTIFICATION PROCESS

4.     In accordance with the Solicitation Procedures Order, on July 9, 2025, the Debtor caused the Potter Anderson & Corroon LLP ("Potter Anderson") to distribute the Solicitation Packages to Holders of Claims in Class 2 (Remaining Vuong Prepetition Secured Claim) and Class 4 (General Unsecured Claims) entitled to vote on the Plan as of the July 7, 2025 Voting Record Date in accordance with sections 1125 and 1126 of the Bankruptcy Code.  The Solicitation Packages provided to Holders of Claims in the Voting Classes contained: (a) the Confirmation Hearing Notice; (b) a Ballot, including voting instructions and a preaddressed, postage prepaid return envelope; and (c) the Solicitation Procedures Order (without exhibits).

5.     All other Holders of Claims and Interests in the Non-Voting Classes that are deemed to either accept or reject the Combined Plan and Disclosure Statement and other parties in interest received only the Confirmation Hearing Notice.

6.     In compliance with the Bankruptcy Code and the Solicitation Procedures Order, only Holders of Claims and Interests in Impaired Classes receiving or retaining property on account of such Claims or Interests were entitled to vote on the Plan.  Holders of Claims and Interests were not entitled to vote if their rights were (a) Unimpaired under the Plan (in which case such Holders were conclusively presumed to accept the Plan pursuant to section 1126(f) of the

5

Bankruptcy Code) or (b) Impaired and such Holders were not entitled to receive any Distribution under the Plan (in which case such Holders were conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code).  The following chart details which classes of Claims and Interests were entitled to vote on the Plan and which were not:

| Class / Designation | Status |
|---|---|
| **Class 1**: Miscellaneous Secured Claims | Unimpaired / Deemed to accept |
| **Class 2**: Remaining Vuong Prepetition Secured Claim | Impaired / Entitled to vote |
| **Class 3:** Non-Tax Priority Claims | Unimpaired / Deemed to accept |
| **Class 4:** General Unsecured Claims | Impaired / Entitled to vote |
| **Class 5:** Existing Equity | Impaired / Deemed to reject |

7.      The Debtor solicited votes on the Plan only from Holders of Claims in Class 2 (Remaining Vuong Prepetition Secured Claim) and Class 4 (General Unsecured Claims).  The deadline for all Holders of such Claims entitled to vote on the Plan to cast their Ballots was July 28, 2025 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline"), and the deadline to object to Confirmation of the Plan and final approval of the Disclosure Statement was July 31, 2025 at 4:00 p.m. (prevailing Eastern Time) (the "Confirmation Objection Deadline").  As reflected in the Voting Declaration, Class 2 (Remaining Vuong Prepetition Secured Claim) voted to accept the Plan.  Accordingly, at least one Impaired Class voted in favor of accepting the Plan.

8.      The Court should confirm the Plan over the Classes that voted to reject or were deemed to reject the Plan because the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

## IV.      CONFIRMATION HEARING NOTICE

9.      The Court scheduled the Confirmation Hearing to consider final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan for August 7, 2025, at 2:00

p.m. (prevailing Eastern Time) (the "<u>Confirmation Hearing</u>").  On or before July 9, 2025, the Debtor, in accordance with the Solicitation Procedures Order, caused Potter Anderson to serve the Confirmation Hearing Notice on all known Creditors, holders of Interests, and all other parties entitled to notice in the Chapter 11 Case.

10.     The Confirmation Hearing Notice provided, among other things: (a) notice that the Debtor has filed a voluntary petition for relief under the Bankruptcy Code; (b) notice of the Confirmation Hearing to consider the adequacy of the information contained in the Disclosure Statement and Confirmation of the Plan; (c) instructions for obtaining copies of the Combined Plan and Disclosure Statement; (d) notice of the Confirmation Objection Deadline and procedures for filing objections to final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan; and (e) a summary of the exculpation, release, and injunction provisions set forth in the Combined Plan and Disclosure Statement.

## V.     OBJECTIONS TO FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN

11.     The Debtor received one objection to Confirmation of the Plan (the "<u>Objection</u>"), from Matze.  The Debtor worked with the foregoing [party and has resolved substantially all of the issues raised in the Objection].  To the extent not so resolved at the time of the filing hereof, the Debtor intends to continue working with parties in an effort to resolve any outstanding issues in the Objection prior to the Confirmation Hearing.

## <u>ARGUMENT</u>

12.     The argument portion of this Memorandum is divided into five parts.  In Part I, the Debtor sets forth why the Disclosure Statement contains adequate information, satisfies all applicable notice requirements under the Bankruptcy Code, and complies with the Solicitation Procedures Order.  In Part II, the Debtor addresses the requirements of sections 1125, 1126,

7

and 1129 of the Bankruptcy Code.  In Part III, the Debtor sets forth why all post-solicitation

revisions to the Plan satisfy section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and

therefore the Debtor does not need to resolicit the Plan.  In Part IV, the Debtor sets forth why it is

appropriate under the circumstances to waive and eliminate any stay of the Confirmation Order

under the Bankruptcy Rules.  Lastly, in Part V, the Debtor sets forth the reasons the Court should

confirm the Combined Plan and Disclosure Statement notwithstanding the Objection.  The facts

relevant to final approval of the Disclosure Statement and Confirmation of the Plan are set forth

in the Combined Plan and Disclosure Statement, the Confirmation Declaration, the Voting

Declaration, and any evidence presented or testimony that may be adduced at the Confirmation

Hearing.

## I.    THE DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" AS REQUIRED BY BANKRUPTCY CODE SECTIONS 1125 AND 1126 AND SHOULD BE APPROVED.

### A.    **The Disclosure Statement Contains Adequate Information.**

13.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed

chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

claims and interests entitled to vote on the plan.[3]  Specifically, section 1125(a)(1) of the

Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the debtor
> and the condition of the debtor's books and records, including a
> discussion of the potential material Federal tax consequences of the
> plan to the debtor, any successor to the debtor, and a hypothetical
> investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to
> make an informed judgment about the plan.[4]

---

[3] 11 U.S.C. § 1125.

[4] 11 U.S.C. § 1125(a)(1).

14. Whether a disclosure statement contains adequate information is a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.[5]

15. The Disclosure Statement is detailed and comprehensive and satisfies the elements of section 1125 of the Bankruptcy Code. The Disclosure Statement provides information regarding, among other things: (a) the Plan; (b) the Debtor's prepetition indebtedness; (c) the Debtor's business and operations; (d) the circumstances surrounding the Chapter 11 Case; (e) certain risk factors related to the Plan and transactions contemplated therein; and (f) the federal tax law implications of the Plan. Accordingly, the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

16. Further, the Disclosure Statement provides sufficient notice and information regarding the release, injunction, and exculpation provisions of the Plan. Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.[6] The language in Article XI.A of the Combined Plan and Disclosure Statement describes in detail the entities subject to an

---

[5] H.R. Rep. No. 95–595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365; *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *see also In re River Village Assoc.*, 181 B.R. 795, 804 (Bankr. E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement.").

[6] Fed. R. Bankr. P. 3016(c).

injunction under the Plan and the acts that they are enjoined from pursuing, and such language is in bold font, making it conspicuous to any reader.  Accordingly, the Disclosure Statement satisfies Bankruptcy Rule 3016(c).

17.    After a hearing, on July 1, 2025, the Court approved the Disclosure Statement on an interim basis as containing adequate information to authorize the Debtor to commence solicitation.  No party in interest has requested additional information to cast an informed vote on the Plan.  Accordingly, the Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should therefore be approved.

**B.    The Debtor Complied with the Requirements Set Forth in the Solicitation Procedures Order.**

18.    On July 7, 2025, the Court entered the Solicitation Procedures Order granting the relief requested in the Solicitation Procedures Motion, including, among other things: (a) approving the Solicitation Packages; (b) approving the form and manner of the Confirmation Hearing Notice; and (c) approving certain dates and deadlines with respect to the Combined Plan and Disclosure Statement.  The Debtor complied with the procedures and timeline approved by the Solicitation Procedures Order.[7]

i.    <u>The Debtor Complied with the Notice Requirements Set Forth in the Solicitation Procedures Order.</u>

19.    The Debtor satisfied the notice requirements set forth in the Solicitation Procedures Order, Bankruptcy Rule 3017, and Local Rule 3017-1.  First, on or before July 9, 2025 the Debtor caused Potter Anderson to distribute the Solicitation Packages to Holders of Claims entitled to

---

[7] *See* Voting Declaration, ¶ 6.

IMPAC - 12367026v.6

vote on the Plan as of the Voting Record Date.[8]  Second, the Confirmation Hearing Notice included instructions on how to obtain the Combined Plan and Disclosure Statement through the Debtor's case website or the Court's website.[9]

        ii.   <u>The Ballot Used to Solicit Holders of Claims Entitled to Vote on the Plan Complied with the Solicitation Procedures Order.</u>

20.    The form of Ballot used complies with the Bankruptcy Rules and was approved by the Court pursuant to the Solicitation Procedures Order.[10]  No party has objected to the sufficiency of the Ballot.  Based on the foregoing, the Debtor submits that the Ballot complied with the Solicitation Procedures Order and satisfied the requirements of Bankruptcy Rule 3018(c).

        iii.   <u>The Solicitation Period Complied with the Solicitation Procedures Order.</u>

21.    The solicitation period complied with the Solicitation Procedures Order, the Bankruptcy Code, and the Bankruptcy Rules.  First, the Solicitation Packages were transmitted to all Holders of Claims entitled to vote on the Plan.[11]  Second, the solicitation period, which lasted from July 9, 2025 through July 28, 2025 at 4:00 p.m. (prevailing Eastern Time), complied with the Solicitation Procedures Order and was adequate under the particular facts and circumstances of the Chapter 11 Case.[12]  Accordingly, the Debtor submits that the solicitation period complied with the Solicitation Procedures Order.

---

[8] *See* Affidavit of Service; Voting Declaration, ¶ 5.

[9] *See* Confirmation Hearing Notice, p.3.

[10] *See* Solicitation Procedures Order, ¶ 5.

[11] *See* Voting Declaration, ¶ 6; Affidavit of Service.

[12] The Debtor received one vote after the Voting Deadline but given the facts and circumstances of the Chapter 11 Case and the solicitation process, the Debtor included the late vote in its tabulation of the voting results.

iv.     The Tabulation Procedures Complied with the Solicitation Procedures Order.

22.     The Debtor requests that the Court find that the Debtor's tabulation of votes complied with the Solicitation Procedures Order.  Potter Anderson reviewed all Ballots received in accordance with the procedures described in the Solicitation Procedures Motion and the Combined Plan and Disclosure Statement, and subsequently approved in the Solicitation Procedures Order.[13]  Accordingly, the Debtor respectfully submits that the Court should approve the Debtor's tabulation of votes confirming that, in Class 2 the full amount of Claims and all Creditors voted to accept the Plan, and in Class 4, the requisite two-thirds amount of Claims did not vote to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.

v.     Solicitation Complied with the Bankruptcy Code and Was in Good Faith.

23.     Section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.[14]

24.     As set forth in the Confirmation Declaration, and as demonstrated by the Debtor's compliance with the Solicitation Procedures Order, the Debtor at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code.[15]  Therefore, the Debtor

---

[13] *See* Voting Declaration, ¶ 8-10.  The Debtor also received one late-filed Ballot from Trang Cao but given the facts and circumstances of the Chapter 11 Case, the Debtor chose in its discretion to count the late-filed Ballot as if it were timely-filed.

[14] 11 U.S.C. § 1125(e).

[15] *See* Confirmation Declaration ¶ 13.h; *see generally* Voting Declaration.

respectfully requests that the Court grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

## II.    THE    PLAN    SATISFIES    EACH    OF    THE    REQUIREMENTS    FOR CONFIRMATION UNDER THE BANKRUPTCY CODE.

25.    To confirm the Plan, the Court must find that the Debtor has satisfied the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[16]  As set forth herein, the Plan fully complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, and 1129—as well as the Bankruptcy Rules and applicable non-bankruptcy law.  This Memorandum addresses each requirement in seriatim.

### A.    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code.

26.    Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title."[17]  The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that a plan complies with sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of a plan, respectively.[18]  The Plan complies with these provisions in all respects.

### i.    Classification of Claims and Interests Complies with Section 1122 of the Bankruptcy Code.

27.    The Plan satisfies section 1122(a) of the Bankruptcy Code, which provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially

---

[16] *See In re Armstrong World Indus.*, 348 B.R. 111, 120 n.15 (Bankr. D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001).

[17] 11 U.S.C. § 1129(a)(1).

[18] *See* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978); H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.A.N. 5962, 6368 (1977); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988).

similar to the other claims or interests of such class."[19]  Section 1122(a) does not require that similar claims be classified together, only that claims grouped together in a class should be similar.[20]  The Third Circuit has recognized that debtors have significant flexibility in placing similar claims into different classes under section 1122(a), provided there is a rational basis to do so, and it is not done to gerrymander a consenting impaired class.[21]

28.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  The Plan designates four Classes of Claims and one Class of Interests: (i) Class 1 Miscellaneous Secured Claims; (ii) Class 2 Remaining Vuong Prepetition Secured Claim; (iii) Class 3 Non-Tax Priority Claims; (iv) Class 4 General Unsecured Claims; and (v) Class 5 Existing Equity.  Each Class consists of substantially similar Claims or Interests.

29.     The classification scheme of the Plan is rational.[22]  Further, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.[23]  Namely, the Plan provides the separate classifications described above

---

[19] 11 U.S.C. § 1122(a).

[20] *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.* (*In re U.S. Truck Co.*), 800 F.2d 581, 585 (6th Cir. 1986); *see In re Nuverra Env't Sols., Inc.*, 590 B.R. 75, 96 (Bankr. D. Del. 2018); *see also In re W.R. Grace*, 475 B.R. 34, 109–10 (Bankr. D. Del. 2012) (noting that "[i]n analyzing whether claims within a given class are substantially similar, 'the focus of the classification should be on the legal character of the claim as it relates to the assets of the debtor'") (citation omitted).

[21] *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–61 (3d Cir. 1987) (observing that separate classes of claims must be reasonable and allowing a debtor to group similar claims in different classes); *see also Frito-Lay, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis; separate classification based on bankruptcy court-approved settlement); *Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Ct.* (*In re Chateaugay Corp.*), 89 F.3d 942, 950 (2d Cir. 1996) (finding classification proper since the plan did not classify similar claims separately to gerrymander an impaired assenting class); *In re Adelphia Commnc'ns Corp.*, 368 B.R. 140, 247 (Bankr. S.D.N.Y. 2007) ("When considering assertions of gerrymandering, courts in the Second Circuit have inquired whether a [debtor] has classified substantially similar claims in separate classes for the sole purpose of obtaining at least one impaired assenting class.").

[22] *See* Confirmation Declaration, ¶ 13.a.

[23] *See Id.*

because each Holder of the applicable Claim or Interest may hold (or may have held) rights in the Debtor's Estate legally dissimilar to the Claims or Interests in the other Classes.[24]  In addition, Article VI of the Combined Plan and Disclosure Statement designates (but does not classify) certain Claims under sections 507(a)(2) and 507(a)(8), including Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims.  The classification of Claims and Interests in the Plan therefore complies with section 1122 of the Bankruptcy Code.

      ii.    <u>The Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code.</u>

30.    Section 1123(a) of the Bankruptcy Code sets forth seven (7) requirements with which every chapter 11 plan must comply.  The Plan complies fully with each requirement.

(1)    <u>Section 1123(a)(1)</u>.  Article VI of the Combined Plan and Disclosure Statement designates classes of Claims and Interests and does not classify Administrative Claims or Priority Tax Claims, which are further described in Article V of the Combined Plan and Disclosure Statement, because they must receive the treatment specified in the Bankruptcy Code and cannot otherwise be Impaired.[25]  The Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

(2)    <u>Section 1123(a)(2)</u>.  Article VI of the Combined Plan and Disclosure Statement specifies that Class 1 (Miscellaneous Secured Claims) and Class 3 (Non-Tax Priority Claims) are Unimpaired.  The Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

(3)    <u>Section 1123(a)(3)</u>.  Article VI of the Combined Plan and Disclosure Statement specifies that Class 2 (Remaining Vuong Prepetition Secured Claim), Class 4 (General Unsecured Claims), and Class 5 (Existing Equity) are Impaired.  The Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

(4)    <u>Section 1123(a)(4)</u>.  As set forth in Article VI, all of the Holders of Claims or Interests within each of the Classes are treated equally under the Plan as required by section 1123(a)(4) of the Bankruptcy Code, unless the Holder of a Claim or Interest agrees to less favorable treatment.  The Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

---

[24] *See Id.*

[25] *See* 11 U.S.C. §§ 1123(a)(1) and 1129(a)(9).

(5)      Section 1123(a)(5).   Article VIII (Implementation and Execution of the Combined Plan and Disclosure Statement), Article IX (Executory Contracts and Unexpired Leases), Article X (Conditions Precedent to Confirmation and the Effective Date), and various other provisions of the Combined Plan and Disclosure Statement provide adequate and proper means for the implementation of the Combined Plan and Disclosure Statement. Article VIII of the Combined Plan and Disclosure Statement further provides for, among other things, (i) sources of consideration for Distributions, (ii) the vesting or transfer of the Debtor's remaining assets, (iii) the appointment, duties, and responsibilities of the Liquidating Trustee, and (iv) other implementation provisions.

(6)      Section 1123(a)(6).   The Combined Plan and Disclosure Statement is a liquidating plan that provides for the dissolution of the Debtor. Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable.

(7)      Section 1123(a)(7).   On the Effective Date, in accordance with section VIII.E.2 of the Combined Plan and Disclosure Statement, the Liquidating Trustee will be appointed.

(8)      Section 1123(a)(8).   Section 1123(a)(8) of the Bankruptcy Code applies to cases in which the debtor is an individual and is inapplicable to the Debtor and the Plan.

31.      Accordingly, the Combined Plan and Disclosure Statement satisfies section 1123(a) of the Bankruptcy Code.

iii.      The Plan Complies with the Discretionary Provisions of Section 1123 of the Bankruptcy Code.

32.      Section 1123(b) of the Bankruptcy Code sets forth various permissive provisions that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate; and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11.[26]

---

[26]  11 U.S.C. § 1123(b).

33. Here, the Plan includes various discretionary provisions that are consistent with the discretionary authority vested under section 1123(b) of the Bankruptcy Code. For example, the Plan impairs certain Classes of Claims and Interests and leaves others Unimpaired, proposes treatment for Executory Contracts, provides a structure for Claim allowance and disallowance, and establishes a distribution process for the satisfaction of Allowed Claims entitled to Distributions under the Plan.

(1) <u>Section 1123(b)(1)</u>. Article VI of the Combined Plan and Disclosure Statement sets forth the Classes of Claims and Interests that are Unimpaired under the Plan. Specifically, Classes 1 and 3 are Unimpaired because the Plan provides the Holders of such Claims with the treatment required under the Bankruptcy Code. Classes 2 and 4 are Impaired because the Plan modifies the rights of the Holders of Claims within such Class. In addition, the Interests classified in Class 5 will be canceled or released as of the Effective Date and are therefore Impaired under the Plan.

(2) <u>Section 1123(b)(2)</u>. Pursuant to Article IX of the Combined Plan and Disclosure Statement, on the Effective Date, all Executory Contracts and Unexpired Leases not assumed, assigned, or rejected before the Effective Date, or subject to a pending motion to assume or reject as of the Effective Date, will be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

(3) <u>Section 1123(b)(5)</u>. Article VI of the Combined Plan and Disclosure Statement modifies or leaves unaffected, as the case may be, the rights of certain holders of Claims and Interests, as permitted by section 1123(b)(5) of the Bankruptcy Code.

iv. <u>The Exculpation, Release, and Injunctions Provided Under the Plan Are Appropriate and Should be Approved.</u>

34. In addition, Article XI of the Plan provides for the following: (a) an exculpation provision for the Exculpated Parties (the "<u>Exculpation Provision</u>"); (b) a release by the Debtor and its Estate (the "<u>Debtor Releases</u>") of the Released Parties; and (c) a customary injunction provision intended to implement the Debtor Release and exculpations provided by the Combined Plan and Disclosure Statement (the "<u>Injunction Provision</u>"). The Debtor Releases, Exculpation Provision,

17

and Injunction Provision are integral components of the Combined Plan and Disclosure Statement

and are consistent with the Bankruptcy Code and comply with applicable case law.

> *a.      The Exculpation Provision Is Appropriate.*

35.      The Plan's exculpation provision is fair and appropriate under both applicable law

and the facts and circumstances of the Chapter 11 Case.  Article XI.B of the Combined Plan and

Disclosure Statement provides for exculpation of the Exculpated Parties[27] as follows:

> Except as otherwise specifically provided in the Combined Plan and Disclosure
> Statement, effective as of the Effective Date, the Exculpated Parties shall not have
> nor incur any liability to any holder of a Claim or Interest or any of their related
> persons for any postpetition, but pre-Effective Date, act or omission in connection
> with, related to, or arising out of the Chapter 11 Case, the Combined Plan and
> Disclosure Statement, the pursuit of confirmation, the solicitation of votes on the
> Combined Plan and Disclosure Statement, the Confirmation of the Combined Plan
> and Disclosure Statement, the consummation of the Combined Plan and Disclosure
> Statement, the administration of the Combined Plan and Disclosure Statement, the
> property to be liquidated and/or distributed under the Combined Plan and
> Disclosure Statement, or any postpetition, but pre-Effective Date, act taken or
> omitted to be taken in connection with or in contemplation of the liquidation of the
> Debtor, including specifically the pursuit and entry of the Sale Order, except for
> their fraud, willful misconduct, or gross negligence as subsequently determined by
> a final order of a court of competent jurisdiction, and in all respects shall be entitled
> to rely reasonably upon the advice of counsel with respect to their duties and
> responsibilities under the Combined Plan and Disclosure Statement.  The foregoing
> paragraph shall apply to attorneys and lawyers to the greatest extent permissible
> under applicable bar rules and case law but shall not be deemed to release, affect,
> or limit any of the rights and obligations of the Exculpated Parties from, or
> exculpate the Exculpated Parties with respect to, any of the Exculpated Parties'
> obligations or covenants arising pursuant to this Combined Plan and Disclosure
> Statement or the Confirmation Order.

36.      In determining the appropriateness of limiting liability under a plan, such as through

exculpation, the Third Circuit assesses such provisions in light of the particular circumstances at

---

[27] Pursuant to the Combined Disclosure Statement and Plan, "Exculpated Parties" shall mean "with respect to the period beginning from the Petition Date, individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtor; (b) the members of the Debtor's Board; (c) the Chief Restructuring Officer; and (d) the Debtor's Professionals retained in the Chapter 11 Case by order of the Bankruptcy Court."

issue.[28]    Third Circuit courts may approve exculpation provisions for acts or omissions in connection with the pursuit of confirmation of a plan when such protection is necessary to a debtor's restructuring efforts and given in exchange for fair consideration.[29]

37.    A set forth in the Confirmation Declaration, the Exculpated Parties: (a) have made substantial and valuable contributions to the Debtor's Sale and plan process; (b) have invested significant time and effort to make the Chapter 11 Case a success and preserve the value of the Debtor's Estate in a challenging environment; (c) met frequently and directed the negotiations of the transactions contemplated in the Combined Plan and Disclosure Statement; and, (d) with respect to the Debtor's directors, officers, and managers who are Exculpated Parties, are entitled to indemnification from the Debtor under state law, organizational documents, and agreements.[30]

38.    The Exculpation Provision was (i) narrowly tailored to exclude acts deemed to constitute fraud, gross negligence, or willful misconduct; (ii) relates only to acts or omissions occurring between the Petition Date and the Effective Date relating to, or in any way arising from, (a) the Chapter 11 Case, (b) formulating, negotiating or implementing the Combined Plan and Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Combined Plan and Disclosure Statement; (e) the Sale; (d) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring, sale, or liquidation of the Debtor; and (iii) ultimately inures to the benefit of

---

[28] *See In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000) (rejecting any "per se rule barring any provision in a reorganization plan limiting the liability of third parties", including exculpation, by virtue of section 524(e) of the Bankruptcy Code); *see also In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (concluding that exculpation provisions are appropriate for estate fiduciaries, committees and their members and debtor directors and officers).

[29] *See, e.g., In re W.R. Grace & Co.*, 446 B.R. 96, 132–33 (Bankr. D. Del. 2011) (approving an exculpation clause exculpating non-debtor parties who were party to a settlement agreement); *In re PWS Holding Corp.*, 228 F.3d at 247.

[30] *See* Confirmation Declaration, ¶ 13.h; *see also* 8 Del. C. § 145.

only those parties that may owe fiduciary duties to the Debtor and the Estate.[31]  The Exculpation Provision was important to the development of a feasible, confirmable Plan, and many of the Exculpated Parties are participating in the Chapter 11 Case in reliance upon the protections afforded by the Plan's exculpation provision.  As such, the Plan's exculpation provision is reasonable and appropriate.

### b.    The Debtor Releases Are Appropriate.

39.     Article IX.C. of the Combined Plan and Disclosure Statement contains a release by the Debtor and the Estate of the Released Parties.[32]  Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[33]  A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[34]

40.     In determining whether a debtor release is proper, courts consider whether:

(1)    the non-debtor has made a substantial contribution to the debtor's reorganization;

---

[31] *See id.*

[32] Pursuant to the Combined Disclosure Statement and Plan, "Released Party" shall mean "collectively, and in each case, in their respective capacities as such, (i) all members of the Debtor's Board; (ii) the Debtor's Officers, directors, managers, principals, members, employees, and agents, that served as of or after the Petition Date (except as set forth below); and (iii) all current and former Professionals of the Debtor, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. For the avoidance of doubt, the Released Parties shall not include any Holders of Interests in their capacity as such. For the further avoidance of doubt, the Released Parties do not include NDMAscendant, LLC, Jeffrey Wernick, Mark Meckler, Dan Bongino, or Rebekah Mercer."

[33] *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334-35 (Bankr. D. Del. 2004) ("The standards for approval of settlement under section 1123 [of the Bankruptcy Code] are generally the same as those under [Bankruptcy Rule] 9019 …,").  Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "exceed[s] the lowest point in the range of reasonableness."  *E.g.*, *In re Exaeris, Inc.*, 380 B.R. 741, 746 (Bankr. D. Del. 2008) (cleaned up).

[34] *U.S. Bank Nat'l Assn' v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut. Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.") (quoting *In re Louise's, Inc*., 211 B.R. 798, 801 (Bankr. D. Del. 1997)).

(2)      the release is essential to the debtor's reorganization;

(3)      a substantial majority of creditors support the release;

(4)      there is an identity of interest between the debtor and the third party; and

(5)      a plan provides for payment of all or substantially all of the claims in the class or classes affected by the release.[35]

"These factors are neither exclusive nor are they a list of conjunctive requirements."[36]

41.      The Debtor Releases meet this standard.  They are fair and reasonable, supported by the Debtor's key stakeholders, and in the best interests of the Estate.[37]

42.      The Debtor's releases are based upon a substantial contribution to the Plan and Chapter 11 Case.[38]  The Debtor Releases were instrumental in obtaining support for the Combined Plan and Disclosure Statement, which is the result of, among other things, arm's-length and good faith negotiations among the Debtor and its key stakeholders.[39]  Moreover, there is an identity of interests between the Debtor and the Released Parties based on their "common goal of confirming the [] Plan."[40]

43.      Here, each of the Released Parties has contributed to the formulation of the Plan and the transactions contemplated therein.

---

[35] *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing *In re Zenith Elecs. Corp*., 241 B.R. 92, 110 (Bankr. D. Del. 1999)); *see e.g.*, *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)); *see also Wash. Mut.*, 442 B.R. at 346 (citing the *Zenith* factors); *Spansion*, 426 B.R. at 143 n.47 (same).

[36] *In re Indianapolis Downs, LLC*, 486 B.R. at 303 (citing *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)).

[37] *See* Confirmation Declaration ¶ 13.h.

[38] *See id.*

[39] *See id.*

[40] *In re Tribune Co*., 464 B.R. 126, 187 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011); *Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed, and the company reorganize").

44.     Among others, the Debtor, as well as each of its directors, officers, managers,
consultants and employees, and professionals that have acted on the Debtor's behalf in the Chapter
11 Case, owe duties in favor of the Estate.[41]  The directors, officers, managers, employees, and
professionals: (a) have made substantial and valuable contributions to the Debtor's restructuring
and the Estate; (b) have invested significant time and effort to make the restructuring a success
and preserve the value of the Estate in a challenging environment; (c) have met frequently and
directed the negotiations of the transactions contemplated in the Plan; and (d) specifically with
respect to the Debtor's directors, officers, and managers, are entitled to indemnification from the
Debtor under state law, organizational documents, and agreements.[42]  Finally, no party in interest,
including the Office of the United States Trustee has objected to the Debtor Releases.  For these
reasons, the Debtor Releases are justified, in the best interests of creditors, integral to the Plan, and
satisfy the key factors considered by courts in determining whether a debtor release is proper.

c.      *The Injunction Provision Is Appropriate.*

45.     Article XI.A of the Combined Plan and Disclosure Statement provides that all
injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code sections 105 or
362, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect
until the later of (a) the Effective Date, or (b) the date indicated in the order providing for such
injunction or stay.  Notwithstanding the foregoing, nothing in the Combined Plan and Disclosure
Statement shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or
stays granted in the Sale Orders.  Except as otherwise provided in the Combined Plan and

---

[41]   *See, e.g.*, *Wash. Mut.*, 442 B.R. at 350–51 (Bankr. D. Del. 2011) (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals . . . and the [d]ebtors' directors and officers" was appropriate).

[42]   *See* Confirmation Declaration ¶ 13.h.

Disclosure Statement or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Interests in the Debtor (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against, or abstain from voting on the Combined Plan and Disclosure Statement or are presumed to have accepted or deemed to have rejected the Combined Plan and Disclosure Statement) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates will be enjoined, on and after the Effective Date through and until the date upon which all remaining property of the Debtor's Estate vested in the Liquidating Trust has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Combined Plan and Disclosure Statement and the Liquidating Trust Agreement and the Combined Plan and Disclosure Statement has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Combined Plan and Disclosure Statement from (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a right of setoff, other than any rights of setoff that were exercised prior to the Petition Date; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement; provided, however, that such entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Plan and Disclosure

23

Statement or the Confirmation Order; provided, further, that the foregoing shall not apply to any acts, omissions, claims, causes of action, or other obligations expressly set forth in and preserved by the Combined Plan and Disclosure Statement or any defenses thereto. Notwithstanding the foregoing, nothing in the Combined Plan and Disclosure Statement shall be otherwise deemed to modify, limit, amend or supersede any injunctions or stays granted in the Sale Order.

47.      The Injunction Provision is included in the Combined Plan and Disclosure Statement in order to provide the Liquidating Trustee the breathing space and time to tend to its duties and responsibilities in connection with liquidating and distributing the Liquidating Trust Assets for the benefit of the Liquidating Trust's beneficiaries. Without the Injunction Provision, the Liquidating Trustee would be forced to expend time and resources on matters that would distract from his main duties and responsibilities and accumulate further administrative expenses that would deplete the potential recoveries of Liquidating Trust beneficiaries. Thus, the Injunction Provision is a key provision of the Plan. Moreover, this Injunction Provision is narrowly tailored to achieve its purpose.

**B.      The Debtor Has Satisfied Section 1129(a)(2) of the Bankruptcy Code.**

47.      Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply with "applicable provisions of the Bankruptcy Code."[43] The principal purpose of section 1129(a)(2) of Bankruptcy Code is to ensure that a debtor has complied with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.[44] As set forth

---

[43] 11 U.S.C. § 1129(a)(2)

[44] *See In re PWS Holdings Corp.*, 228 F.3d at 248 (section 1129(a)(2) requires debtors to comply with adequate disclosure requirements of section 1125); *see also In re Lapworth*, No. 97-34529-DWS, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted section 1129(a)(2)."); *In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988) (stating that the "principal purpose of

24

herein, the Debtor has complied with these provisions, including sections 1125 and 1126 of the

Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Combined Plan

and Disclosure Statement and soliciting acceptances of the Plan through Potter Anderson in

accordance with the Solicitation Procedures Order.

i.    <u>The Debtor Has Complied with the Requirements of Section 1125 of the Bankruptcy Code.</u>

48.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or

rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before

such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written

disclosure statement approved . . . by the court as containing adequate information."[45]  In this case,

the Court entered the Solicitation Procedures Order, conditionally approving the Disclosure

Statement as containing adequate information within the meaning of section 1125 of the

Bankruptcy Code.

49.     Pursuant to the Solicitation Procedures Order, the Debtor, through Potter Anderson,

transmitted the approved Solicitation Packages and applicable notices in accordance with the

instructions of the Court in the Solicitation Procedures Order.[46]  In addition, copies of the

Solicitation Procedures Order and the Combined Plan and Disclosure Statement have been

available upon request from the Debtor's counsel and free of charge on the Debtor's case website.

Further, notice of the Confirmation Hearing at which the Court will consider confirmation of the

Plan and final approval of the Disclosure Statement and related voting and objection deadlines was

---

Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan"); S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 (1978) ("Paragraph (2) of [section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6368 (1977).

[45] 11 U.S.C. § 1125(b).

[46] *See* Voting Declaration, ¶ 6; Affidavit of Service.

25

served on each party listed on the Debtor's master service list and all other parties required by the Solicitation Procedures Order.[47]

50.    Thus, the Solicitation Packages were served in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017 and the Solicitation Procedures Order.  The Solicitation Packages clearly stated that, consistent with the Solicitation Procedures Order and section 105(d)(2)(B)(vi) of the Bankruptcy Code, final approval of the Disclosure Statement and any objections thereto would be heard at the Confirmation Hearing.

51.    After notice to all Creditors, there are no outstanding objections to the adequacy of the Disclosure Statement.  For this reason and for the additional reasons supporting the adequacy of the Disclosure Statement, as set forth in the Solicitation Procedures Motion, approval of the Disclosure Statement on a final basis as part of the Confirmation Order is appropriate.

      ii.    <u>The Debtor Has Complied with the Requirements of Bankruptcy Rules 3017(d) and 3018(c).</u>

52.    Bankruptcy Rules 3017 and 3018 require, in relevant part, that a debtor transmit its plan and disclosure statement to all affected creditors and equity security holders, that it adopt effective procedures for the transmission of its plan and disclosure statement to beneficial owners of securities, and that it afford creditors and equity security holders a reasonable period of time in which to accept or reject the proposed plan.[48]  The Debtor respectfully submits that it has met all such requirements.

53.    Bankruptcy Rule 3017(d) requires that, unless a court orders otherwise, a debtor must transmit to all creditors, equity security holders, and the U.S. Trustee: the plan, or a court-approved summary of the plan; the disclosure statement approved by the court; notice of the time

---

[47] *See* Affidavit of Service; Voting Declaration, ¶ 6.

[48] Fed. R. Bankr. P. 3017, 3018.

within which acceptances and rejections of such plan may be filed; and such other information as the court may direct including any opinion of the court approving the disclosure statement or a court approved summary of the opinion.

54.     Bankruptcy Rule 3017 also requires that the debtor give notice of the time fixed for filing objections to the proposed disclosure statement and for the hearing on confirmation to all creditors and equity security holders and that a debtor mail a ballot to each creditor and equity security holder entitled to vote on the plan.

55.     Bankruptcy Rule 3018(c) governs the form of ballot for accepting or rejecting a plan, providing in relevant part that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form."   Pursuant to Bankruptcy Rule 3018(a), the Court established July 7, 2025, as the Voting Record Date for determining which Holders of Claims were entitled to vote to accept or reject the Plan.

56.     The Debtor completed the commencement of solicitation of the Plan on or about (but no later than) July 9, 2025, by causing the Potter Anderson to serve the Solicitation Packages on the applicable parties as of the Voting Record Date.[49]   The Debtor and its professionals and agents followed the procedures set forth in the Solicitation Procedures Order for soliciting acceptances of the Plan, as evidenced by the Voting Declaration[50] and the Affidavit of Service. The Debtor did not solicit acceptances or rejections of the Plan from any Creditor or Interest Holder before the conditional approval of the Disclosure Statement by the Court.[51]

---

[49] *See* Affidavit of Service.

[50] *See* Voting Declaration, ¶ 4-9.

[51] *See* Voting Declaration, ¶ 11.

IMPAC - 12367026v.6

iii.    The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a).

57.    The Debtor submits that the voting and tabulation procedures followed by Potter Anderson are in accordance with the Solicitation Procedures Order, section 1126(c) of the Bankruptcy Code, and Bankruptcy Rule 3018(a).

58.    Bankruptcy Code section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.[52]

Section 1126 of the Bankruptcy Code provides in relevant part that only holders of allowed claims and interests in impaired classes that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject a plan.[53]  Pursuant to section 1126 of the Bankruptcy Code, the Holders of Claims in Classes 2 and 4 are the only parties entitled to vote on the Plan.  Accordingly, as set forth in the Voting Declaration, in accordance with section 1126 of the Bankruptcy Code and the Solicitation Procedures Order, the Debtor solicited acceptances and rejections of the Plan from the Holders of Claims in Classes 2 and 4.[54]  Every validly cast Ballot, as well as one late-filed ballot deemed acceptable by the Debtor under the circumstances, was counted and considered when tabulating votes for the acceptance or rejection of the Plan.[55]

59.    Based on the facts and arguments set forth above, the Debtor submits that the Plan-related solicitation efforts satisfied the requirements of Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017 and 3018.  Additionally, given the clear evidence of good

---

[52] 11 U.S.C. § 1126(c).

[53] 11 U.S.C. § 1126(f)-(g).

[54] *See* Voting Declaration, ¶ 4, 6.

[55] *See* Voting Declaration, ¶ 9-10.

faith on the part of the parties involved in the solicitation and the Debtor's compliance with section 1125, the Debtor requests that the Court grant the parties the protections provided under Bankruptcy Code section 1125(e).

### C. The Plan Has Been Proposed in Good Faith in Compliance with Section 1129(a)(3) of the Bankruptcy Code.

60.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law.[56]  Although the term "good faith" is not defined in the Bankruptcy Code, courts have determined that "[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code."[57]  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the proposal of a chapter 11 plan.[58]  In determining whether the plan will succeed and accomplish goals consistent with the Bankruptcy Code, courts look to the terms of the plan itself.[59]

61.     The Plan has been proposed in good faith.[60]  The Plan is the result of extensive, good-faith discussions between the Debtor and its key stakeholders, including but not limited to, Vincent Vuong.[61]  The Plan contains only provisions that are consistent with the Bankruptcy Code, and achieves an effective, orderly liquidation and distribution of the Debtor's assets to Creditors. In light of the foregoing, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

---

[56] 11 U.S.C. § 1129(a)(3).

[57] *In re PWS Holding Corp.*, 228 F.3d at 242 (citation omitted).

[58] *In re W.R. Grace & Co.*, 475 B.R. at 87.

[59] *See In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good-faith test provides courts with significant flexibility and is focused on examination of the plan itself, rather than external factors), *aff'd in part and remanded in part on other grounds,* 103 B.R. 521 (Bankr. D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990).

[60] *See* Confirmation Declaration ¶ 13.j.

[61] *See id.*

D.       **The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.**

62.       Section 1129(a)(4) of the Bankruptcy Code requires that a debtor not make any payment for services, costs, or expenses in connection with a case unless such payments have been approved by, or is subject to the approval of, the court as reasonable.[62]  Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.[63]

63.       No payment for services or costs and expenses in connection with the Chapter 11 Case, or in connection with the Combined Plan and Disclosure Statement and incident to the Chapter 11 Case, has been or will be made, other than payments that have already been authorized by an order of the Court.[64]  The Court has previously authorized the monthly payment of the fees and expenses incurred by Debtor's Professionals (the "<u>Professionals</u>").[65]  Pursuant to Article V.B. of the Combined Plan and Disclosure Statement, Professionals shall file and serve applications for allowance of final compensation and reimbursement of expenses no later than the Administrative Claim Bar Date.   Such applications will be subject to review and approval by the Court. Accordingly, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

---

[62] 11 U.S.C. § 1129(a)(4).

[63] *See In re NII Holdings, Inc.*, 288 B.R. 356, 362-63 (Bankr. D. Del. 2002) (finding in a confirmation order that the plan complied with section 1129(a)(4) of the Bankruptcy Code where all final fees and expenses payable to professionals remained subject to final review by the court); *In re Resorts Int'l, Inc.*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990).

[64] *See* Confirmation Declaration ¶ 13.k.

[65] *See Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 62].

IMPAC - 12367026v.6

E.     **The Debtor Has Complied with Section 1129(a)(5) of the Bankruptcy Code.**

64.     Section 1129(a)(5) of the Bankruptcy Code requires that the identity and affiliations of the individuals proposed to serve after confirmation as a director or officer and that the identity and nature of any insider compensation be disclosed.   The Debtor has complied with section 1129(a)(5) by providing the identity and other information relating to the Liquidating Trustee in the Plan and the Plan Supplement.  The appointment is "consistent with the interests of creditors and equity security holders and with public policy," and no party in interest has objected to the Plan on these grounds.[66]   Therefore, the section 1129(a)(5) requirements are satisfied.

F.     **No Rate Changes Under Section 1129(a)(6) of the Bankruptcy Code**

65.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

G.     **The Plan Is in the Best Interests of All Creditors and Interest Holders Under Section 1129(a)(7) of the Bankruptcy Code.**

66.     The "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain under the plan property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.  The best interests of creditors test is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan.

---

[66] *See* Confirmation Declaration, ¶ 13.l.

IMPAC - 12367026v.6

67.     Under section 1129(a)(7) of the Bankruptcy Code, the best interests of creditors test applies only to non-accepting holders of impaired claims or interests.  For the reasons discussed in Article IV.I. of the Combined Plan and Disclosure Statement and, as shown in the Liquidation Analysis attached to the Plan Supplement, the best interests of creditors test is satisfied in this case. The Plan is expected to provide the same or greater recovery to Holders than would a chapter 7 liquidation.[67]

68.     Specifically, substantially all of the assets of the Debtor were wound down through the Sale.  Although the Plan effects a liquidation of the Debtor's remaining assets and a chapter 7 liquidation would achieve the same general goal, liquidating the Estate under the Plan provides Creditors with a larger or equal projected recovery, in part because of the expenses that would be incurred in a chapter 7 liquidation, including the potential added time (thereby reducing the present value of any recovery for Holders) and expense incurred by the chapter 7 trustee and any retained professionals in familiarizing themselves with the Chapter 11 Case.[68]

69.     Notably, the Plan effectuates the Vuong Settlement, which provides for a potential material recovery to Holders of Allowed General Unsecured Claims.  Furthermore, Vuong agreed to waive any deficiency claim that would otherwise entitle him to receive a Distribution from the Liquidating Trust Assets, thereby allowing for the potential for meaningful recoveries for Holders of allowed General Unsecured Claims who—absent such agreement—would not otherwise be entitled to any Distribution or recovery on account of their General Unsecured Claims.[69]  If the Debtor was to be liquidated under chapter 7, there would be no Vuong Settlement and no waiver

---

[67] *See* Confirmation Declaration, ¶13.n.

[68] *See id.*

[69] *See id.*

of the Vuong deficiency claim, meaning, under a chapter 7 liquidation, there would likely be limited or no available proceeds for distribution to general unsecured creditors.[70]

70.     Additionally, a chapter 7 liquidation could further delay payments being made to Creditors in that, in addition to the reasons described above, Bankruptcy Rule 3002(c) provides that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing Claims against the Estate.  Not only could a chapter 7 liquidation delay distribution to Creditors, but it is possible that additional Claims that were not asserted in the Chapter 11 Case, or were late filed, could be filed against the Estate, further reducing Creditor recoveries.[71]

71.     Accordingly, the Plan provides an equal or better potential recovery for Holders of Claims and Interests as compared to a liquidation under chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

### H.     The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.

72.     A plan is accepted by the holders of the allowed claims of each class that voted if (i) at least two-thirds in dollar amount and (ii) more than one-half in number have voted to accept the plan.[72]  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.[73]

73.     As discussed above, whether a class has accepted a plan is determined by reference to section 1126 of the Bankruptcy Code.  Under section 1126(f), any unimpaired class is conclusively presumed to have accepted the plan.  Because the Plan does not impair Classes 1

---

[70] *See id.*

[71] *See id.*

[72] *See* 11 U.S.C. § 1126(c).

[73] *See* 11 U.S.C. § 1126(d).

and 3 and these Classes are deemed to have accepted the Plan, Classes 1 and 3 were not entitled

to vote.  Class 2 voted in favor of the Plan.  100% of the total voting claim amount and 100% of

all voting Class 2 members voted in favor of the Plan.[74]  Class 4 voted to reject the Plan, and Class

5 was deemed to reject the Plan.  As discussed herein, the Debtor seeks confirmation of the Plan

under the cramdown provisions of Bankruptcy Code section 1129(b).

I.      **The Plan Provides for the Payment in Full of All Allowed Priority Claims Pursuant to Section 1129(a)(9) of the Bankruptcy Code.**

74.     Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements

concerning the payment of priority claims.[75]  First, section 1129(a)(9)(A) requires that claims of a

kind specified in section 507(a)(1), which gives first priority to certain administrative expenses,

be paid in full in cash on the effective date of a plan.  Second, section 1129(a)(9)(B) requires that

claims of a kind specified in section 507(a)(3) through 507(a)(7) receive deferred cash payments

equal to the allowed amount of such claims on the effective date.  Finally, section 1129(a)(9)(C)

requires that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy

Code—priority tax claims—must receive regular installment payments in cash of the total value

equal to the allowed amount of such claim over a period ending not later than five years after the

petition date.

75.     The Plan satisfies these requirements.[76]  Except as otherwise set forth in Article V

of the Combined Plan and Disclosure Statement, on as soon as reasonably practicable after the

Administrative Claim Bar Date, each Holder of an Allowed Administrative Expense Claim shall

receive, from the remaining Assets or the Liquidating Trust Assets, in full and final satisfaction,

---

[74] *See* Voting Declaration, Exhibit A.

[75] 11 U.S.C. § 1129(a)(9).

[76] *See* Confirmation Declaration, ¶ 13.o.

settlement, and release of and in exchange for such Allowed Administrative Expense Claim: (i) Cash equal to the amount of such Allowed Administrative Expense Claim; or (ii) such other treatment as to which the Debtor or the Trustee, as applicable, and the Holder of such Allowed Administrative Expense Claim shall have agreed upon in writing.

76. Within the time period provided in Article V.C. of the and Plan, each Holder of an Allowed Priority Tax Claim shall receive, from the Liquidating Trust Assets, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (i) Cash equal to the amount of such Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtor or the Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

77. Finally, Non-Tax Priority Claims are placed in Class 3 under the Combined Plan and Disclosure Statement and, pursuant to Article VI.B.3. of the Combined Plan and Disclosure Statement, each Holder of an Allowed Non-Tax Priority Claims shall receive, from the Liquidating Trust Assets,, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Non-Tax Priority Claims: (i) Cash equal to the amount of such Allowed Non-Tax Priority Claims; or (ii) such other treatment which the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.  Thus, the treatment of priority claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

J.    **The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code.**

78. Section 1129(a)(10) of the Bankruptcy Code requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by

35

any insider.[77]  The sole voting member of Class 2 is Impaired and has voted in favor of the Plan.[78]  Therefore, the requirement of section 1129(a)(10) is satisfied.

### K.    The Plan Is Feasible and Satisfies Section 1129(a)(11) of the Bankruptcy Code.

79.    Section 1129(a)(11) of the Bankruptcy Code provides that a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[79]

80.    Courts generally have held that the determination of the feasibility requirement contemplates "the probability of actual performance of the provisions of the plan."[80]  Only a reasonable assurance of success is required.[81]  Further, "a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility."[82]

81.    Post-confirmation, the completion of the Debtor's liquidation is proposed in the Plan and no further financial reorganization of the Debtor is contemplated.[83]  The conditions precedent to the Effective Date are reasonably likely to be satisfied.[84]  The Debtor anticipates

---

[77] *See* 11 U.S.C. § 1129(a)(10).

[78] *See* Voting Declaration, Exhibit A.

[79] 11 U.S.C. § 1129(a)(11).

[80] *Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (quoting *Chase Manhattan Mortg. & Realty Tr. v. Bergman (In re Bergman)*), 585 F.2d 1171, 1179 (2d Cir. 1978)).  "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."  *Id.; see also In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("Feasibility does not require that substantial consummation of the plan be guaranteed; rather the plan proponent must demonstrate that there be a reasonable assurance of compliance with plan terms.") (citations omitted).

[81] *In re Johns-Manville Corp.*, 843 F.2d at 649 ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed.") (citations omitted); *In re W.R. Grace & Co.*, 475 B.R. at 115 (same); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012) (same).

[82] *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del.), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011).

[83] *See* Confirmation Declaration, ¶ 13.q.

[84] *See id.*

having sufficient funds and resources available as of the Effective Date to consummate the Combined Plan and Disclosure Statement.[85]

82.      Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

L.      **The Plan Satisfies Section 1129(a)(12) of the Bankruptcy Code.**

83.      Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment.[86]  As set forth in Article V.D. of the Combined Plan and Disclosure Statement, after the Effective Date, the Debtor, the Post-Effective Date Debtor, and the Liquidating Trust shall be jointly and severally liable to pay Quarterly Fees when due.[87] Consequently, section 1129(a)(12) of the Bankruptcy Code is satisfied.

M.      **The Plan Satisfies Section 1129(a)(13) of the Bankruptcy Code.**

84.      Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits at levels established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code for the duration of the period that the debtor has obligated itself to provide such benefits.[88]  The Debtor does not have any retiree benefit plans within the meaning of section 1129(a)(13) of the Bankruptcy Code.[89]

N.      **Sections 1129(a)(14), (15), and (16) of the Bankruptcy Code Are Inapplicable.**

85.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are not applicable to the Chapter 11 Case given that section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations, section 1129(a)(15) of the Bankruptcy Code

---

[85] *See id.*

[86] *See* 11 U.S.C. § 1129(a)(12).

[87] *See* Combined Disclosure Statement and Plan, Article V.D.

[88] *See* 11 U.S.C. § 1129(a)(13).

[89] *See* Confirmation Declaration, ¶ 13.s.

IMPAC - 12367026v.6

applies only in cases in which the debtor is an "individual," and section 1129(a)(16) of the Bankruptcy Code applies to transfers of property by a corporation or trust that is not a moneyed, business, or commercial corporation, or trust.

O.     **The Plan Satisfies the "Cramdown" Requirements for Non-Accepting Classes.**

86.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) are satisfied.  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the debtor must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[90]

87.     As discussed herein, Class 2 (Remaining Vuong Prepetition Secured Claim) is Impaired and voted in favor of the Plan.  Class 1 (Other Secured Claims) and Class 2 (Non-Tax Priority Claims) are Unimpaired and, thus, not entitled to vote and deemed to have voted to accept the Plan.  Class 4 (General Unsecured Claims) is Impaired and voted to reject the Plan, and Class 5 (Existing Equity) is not entitled to any recovery, and, thus, is deemed to have rejected the Plan. Therefore, to confirm the Plan, the Debtor must satisfy the Bankruptcy Code's "cramdown" requirements as to these rejecting Classes.

---

[90] 11 U.S.C. § 1129(b); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

i.    <u>The Plan Does Not Discriminate Unfairly.</u>

88.    The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists.[91]   Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.[92]   In general, courts have held that a plan unfairly discriminates in violation of section 1129(b)(1) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[93]   A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[94]

89.    Holders of Claims in Class 4 (General Unsecured Claims) are trade, litigation, and other business creditors with claims that arose in connection with the Debtor's business operations, as well as holders of rejection damage claims.[95]   As a result of the Vuong Settlement, Vuong, as the holder of Remaining Vuong Prepetition Secured Claim, has agreed to forgo a distribution on account of any deficiency claim, thereby increasing the potential distributions available to Holders

---

[91] *See In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), *rev'd on other grounds,* 526 U.S. 434 (1999).

[92] *See In re Genesis Health Ventures, Inc.*, 266 B.R. at 611 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *see also In re 222 Liberty Assoc.,* 108 B.R. 971, 990-991 (Bankr. E.D. Pa. 1990); *In re Johns-Manville Corp.,* 68 B.R. at 636 ("The language and legislative history of the statute provides little guidance in applying the 'unfair discrimination' standard."), *aff'd,* 843 F.2d 636 (2d Cir. 1988); *In re Freymiller Trucking, Inc.,* 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

[93] *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661-62 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination).

[94] *See In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *31 (Bankr. D. Del. May 13, 2010) (citing *In re Armstrong World Indus.*, 348 B.R. at 121).

[95] *See* Confirmation Declaration, ¶ 13.w.

of Allowed General Unsecured Claims.[96]  Absent the Vuong Settlement, Holders of General

Unsecured Claims likely would not be entitled to receive any distributions under the Combined

Plan and Disclosure Statement.[97]  However, in an effort to deliver the most value to creditors, the

Debtor and Vuong crafted a settlement incorporated into the Combined Plan and Disclosure

Statement that preserved value by avoiding protracted litigation and providing for potential

distributions to Holders of Allowed General Unsecured Claims.

90.    In light of the significant impairment of the Remaining Vuong Prepetition Secured

Claim, the potential recovery being made available to Holders of Allowed General Unsecured

Claims is a "gift" from the secured creditor that was willing to give up some of his own value to

enable the Debtor to provide distributions to other creditors on the conditions set forth in the

Combined Plan and Disclosure Statement.[98] Senior secured creditors may generally allocate estate

proceeds to junior creditors under a chapter 11 plan as long as intermediary classes are not skipped

over.[99]  There is currently over $10 million of secured funded debt in a company that, after the

Closing of the Sale, does not have sufficient remaining assets to satisfy those Claims.[100]  Vuong

has no appetite to make further sacrifices or provide more consideration to junior creditors.[101]

91.    Accordingly, the Plan, including its possible recoveries to Holders of Allowed

General Unsecured Claims, does not "discriminate unfairly."

---

[96] See id.

[97] See id.

[98] See In re Genesis Health, 266 B.R. 591, 618 (Bankr. D. Del. 2001) (explaining that when a gift is payable from proceeds otherwise distributable to senior secured creditors, they are "free to allocate such value without violating the 'fair and equitable' requirement" of section 1129(b)); In re Worldcom, Inc., 2003 WL 23861928, at *16–17 (Bankr. S.D.N.Y. Oct. 31, 2003) (approving senior and subordinated bondholder gifts to a junior class, which excluded certain creditors).

[99] See In re Nuverra Env't Sols., Inc., 590 B.R. 75, 93 (D. Del. 2018), aff'd 834 App'x 729 (3d Cir. 2021) ("[H]orizontal gifting . . . does not violate the absolute priority rule and remains good law.").

[100] See Confirmation Declaration, ¶ 13.w.

[101] See id.

40

ii.    The Plan Is Fair and Equitable.

92.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[102]  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired class not receive any distribution under a plan on account of its junior claim or interest.[103]

93.    No Holder of any Claim or Interest subordinate to Class 4 (General Unsecured Claims) will receive or retain property under the Combined Plan and Disclosure Statement on account of their Claim or Interest.  No Holder of a Claim in a Class senior to Class 4 (General Unsecured Claims) is receiving more than 100% recovery on account of its Claim or Interests.[104] To the extent Classes of Claims senior in priority to Class 4 (General Unsecured Claims) are Impaired and entitled to vote on the Plan (*i.e.*, Class 2 (Remaining Vuong Prepetition Secured Claim), they voluntarily accepted such treatment in their support for the Combined Plan and Disclosure Statement fully aware that Class 4 (General Unsecured Claims) would be provided the opportunity to receive a distribution under the Combined Plan and Disclosure Statement subject to its terms and conditions.

---

[102] *See 203 N. LaSalle St. P'ship*, 526 U.S. at 441-42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property.'  That latter condition is the core of what is known as the 'absolute priority rule.'") (quoting sections 1129(b)(1), (b)(2)(B) of the Bankruptcy Code).

[103] *See id.*

[104] *See In re Genesis Health*, 266 B.R. at 612 ("A corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims.").

94.     Accordingly, the Plan satisfies the cramdown requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by Classes 4 and 5.

P.     **The Plan Satisfies Section 1129(c) of the Bankruptcy Code.**

95.     Subject to certain conditions, section 1129(c) of the Bankruptcy Code requires that the Court confirm only one plan.  The Plan is the only plan being confirmed in the Chapter 11 Case with respect to the Debtor.  Accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

Q.     **The Principal Purpose of the Plan**

96.     Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933.[105]  The principal purpose of the Plan is to provide for an orderly liquidation of the Estate's remaining assets and distribute the net proceeds thereof to the Debtor's stakeholders in accordance with the Plan.[106]  The Plan's purpose is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

## III.    MODIFICATIONS TO THE PLAN AND RESPONSE TO THE OBJECTION

97.     Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Further, when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by

---

[105] 11 U.S.C. § 1129(d).

[106] *See* Confirmation Declaration, ¶ 13.x.

all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[107]

98.    Prior to the Confirmation Hearing, the Debtor filed a modified version of the Combined Plan and Disclosure Statement.[108]  Specifically, the Combined Plan and Disclosure Statement was revised to, among other things, provide clarifications regarding the scope of the Injunction Provision, including that the Injunction Provision is intended to be temporary rather than permanent.  This revision should resolve at least a portion of Matze's Objection, which included an argument that the Plan should not be confirmed because the Injunction Provision provided for a permanent injunction, which is not permissible in a plan of liquidation such as the Plan, because it is akin to a discharge, which is not available to a liquidating debtor.  *See* 11 U.S.C. § 1141(d)(3).

99.    Importantly, the modifications to the Combined Plan and Disclosure Statement do not adversely affect the treatment of any Claims or Interests under the Plan, and, thus, comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Therefore, the Debtor submits that no additional solicitation or disclosure is required on account of the modifications, and that such modifications should be deemed accepted by all Creditors that previously accepted the Plan.

---

[107] *See, e.g., In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

[108] *See* Docket No. 280.

IMPAC - 12367026v.6

100.     As of the filing of this Memorandum, the Debtor has not yet been able to resolve the remaining portions of the Objection and therefore submits the following in response to the Objection and in support of the Combined Plan and Disclosure Statement:

A.     **The Pre-Effective Date Portion of the Injunction Provision Should Extend Until the Effective Date.**

101.     The pre-Effective Date portion of the Injunction Provision properly purports to extend the automatic stay and any other applicable injunction until the Effective Date as provided for in section XI.A for two reasons: first, in order to avoid an absurd practical result, and second, because the revised Injunction Provision makes this argument moot.

102.     Matze argues that the Injunction Provision should expire upon "confirmation," which Matze reads as the date that the Confirmation Order becomes a final order. *See* Objection ¶ 28.  However, this proposed reading works an absurd result given the widespread and customary implementation of "effective dates" on which proposed plans go into effect.  Namely, in a liquidating case containing a proper, temporary, post-Effective Date injunction, Matze's reading would require that, on the date a confirmation order becomes final, the automatic stay should expire, and the debtor would be left in a limbo in which there is no stay of causes of action until the debtor can scramble to fulfill the conditions precedent to the effective date in order to invoke the post-Effective Date injunction.  Meanwhile, until the Debtor was able to fulfill those conditions, any number of collection actions could be filed against it, potentially distracting from the work of striving for the effective date.  The absurdity of this "gap period" is perhaps one reason why courts have acknowledged that where a confirmation order so provides, the automatic stay is lifted on the effective date of a plan and, if applicable, replaced with a separate injunction.  *See Orange County Water Dist. v. Fairchild Corp. (In re Fairchild Corp.)*, 2014 U.S. Dist. LEXIS

174022, at *8-9 (D. Del. 2014); *see also Moreno-Cuevas v. Town Sports Int'l, LLC (In re Town Sports Int'l)*, 2023 U.S. Dist. LEXIS 227402, at *6 (D. Del. 2023).

103.     Regardless of the absurd result, Matze's objection regarding the expiration of the automatic stay is also moot given the revisions to the Injunction Provision in the modified version of the Combined Plan and Disclosure Statement filed with the Confirmation Order (the "<u>Modified Plan</u>").   The Injunction Provision no longer provides for a permanent injunction; instead, the Injunction Provision is now temporary, as the Debtor admittedly intended, and will expire on the date on which the Plan has been fully administered and/or there are no Liquidating Trust Assets left to distribute.   Because the Injunction Provision is not permanent, there is no "discharge" occurring on the date of confirmation, whether that date is the Effective Date or the date the Confirmation Order becomes final.   Accordingly, Matze's Objection no longer applies on this point.

B.       **The Objection Mischaracterizes Certain Priority Claims Against the Debtor and Is Rendered Inapposite by the Revisions to the Injunction Provision.**

104.     Matze argues that the Plan cannot satisfy Bankruptcy Code section 1129(a)(9) because the Plan does not provide for the payment of certain priority claims.  Objection ¶¶ 32-39. Matze points to certain priority tax claims asserted by the Internal Revenue Service, the Nevada Department of Taxation, and the Tennessee Department of Revenue.  Objection ¶ 34.  Matze's argument is based on a misreading of section 1129(a)(9) of the Bankruptcy Code.

105.     Section 1129(a)(9)(A) provides that a plan must provide that "with respect to a claim of a kind specified in section 507(a)(2) . . . on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9)(A).  Section 507(a)(2) gives second priority to "administrative expenses allowed under section 503(b)."  11 U.S.C. § 507(a)(2).  Section 503(b) provides, in relevant part,

45

for administrative expenses on account of "any tax . . . except a tax of a kind specified in section

507(a)(8).  11 U.S.C. § 503(b)(1)(B).  Section 507(a)(8) provides a long list of types of allowed

unsecured claims of governmental units, only some of which are relevant here.  The main thrust

of section 1129(a)(9)'s roundabout reference to section 507(a)(8) is that Congress meant to exclude

from 1129(a)(9) those tax claims that relate to a taxable year ending on or before the petition date

of a bankruptcy case.  *See generally* Collier on Bankruptcy ¶ 507.11 (16th ed. 2020) (noting that

section 507(a)(8) "applies only to taxable years ending on or before the petition date").  The tax

claims Matze references in the Objection are these types of claims and are accordingly excepted

from section 1129(a)(9).  Therefore, they do not need to be paid on the Effective Date.

106.    Namely, section 507(a)(8)(A)(i) relates to a tax on or measured by income or gross

receipts for a taxable year ending on or before the date of the filing of the petition . . . for which a

return, if required, is last due, including extensions, after three years before the date of the filing

of the petition.  11 U.S.C. § 507(a)(8)(A)(i).  The IRS Claim that Matze references in the

Objection, Claim No. 8, is just such a claim, with a return being due for the 2023 tax year.  The

Petition Date is April 15, 2024, making the return for a taxable year ending prior to the Petition

Date and due after three years before the Petition Date.  Accordingly, Claim No. 8 is excepted

from the requirements of 1129(a)(9).

107.    Section 507(a)(8)(C) relates to taxes "required to be collected or withheld and for

which the debtor is liable in whatever capacity," and section 507(a)(8)(D) concerns taxes on wages,

salary, or commissions of the kind described in section 507(a)(4).  11 U.S.C. §§ 507(a)(8)(C), (D).

The Debtor submits that the Claim of the Nevada Department of Taxation falls into one or both of

these categories, and the Claim of the Tennessee Department of Revenue falls into the 507(a)(8)(C)

category, as it is a claim for a franchise tax, and is therefore a tax that is required to be collected

46

and for which the debtor is liable.  Accordingly, both of these Claims are excepted from the requirements of section 1129(a)(9), and none of the Claims that Matze has specified is a barrier to confirmation of the Plan or of the Plan becoming effective.  Moreover, the only applicable group of administrative claimants, the Estate's Professionals, have agreed to defer payment of their claims in order to allow the Plan to become effective, as is allowed under section 1129(a)(9).

108.    In any event, Matze's goal in brandishing the argument concerning priority tax claims is not to show that the Debtor is somehow trying to get away with non-payment (indeed, the Debtor is committed to pursuit of certain of the remaining Causes of Action, such as the Olympic Claims and the Thurston Claims, in order to potentially make distributions to creditors).  Rather, Matze appears to be arguing that the Debtor would use the inability to pay such claims as a way to drag out the Effective Date and prejudice Matze in the Nevada Action by holding on to the automatic stay as long as possible.  This only makes sense if the Injunction Provision were to be deemed impermissible as a permanent injunction and therefore a discharge.  However, Matze's argument does not work for two main reasons: first, the Debtor and its Professionals are committed to going effective as quickly as possible, hence the Professionals' agreement to forego payment of their administrative claims on the Effective Date, and second, even if the Debtor's intent was to do so previously (it was not) there is no need to delay the Effective Date because the Injunction Provision is now temporary and is therefore not effecting the kind of injunction that could be termed a discharge.

C.    **Matze's Argument in the Objection with Respect to the Nevada Counterclaims is Misplaced.**

109.    Matze seizes on one line in the Schedule of Retained Causes of Action attached to the Plan Supplement to apparently argue by implication that the Debtor's description of the Nevada Counterclaims as "critical to the viability of the Plan" means that the Debtor is seeking to pursue

47

the Nevada Counterclaims and that therefore, Matze should be entitled to stay relief under *AP Orangevale*.  Objection ¶¶ 45-47.

110.    The Debtor maintains that at this time it has no intention to pursue the Nevada Counterclaims.  The Debtor is simply maintaining optionality with respect to one of its assets as it attempts to liquidate its remaining holdings in the hope of making distributions to creditors.  Because the Debtor is not pursuing the Nevada Counterclaims, the Debtor submits that this case is distinct from *AP Orangevale*, as the Debtor is not attempting to fight while Matze's hands are tied.  Rather, it is critical to the Debtor and the success of the Plan that the Nevada Action remain stayed while the Liquidating Trustee[109] attempts to monetize the Liquidating Trust Assets and make distributions to creditors.  Accordingly, the Debtor submits that the stay should not be lifted with respect to the Nevada Action.

111.    For the foregoing reasons, and for the reasons set forth throughout the Combined Plan and Disclosure Statement, this Memorandum, the Confirmation Declaration, and the Voting Declaration, the Debtor submits that the Court should overrule Matze's Objection and confirm and approve, as applicable, the Combined Plan and Disclosure Statement.

## IV.    WAIVER OF THE STAY OF THE CONFIRMATION ORDER

112.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."[110]  Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory

---

[109] Matze also argues, as a sort of aside, that the Liquidating Trust would not be a "successor" to the Debtor.  Objection ¶ 48.  However, section VIII.G.3 of the Plan provides that on or after the Effective Date of the Plan, "the Liquidating Trust shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date."  Accordingly, the Debtor submits that the Liquidating Trust will succeed to the Debtor's rights and defenses with respect to the Nevada Action.

[110] Fed. R. Bankr. P. 3020(e).

48

contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

113.    The Debtor submits that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.  Each day the Debtor remains in chapter 11 it incurs significant professional and administrative costs to the detriment of the Estate.[111]  Accordingly, the Debtor submits that, based on such circumstances, it is reasonable and amply justified for the Debtor and interested parties to proceed with implementing the Plan and provide Distributions to the Debtor's stakeholders, as set forth in the Plan, as promptly as possible.

[*Remainder of Page Intentionally Left Blank*]

---

[111] *See* Confirmation Declaration, ¶ 16.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum, the Debtor respectfully submits that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and request that the Bankruptcy Court enter an order approving the Disclosure Statement on a final basis and confirming the Plan.

Dated: August 5, 2025
      Wilmington, Delaware

Respectfully submitted,

*/s/ James R. Risener III*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
James R. Risener III (No. 7334)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
      rmcneill@potteranderson.com
      jrisener@potteranderson.com
      srizvi@potteranderson.com

*Counsel for the Debtor and Debtor in Possession*

IMPAC - 12367026v.6